UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 19-178-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| WILLIAM MICHAEL FIELDS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Beginning June 1, 2020, Defendant William Fields stood trial on two counts of producing child pornography in violation of 18 U.S.C. § 2251(a). At the close of the government's evidence and again after the close of the defendant's case, the Court overruled the defendant's motion for judgment of acquittal and renewed motion. On June 2, 2020, a jury convicted Fields on both counts. The matter is now pending for consideration of the defendant's post-judgment motion for acquittal notwithstanding the verdict or, in the alternative, for a new trial.

## I.     Motion for a New Trial Pursuant to Fed. R. Crim. P. 33

Fields has not presented any substantive argument in support of his motion for acquittal notwithstanding the verdict, so the Court will begin by considering his request for a new trial. Rule 33 of the Federal Rules of Criminal Procedure provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "[I]t is widely agreed that Rule 33's 'interest of justice'

standard allows the grant of a new trial where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010).

The Court will consider each of Fields' three arguments in turn.

> **A.    The Court did not deny Fields' Sixth Amendment right to counsel by denying his most recent motion to continue the trial.**

Fields retained attorney Christopher Spedding shortly after his indictment in October 2019. A jury trial was scheduled to begin on December 16, 2019.

Fields filed his first motion to continue the trial in November 2019, citing excessive discovery and a need for additional time to prepare. [Record No. 15] That motion was granted and the Court continued the trial until February 10, 2020. Fields' counsel filed a second motion to continue in January 2020, again citing voluminous discovery and a need for additional preparation time, as well as an upcoming medical procedure. [Record No. 19] Following a hearing, the Court granted this second motion and continued the trial until April 20, 2020. [Record No. 22]

On March 13, 2020, the Court entered General Order 20-02, which provided that all trials scheduled to commence between March 16, 2020 and April 17, 2020, were continued for at least 30 days due to the effects of COVID-19. The Court subsequently extended the continuance of all trials in the district until May 18, 2020. [*See* General Orders 20-03, 20-08.] As a result, Fields' trial was rescheduled to begin on May 18, 2020. [Record No. 24] However, on May 1, 2020, Fields filed a third motion to continue in which attorney Spedding reported the following:

> Counsel and the Defendant are unable to prepare for trial due to the safeguards against the spread of COVID-19 in place at the Fayette County Detention Center and all other facilities that currently house federal inmates. . . . Counsel has spoken with the US Marshal's office who are making efforts to arrange for the

>transport of the Defendant to the courthouse to meet with counsel to prepare for trial, however[,] this arrangement is uncertain at this time.

[Record No. 33] The United States agreed that a brief continuance was appropriate "based on difficulties in preparing for the trial due to limitations on meetings with counsel imposed by detention centers in response to the COVID-19 global pandemic." [Record No. 35] However, the United States noted that the victim's family was vehemently opposed to continuing the trial, as the victim's "emotional trauma [was] magnified with each day the process continue[d]." *Id.*

Spedding provided supplemental information in support of his motion for a continuance, which included descriptions of the volume of discovery he had received and the efforts he had made to meet with the defendant. Spedding reported that "a continuance until no later than June 1, 2020, would allow sufficient time in which to prepare." Having considered the parties' positions, the Court again continued the trial to June 1, 2020. [Record No. 42]

On May 19, 2020, 13 days before the trial was scheduled to begin, Spedding filed a motion to withdraw from the case. [Record No. 46] In support, he reported that the defendant had advised him during a videoconference six days earlier that he was retaining another attorney and no longer required Spedding's services. Spedding had arranged for the United States Marshal's Service to transport Fields to the United States Courthouse for face-to-face trial preparation on May 14, 2020, but Fields instructed Spedding to cancel that meeting. When no other attorney had entered an appearance by May 18, 2020, Spedding arranged to have a videoconference with Fields, but Fields refused to speak with him. Spedding subsequently reviewed recorded telephone conversations from the detention facility in which

he overheard Fields telling an unknown person that he "may end up filing a bar complaint" against Spedding. [Record No. 47]

The United States strongly objected to Spedding's motion to withdraw, noting that Fields had been indicted in October 2019 and had received "ample opportunity to prepare for trial with the counsel of his choosing." [Record No. 48] And while Fields apparently had expressed a desire to retain new counsel, he had not done so. Further, the most recent continuance was granted specifically so that Spedding and Fields could have in-person meetings to prepare for trial, but Fields had declined to take advantage of those opportunities.

The Court held a hearing on the motion on May 29, 2020. To begin, the Court noted that an attorney of record is not permitted to withdraw within 21 days of trial unless a compelling reason for doing so exists. *See* Local Rule of Criminal Practice 57.6. The Court then inquired into the source and nature of Fields' dissatisfaction with Spedding. *See Benitez v. United States*, 521 F.3d 625, 634 (2008); *United States v. Iles*, 906 F.2d 1122, 1131 (6th Cir. 1990). In deciding whether to grant the motion to withdraw, the Court considered the timeliness of the motion, the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and the public's interest in the prompt and efficient administration of justice. *See United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

The first factor cut strongly against the defendant's position, as the motion to withdraw was made on the eve of trial. Further, as outlined above, the trial had already been continued multiple times at the defendant's request. The second factor also weighed against the defendant. Neither Spedding nor Fields actually identified any legitimate source of conflict or dissatisfaction. Instead, Fields simply announced that he no longer wanted Spedding to be his

attorney. And while Fields stated that he wished to retain a new attorney, apparently the yet-to-be-identified attorney was unwilling to enter an appearance unless a continuance was granted. As the Court explained during the hearing, Fields' the unspecified disagreement with Spedding did not constitute a conflict so great that it resulted in a total lack of communication preventing an adequate defense.

The third factor also weighed strongly against granting the motion. After all, a defendant's right to retain counsel of his choice is not without limits. *See Wilson v. Mintzes*, 761 F.2d 275, 279-80 (6th Cir. 1985). Instead, the Court must consider whether the motion to withdraw, and the continuance that necessarily would result, constitutes the accused's purposeful attempt to delay or manipulate the proceedings. *Id.* As discussed during the hearing on the defendant's motion to withdraw, the victim was scheduled to leave the state to participate in military training, which was likely to render her unavailable for trial if an additional continuance were granted.

Next, neither Spedding nor Fields identified any specific prejudice that Fields would suffer by proceeding to trial as scheduled. The public and the victim, on the other hand, had a significant interest in resolving the case without further excessive delay. More than seven months had elapsed between Fields' indictment and the scheduled trial date. The government, as well as attorney Spedding, had put significant time and resources into preparing for the trial to begin on June 1, and the government had arranged for the attendance of multiple witnesses, including the victim, to testify on that date.

While a violation of the defendant's Sixth Amendment right to effective assistance of counsel is a "substantial legal error" that requires granting relief under Rule 33, the defendant was not deprived of effective representation in this case. *See Munoz*, 605 F.3d at 373. After

the Court indicated that the trial would not be continued again, the defendant was given the choice of representing himself or proceeding with Spedding as his attorney. He was given time to discuss these options with Spedding in private and he ultimately chose to proceed with Spedding.

Spedding's conduct in this case demonstrated that he was well-prepared to represent Fields. During the hearing on Spedding's motion to withdraw, the Assistant United States Attorney offered that Spedding had exercised due diligence in preparing for trial. Specifically, he had come to the United States Attorney's office numerous times that week to review evidence, had called about evidence, and had done "everything [she] would expect a defense attorney" to do to prepare himself for trial.

Spedding's performance at trial also demonstrated his preparedness. He performed competently at all stages, demonstrating his familiarity with the evidence and thoroughly cross-examining the government's witnesses. Although the evidence against Fields was overwhelming, Spedding attempted to create reasonable doubt by suggesting that the 17-year-old victim had taken images of consensual sexual activity with the defendant on her own volition.

The Court also rejects Fields' argument that he is entitled to a new trial because did not have a sufficient opportunity to review discovery material with Spedding. On May 6, 2020, the trial was continued to June 1, 2020, giving Fields additional time to meet with Spedding to review discovery and prepare for trial. During this period, arrangements were made to transport Fields to the Courthouse so that he could meet with Spedding irrespective of the visitation restrictions in place at the Fayette County Detention Center. Spedding does not indicate how many meetings he arranged or attempted to arrange with Fields during this time.

Regardless, it was Fields who did not take advantage of the opportunity to participate in trial preparation. Additionally, Fields does not indicate how his trial strategy would have been different had he received additional time to meet with Spedding and/or further review discovery materials.

Due process requires that the defendant receive a fundamentally fair trial. *Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002). Fields received that here—he received the assistance of competent counsel of his choosing and the had the opportunity to assist in his defense. It would be fundamentally unfair to grant a second trial based on Field's clear attempts to delay the proceedings by failing to cooperate with his attorney.

### B. The Court properly defined "uses" for purposes of 18 U.S.C. § 2251(a).

The Court provided the jury with a correct statement of the law on the substantive charges for using a minor to engage in sexually explicit conduct to produce a visual depiction in Instruction Number 14. The following elements were given:

> First: That the defendant employed, used, persuaded, induced, or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct.
>
> Second: That the visual depiction was produced or transmitted using materials that were mailed, shipped, or transported in or affecting interstate commerce by any means, including computer.

The Court then provided more detailed instructions on some of the terms. The jury was advised that "the defendant 'uses' a minor if he, or someone at his direction, photographs or takes video of the minor engaging in sexually explicit conduct." This definition differs slightly from the United States Court of Appeals for the Sixth Circuit's pattern instruction, which

provides: "A defendant 'uses' a minor if *he* photographs the minor engaging in sexually explicit conduct." Sixth Circuit Pattern Instruction 16.01 (emphasis added).

Fields contends that the Court erred in instructing the jury on the definition of "uses" because the "United States failed to introduce any evidence whatsoever that Fields directed anyone else to photograph or take video of the minor engaging in sexually explicit conduct." [Record No. 64-1] However, Fields' defense strategy was that the minor victim took the videos and/or photos of her sexual encounters with Fields. Based on the position of the victim's body, which was visible in the videos, it appeared unlikely (if not impossible) that she could have taken the subject videos. However, Spedding suggested, through his cross-examination of Dr. Michael Littrell, that the victim may have taken the videos with the assistance of a "selfie-stick" or tripod.

While the United States did not present evidence that Fields physically forced or directed the victim to take any particular action, the government did present evidence indicating that Fields exerted power or authority over her. Fields was a 36-year old constable, firefighter, and teacher of emergency medical technician classes. Testimony indicated that Fields used his position to form a relationship with and influence the victim, a 17-year old girl, who was heavily interested in pursuing a career these fields. Accordingly, the jury reasonably could have inferred that, if the victim took the pictures and/or videos, she did so at the defendant's direction. Further, the Court's definition of "uses" is consistent with paragraph (3) of Sixth Circuit Pattern Instruction 16.01, which provides: "It is not necessary that the government prove that the defendant took the pictures." *See United States v. Daniels*, 653 F.3d 399, 408 (6th Cir. 2001) (Defendant violated § 2251(a) even if he did not actually take

the picture because he persuaded, induced, or coerced the victim to engage in sexually explicit conduct for the purpose of producing a visual depiction.).

> **C.  Fields was not entitled to present defenses based on mistake-of-age and consent.**

Fields contends that the Court erred by precluding him from presenting evidence regarding his mistake of the victim's age and the victim's consent. He has failed to flesh out this argument or provide any legal support for it, instead stating that the Court's ruling "prevented [him] from presenting a defense, thus denying him a fair trial." [Record No. 64-1, p. 4]

A defendant is not entitled to present a defense theory that constitutes an incorrect statement of the law. *See United States v. Ebert*, 294 F.3d 896, 899 (7th Cir. 2002). As this Court previously explained, the defendant's knowledge of the victim's age is neither an element of nor an affirmative defense to a charge of producing child pornography. *United States v. Humphrey*, 608 F.3d 955, 962 (6th Cir. 2010). Accordingly, Fields has not established why his purported lack of knowledge of the victim's minority was relevant to the charges against him.

Additionally, a minor cannot "consent" to be the subject of child pornography under § 2251(a). *See United States v.* Sibley, 681 F. App'x 457, 461 (6th Cir. 2017). Regardless, Fields' attorney cross-examined the victim at length regarding her relationship with Fields and the sexual encounters underlying the visual depictions involved in this case. Fields has not indicated what additional evidence he should have been permitted to introduce or how it might have affected the outcome of the case.

## II. The defendant is not entitled to a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.

A defendant seeking a judgment of acquittal notwithstanding the jury's guilty verdict bears a very heavy burden. *United States v. Hendricks*, 950 F.3d 348, 352 (6th Cir. 2020). In reviewing the defendant's motion, the Court "must decide whether, after viewing the evidence in a light most favorable to the government, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hendricks*, 950 F.3d at 352. The Court may not weigh the evidence, consider witness credibility, or substitute its judgment for that of the jury. *Hendricks*, F.3d at 352 (citing *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994)).

The Court previously denied the defendant's motions under Rule 29, explaining that the government had introduced sufficient evidence to meet each element to convict the defendant of both counts charged in the indictment. Although the defendant has failed to develop any particular argument regarding his motion for judgment of acquittal, the Court will briefly review the evidence supporting his convictions.

The victim became acquainted with Fields in early 2019 when visiting a friend at the fire station in Bourbon County, Kentucky. She also knew Fields through his involvement in Cynthiana Police Explorers—a program for children, like the victim, who were interested in careers in law enforcement. Fields sent the victim a text message on March 17, 2019, asking her to meet him. Fields met with the victim that night and gave her alcohol, which she consumed as Fields drove her to an ambulance storage facility in Paris, Kentucky. After arriving at the ambulance storage facility, the two walked around and looked at vehicles for a few minutes. Then, Fields called the victim over to the back of an ambulance and the two had

sexual intercourse. Fields asked the victim if he could take a video of the sexual activity. The victim gave Fields her phone, which he used to make video recordings of the encounter. The victim discovered the videos on her phone the next morning, and also saw on Snapchat that the defendant had sent the videos to himself.

The victim also testified that, on March 23, 2019, she had been hanging-out at the fire station where she sat on Fields' lap and he gave her a police radio. Later that evening after she had returned home, Fields sent her a text message asking her to come back to the fire station. She complied and the two went to an EMT training facility, where they had sexual intercourse. Fields video-recorded the encounter on the victim's phone. It is undisputed that the victim was 17-years-old at the time of both events.

Dr. Michael Littrell, a forensic examiner and detective with the Kentucky Attorney General's Office, examined both the victim's (iPhone SX Max 10S) and Fields' (Samsung Note 8) phones. He located a "smart calculator" application on Fields' phone, which contained explicit images that appeared to be still shots taken from the videos of the sexual encounters recorded with the victim's phone. Littrell testified that the phones are manufactured in either China or India, "based on the company and how they do their supply chain."

Based on the foregoing, there was ample evidence from which the jury could have concluded that, on March 17 and 23, 2019, Fields employed, used, persuaded, induced, or coerced the minor victim to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct and that the visual depiction was produced or transmitted using materials that were mailed, shipped, or transported in or affecting interstate commerce by any means, including computer. Accordingly, Fields is not entitled to judgment of acquittal notwithstanding the verdict.

Based on the foregoing analysis and discussion, and it is hereby

**ORDERED** that the defendant's motion for judgment of acquittal and/or a new trial [Record No. 64] is **DENIED**.

Dated: July 7, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky