UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:19-178-DCR

UNITED STATES OF AMERICA                                                                          PLAINTIFF

V.                          UNITED STATES' SENTENCING MEMORANDUM

WILLIAM MICHAEL FIELDS, JR.                                                                   DEFENDANT

\* \* \* \* \*

      This case arises from Defendant's use of E.Y., a seventeen-year-old minor, to produce sexually explicit images on March 17, 2019 and March 23, 2019. Defendant, a thirty-six-year-old Paris Fire Department firefighter and Harrison County Constable, met the minor victim in approximately February 2019 through a mutual friend. Following that encounter, Defendant began communicating with E.Y. through Snap Chat, frequently using the minor victim's interest in firefighting and law enforcement as a basis for conversation. During those Snap Chat conversations, Defendant also sent sexually explicit images of himself and requested sexually explicit images of the minor victim. The Defendant also occasionally met with the minor victim in person and eventually volunteered for Police Explorers, an extra-curricular program relating to law enforcement in which the minor victim participated.

      Count One of the Indictment stems from conduct that occurred on March 17, 2019. On that date, Defendant provided the minor victim with alcohol and brought her to a storage facility in Paris that contained fire department vehicles and equipment. Defendant led the minor victim to the back of an ambulance, had sex with her, videoed the sex using the minor victim's phone, and then sent the video to himself. A forensic inspection of the victim's phone revealed a thumbnail of a

1

video showing a penis entering a vagina. An inspection of the Defendant's phone later revealed an image that was identical in appearance to the one located on the victim's phone.

Count Two of the Indictment arises from conduct that occurred on March 23, 2019. That evening, the minor victim had been drinking alcohol at her home with her best friend when the Defendant messaged her on Snap Chat to meet him at the Paris Fire Department. Once the minor victim arrived at the fire department, Defendant brought her to an EMT Training Facility where Defendant had an office. In that office, Defendant performed various sex acts on the minor victim and recorded those acts using the victim's phone. Law enforcement located five videos of this incident on the victim's phone and located corresponding screenshots of these videos on the Defendant's phone.

On June 2, 2020 a jury convicted Defendant of two counts of employing, using, persuading, enticing, or coercing a minor to engage in sexually explicit conduct for the purpose of making a visual depiction of that conduct.

Defendant's Presentence Report (PSR) provides an offense level of 40 for Count One and 45 for Count Two (treated as a level 43 for sentencing purposes).[1] The Sentencing Guidelines would provide a term of life imprisonment based on Defendant's offense level of 43 and criminal history category of I, but the guidelines range for each count is capped at the statutory maximum of thirty years. If the terms of imprisonment for each count ran concurrently, Defendant's term of imprisonment would be 360 months. Because the highest statutory maximum is less than Defendant's "total punishment," the punishments for one or more counts should run consecutively to produce a combined sentence equal to the total punishment.[2]

---

[1] *See* PSR, p. 4-6.
[2] *See* U.S.S.G. §5G1.2(d).

I. **UNRESOLVED OBJECTIONS TO THE PSR**

    **A. Defendant's Objection to Two-Point Enhancement for Distribution**

The United States Probation Office (USPO) included a two-point enhancement for knowing distribution under U.S.S.G. §2G2.1(b)(3).[3] Defendant, however, claims that he did not engage in distribution.[4]

U.S.S.G. §2G2.1, the guideline provision for production of child pornography, provides a two-point enhancement if the defendant knowingly engaged in distribution.[5] The commentary to §2G2.1 broadly defines distribution as "any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor."[6] In addition, the Sixth Circuit noted in *United States v. Mudd* that the plain text of §2G2.1(b)(3), the accompanying explanatory notes, and case law all favor a "broader interpretation" of distribution.[7]

Here, the minor victim testified definitively that she <u>did not</u> send the subject images to Defendant. Yet, law enforcement located on Defendant's phone images that corresponded to the sexually explicit images produced with the victim's phone. In addition, on at least one of the occasions, the victim recalled seeing evidence in her Snap Chat application that Fields had sent the images to himself via that application the night before.

    **B. Defendant's Objection to the Two-Point Enhancement for Use of a Computer to Communicate with a Minor**

The USPO included a two-point enhancement under U.S.S.G. §2G2.1(b)(6) for Defendant's use of a computer or interactive computer service to "(i) persuade, induce, entice,

---

[3] *See* PSR, p. 5, ¶¶ 20, 28.
[4] *See* PSR Addendum, Defendant Objections to PSR, dated August 17, 2020, at p. 1-2.
[5] *See* §2G2.1(b)(3).
[6] U.S.S.G. §2G2.1, Application Note 1.
[7] *See United States v. Mudd*, 681 F. App'x 425, 428 (6th Cir. 2017).

coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct; or (ii) solicit participation with a minor in sexually explicit conduct."[8] Defendant denies using a computer or interactive computer service in this manner.[9]

Here, Defendant used the Snap Chat application on his smartphone (a computer) to groom the minor victim, *i.e.*, he used Snap Chat to induce and entice the minor victim into a sexual relationship with him. In fact, he messaged the victim on this interactive computer service, sending her a picture of his penis, on the very night that they met. Thereafter, Defendant and the minor victim used Snap Chat as their sole means of communication and frequently made plans for their in-person encounters using Snap Chat. For example, on March 23, 2019, Defendant used Snap Chat to entice the minor victim to come to the Paris Fire Department where he later produced the sexually explicit images of her.

### C. Defendant's Objection to the Two-Point Adjustment for Abuse of a Position of Public Trust

The Defendant objects to the application of U.S.S.G. §3B1.3 for abuse of a position of public trust, claiming the adjustment does not apply because he was not in a supervisory position with the fire department and his position as a constable did not contribute to the offense.[10]

U.S.S.G. §3B1.3 provides a two-level increase "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense."[11] The Application Note to this section clarifies that public trust is characterized by "professional or managerial discretion (*i.e.,* substantial

---

[8] *See* PSR, p. 5-6, ¶¶ 21, 29. *See also* U.S.S.G. §2G2.1(b)(6).
[9] *See* PSR Addendum, Defendant Objections to PSR, dated August 17, 2020, at p. 1-2.
[10] *See id.* at p. 2.
[11] *See* U.S.S.G. §3B1.3.

4

discretionary judgment that is ordinarily given considerable deference)" and that "[p]ersons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are non-discretionary in nature."[12] The Application Note further provides that, in order for the adjustment to apply, "the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the crime."[13]

Although the application on this adjustment is somewhat fact specific, Defendant's position in law enforcement and his role as a public servant significantly contribute to the application of this adjustment. "Police officers are accorded public trust to enforce the law. The public . . . expects that police officers will not violate the laws they are charged with enforcing."[14] However, this element of inherent trust is not limited to police officers, but also applies to other public servants.[15] In extending this logic to postal workers, the Seventh Circuit noted: "[i]n both cases, precisely because the employees are public servants, the government has both a general interest in projecting a positive public image and a specific interest in assuring efficient use of public resources."[16] Thus, according to that court, any government employee who takes an oath to uphold the law and who performs a government function for a public purpose is in a position of trust.[17]

Defendant was a volunteer firefighter and Harrison County Constable. While both are government positions, the constable position was an elected position directly related to upholding the law. Additionally, as part of his role at the Paris Fire Department, Defendant trained Emergency Medical Technicians (EMTs).

---

[12] *See* U.S.S.G. §3B1.3, Application Note 1.
[13] *See id.*
[14] *United States v. White*, 270 F.3d 356, 371 (6th Cir. 2001) (citing *United States v. Lamb*, 6 F.3d 415, 421 (7th Cir. 1993)).
[15] *See White,* 270 F.3d at 373.
[16] *See* Lamb, 6 F.3d at 421.
[17] *See Id.*

5

From the time that Defendant first met the minor victim, he used the victim's interest in becoming a first responder and his expertise in those areas to groom her. Defendant further used Paris Fire Department facilities as a secret place to rendezvous with the minor victim and commit the crimes at issue. For example, on March 17, 2019, Defendant used the opportunity to view fire department equipment as a lure to bring the minor victim to the storage facility so that he could have sex with her in the back of an ambulance and produce videos of it. Defendant only had access to such equipment and facilities because of his position as a fire fighter and an EMT trainer.

Contrary to Defendant's assertion otherwise, his role as a constable contributed to this crime. According to the minor victim's testimony, she initially thought that she could trust Defendant because he was in law enforcement.[18] Defendant's position in law enforcement also played a role in the minor victim's decision to allow a friendship with him, because she was interested in law enforcement as a career path. Defendant exploited this interest and used his position as a constable to groom the minor victim, taking her on ride-alongs in his constable car and sharing law enforcement knowledge with her. In fact, several hours before the incident on March 23, 2019, Defendant provided the minor victim with a police radio.

Moreover, Defendant used his position as a constable to qualify himself as a volunteer for Police Explorers, an extra-curricular program in which the victim participated, allowing him to further cultivate a relationship with her. When the Defendant volunteered to chaperone Police Explorers events, both the Cynthiana Police Department and the participants' parents trusted the Defendant with the care the participants, adding to his position of trust.

---

[18] This initial inclination to trust later developed into fear, demonstrating yet another way that Defendant's position contributed to these crimes. *See* Victim Impact Statement.

6

In sum, by virtue of being a public servant expected to protect the public and uphold the law, Defendant served in a position of public trust. Because Defendant used his position of public trust to facilitate these crimes, U.S.S.G. §3B1.3 should apply.

### D. Other Objections

Defendant also objects to the PSR for failing to include recommendations for several downward departures. Because Defendant fails to include any basis for the adoption of such departures, his objections should be overruled.

## II. 18 U.S.C. §3553 AND THE APPROPRIATE SENTENCE

### A. History and Characteristics of the Defendant

Defendant experienced a childhood free from abuse.[19] He holds a high-school diploma and worked as a firefighter for several years.[20] Defendant's history of criminal convictions consists of only one speeding ticket in 2005.[21] Defendant is currently divorced and has three children.[22] While there is nothing particularly mitigating or aggravating about his history and characteristics, his longstanding role as a public servant relates to the U.S.S.G. §3B1.3 adjustment discussed above.

### B. Nature and Circumstances of the Offense

"There is no disputing that 'child pornography is . . . a serious crime,'[23] because '[it] harms and debases the most defenseless of our citizens.'"[24] These offenses "result in perpetual harm to victims and validate and normalize the sexual exploitation of children."[25] "Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the

---

[19] *See* PSR, p. 9, ¶ 49.
[20] *See id.* at 9-10, ¶ 57.
[21] *See id.* at p. 7, ¶ 40.
[22] *See id.* at 9, ¶ 50.
[23] *United States v. Pelloski*, 31 F. Supp. 3d 952, 959 (S.D. Ohio 2014) (*quoting United States v. Robinson*, 669 F.3d 767, 776 (6th Cir. 2012)).
[24] *Id.* (*quoting United States v. Williams*, 553 U.S. 285, 307 (2008)).
[25] *Id.* (*quoting* United States Sentencing Commission, Child Pornography Report, at vi.)

original misdeed took place…"[26] In a recent study performed by the Canadian Centre of Child Protection, victims of child pornography offenses reported that the imagery created by their abusers (as opposed to the hands-on offenses themselves) made the victims feel powerless, ashamed and humiliated, and like they were being abused over and over.[27]

### C. Seriousness of the Offense, Promotion of Respect for the Law, and Just Punishment

"Defendants convicted of the production of child pornography are the most culpable of the child pornography offenders" and "are, without question, deserving of lengthy sentences of imprisonment given the direct and lasting harm they inflict upon children."[28] Here, E.Y. details the lasting harm that this offense has inflicted upon her, including flashbacks, shame, and episodes of extreme sadness and disillusionment.[29] The severe harm caused by this production case, as well as other to come, requires an equally severe sentence to promote both justice and respect for the law.

### D. Deterrence

"[A]s long as there is a demand [for] images of child pornography, there is going to be an unending stream of child abuse of children who are forced into these roles."[30] Accordingly, "[g]eneral deterrence is crucial in the child pornography context."[31] Indeed, "[t]he most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties on persons . . . promoting the product."[32]

---

[26] *New York v. Ferber*, 458 U.S. 747, n.10 (1982).
[27] *See* Canadian Centre for Child Protection, *Survivors' Survey, Full Report 2017* (2017), p. 148, https://protectchildren.ca/pdfs/C3P_SurvivorsSurveyFullReport2017.pdf.
[28] *Pelloski*, 31 F. Supp. 3d at 954.
[29] *See* Victim Impact Statement.
[30] *United States v. Miller*, 665 F.3d 114, 121 (5th Cir. 2011).
[31] *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010). *See also United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012) (reversing the district court for neglecting the importance of deterrence in a sentencing for possession of child pornography).
[32] *Ferber*, 458 U.S. at 760.

### E. Protection of the Public from Future Crimes of the Defendant

"[P]rotection is a function of two variables: the level of risk that conduct will occur and the level of harm that will be inflicted if that conduct does occur."[33] While the probability of recidivism is difficult to calculate with an offender like Mr. Fields, we know that the harm from child sexual abuse is "enormous and permanent."[34] Even assuming the risk of recidivism is low, the magnitude of potential harm militates in favor of a lengthy term of imprisonment.

### F. Avoiding Unwarranted Sentencing Disparities

Although the undersigned Assistant United States Attorney (AUSA) recognizes that the requirement to "avoid unwarranted sentence disparities" is intended to encompass nationwide sentences, it may be instructive to consider other such cases sentenced within the Eastern District of Kentucky (EDKY). The following list does not compare the sentences imposed in all cases of producing child pornography within the EDKY, but is a summary compiled by AUSA David Marye of the majority of such cases prosecuted by the U.S. Attorney's Office in Lexington since 2013:

1. *U.S. v. Luis Antonio Caballero*, 14-CR-066-KKC, convicted through a guilty plea to a single count of production and sentenced to **360 months of imprisonment,** to be followed by a life term of supervised release. Caballero had a previous "hands-on" conviction. His guidelines range was 300 to 365 months.

2. *U.S. v. Mark Andrew Morris*, 15-CR-004-SS-JMH, convicted on all counts by a jury and **sentenced to 360 months of imprisonment,** to be followed by a life term of supervised release. (Convicted by a jury of two counts of 18 U.S.C. § 2251(a), 240 months on each of two counts of distribution and one count of receipt, and 120 months on one count of possession, concurrently, for **a total sentence of 360 months of imprisonment).**

3. *U.S. v. Cody Lee Herman*, 15-CR-065-KKC, convicted through a guilty plea to a single count of production and sentenced to **300 months of imprisonment,** to be followed by a 30-year term of supervised release. His guidelines range was 360 months.

---

[33] *United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010).
[34] *See Id.*

4. *U.S. v. Joseph David Martin,* 15-CR-011-GFVT, convicted on all counts by a jury and **sentenced to 360 months of imprisonment**, to be followed by a life term of supervised release. (Convicted by a jury of one count of 18 U.S.C. § 2251(a), 240 months on one count of receipt, and 120 months on one count of possession. Counts 1 and 2 were run concurrently, and count 3 was run consecutively, for a **total sentence of 480 months of imprisonment).** His guidelines ranges were 360 months on Count 1, 240 months on Count 2, and 120 months on Count 3.

5. *U.S. v. Corey Lane Snapp*, 15-CR-074-DCR, convicted through a guilty plea to a single count of production and sentenced to **215 months of imprisonment,** to be followed by a life term of supervised release. His guidelines range was 210-262 months.

6. *U.S. v. Melissa A. Torres*, 15-CR-015-GFVT, convicted through a guilty plea to a single count of production and sentenced to **300 months of imprisonment**, to be followed by a life term of supervised release. Her guidelines range was 360 months.

7. *U.S. v. Michael Steven Rose,* 16-CR-001-DLB, convicted through a guilty plea to a single count of production and sentenced to **420 months of imprisonment,** to be followed by a life term of supervised release. Rose had a previous "hands-on" conviction. His guidelines range was 360 months to life imprisonment. (Binding plea agreement pursuant to F. R. Cr. Proc. 11(c)(1)(C)).

8. *U.S. v Ryan Patrick Cooper,* 16-CR-001-DCR, convicted on all counts by a jury and **sentenced to 360 months of imprisonment,** to be followed by a life term of supervised release. (Convicted by a jury of one count of 18 U.S.C. § 2251(a), and 240 months on one count of distribution, run concurrently, for a **total sentence of 360 months of imprisonment**). His guidelines range was life imprisonment, but he was capped at 360 and 240 months.

9. *U.S. v Willie Ray Hubbard, Jr.,* 16-CR-061-KKC, convicted through a guilty plea to a single count of production and sentenced to **240 months of imprisonment**, to be followed by a life term of supervised release. His guidelines range was 210 to 262 months.

10. *U.S. v Steven Michael Smith,* 17-CR-023-JMH, convicted through a guilty plea to a single count of production and sentenced to **240 months of imprisonment**, to be followed by a life term of supervised release. His guidelines range was 360 months to life imprisonment.

11. *U.S. v Matthew Craig Fosson,* 17-CR-001-GFVT, convicted through a guilty plea to a single count of production and sentenced to **276 months of imprisonment**, to be followed by a life term of supervised release. His guidelines range was life imprisonment, capped at 360 months.

12. *U.S. v. Jordan Combs*, 17-CR-031-S-KKC, convicted on all counts by a jury and **sentenced to 360 months of imprisonment,** to be followed by a life term of supervised

release. (Convicted by a jury of four counts of 18 U.S.C. § 2251(a), 240 months on each of five counts of distribution and ten counts of receipt, and 120 months on one count of possession, concurrently, for **a total sentence of 360 months of imprisonment).** His guidelines range was life imprisonment.

13. *U.S. v. Saul Aguilar-Andres*, 17-CR-091-JMH and 18-CR-40-JMH, convicted by guilty plea to three counts and **sentenced to 360 months concurrently on both production counts** in 18-CR-40-JMH. However, this sentence was ordered to run consecutive to the sentence for distribution in 17-CR-91, **resulting in a sentence of 600 months.** His guidelines range was life imprisonment.

14. *U.S. v. Shannon S. Simonton*, 18-CR-14-GFVT, convicted through a guilty plea to a single count of production and **sentenced to 240 months,** to be followed by a life term of supervised release. Her guidelines range was life imprisonment.

15. *U.S. v. Bobby T. Cassady*, 18-CR-104-JMH, convicted through a guilty plea and **sentenced to 180 months**, to be followed by a life term of supervised release. His guidelines range was 188 months to 235 months.

16. *U.S. v. Richard E. Derringer,* 19-56-DCR, convicted by jury trial for conspiracy to produce, production, and possession of child pornography as well as distribution of methamphetamine. **Sentenced to 1200 months,** to be followed by a life term of supervised release.

**G. The Need to Provide Restitution**

18 U.S.C. § 3553(a)(7) contains the final factor courts are to consider when imposing sentence: "the need to provide restitution to any victims of the offense." In turn, 18 U.S.C. § 2259(a) and (b)(4) make the entry of an order of restitution mandatory in any case involving an offense contained in chapter 110, which includes the offense of which the Defendant has been convicted. However, the United States requests an additional ninety days within which to resolve the matter of restitution, pursuant to 18 U.S.C. § 3664(5). The United States also respectfully requests the Court to permit this sentencing memorandum to serve as the equivalent of the notice required by 18 U.S.C. § 3664(d)(5).

### III.  CONCLUSION

Defendant deserves a lengthy sentence given the "direct and lasting" harm that he inflicted upon E.Y.[35]

Respectfully submitted,

ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY

By:   s/ Mary Lauren Melton
      Assistant United States Attorney
      260 W. Vine Street, Suite 300
      Lexington, Kentucky 40507-1612
      (859) 685-4802
      FAX (859) 233-2747
      Mary.Melton@usdoj.gov

---

[35] *See Pelloski*, 31 F. Supp. 3d at 954.

CERTIFICATE OF SERVICE

On August 25, 2020, I electronically filed this motion through the ECF system, causing this pleading to be served on counsel of record.

                                                                       s/ Mary Lauren Melton
                                                                       Assistant United States Attorney