```
                       UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF KENTUCKY
                       CENTRAL DIVISION AT LEXINGTON


                                  - - -
 UNITED STATES OF AMERICA,       .  Case No. 5:19-CR-00178
                                 .
          Plaintiff,             .
                                 .  Lexington, Kentucky
          - v -                  .
                                 .  Monday, May 29, 2020
 WILLIAM MICHAEL FIELDS JUNIOR,  .  2:00 p.m.
                                 .
          Defendant.             .
                                  - - -

            TRANSCRIPT OF MOTION HEARING PROCEEDINGS
               BEFORE THE HONORABLE DANNY C. REEVES
                UNITED STATES DISTRICT COURT JUDGE

                                  - - -


 For the United States:     ERIN ROTH, ESQ.
                            MARY LAUREN MELTON, ESQ.
                            Assistant U.S. Attorneys
                            United States Attorney's Office
                            260 West Vine Street, Suite 300
                            Lexington, Kentucky  40507

 For the Defendant:         CHRISTOPHER A. SPEDDING, ESQ.
                            Spedding Law Office
                            271 West Short Street, Suite 402
                            Lexington, Kentucky  40507

 Court Reporter:            LINDA S. MULLEN, RDR, CRR
                            Official Court Reporter
                            101 Barr Street
                            Lexington, Kentucky  40507


 Proceedings recorded by mechanical stenography, transcript
 produced by computer.
```

1        (Proceedings in open court, May 29, 2020, 2:00 p.m.)
2        THE COURT:  Thank you.
3        Madam Clerk, would you call the matter scheduled for 2:00,
4   please.
5        THE CLERK:  Yes, Your Honor.  Lexington Criminal Action
6   Number 19-178, United States of America versus William Michael
7   Fields Jr., called for a motion hearing.
8        THE COURT:  Thank you.  Would counsel state their
9   appearances, please.
10       MS. ROTH:  Good afternoon, Your Honor.  Erin Roth and Mary
11  Melton on behalf of the United States.
12       THE COURT:  Thank you.
13       Mr. Spedding.
14       MR. SPEDDING:  Good morning.  Christopher Spedding for
15  William Michael Fields Jr., who is seated to my left.
16       THE COURT:  All right.  Thank you.
17       This matter is scheduled for a hearing on Mr. Spredding's
18  motion to withdraw as counsel in the case.
19       I have reviewed the motion as well as the United States'
20  response.  The United States does object to the motion to
21  continue.  The motion is filed within the time in which counsel
22  would have to show good cause to withdraw under the local
23  rules.
24       And the Court does consider this matter under the line of
25  authority *Benitez* and *Isles*, so we'll address the motion at

1   this time.
2       I am going to ask counsel to provide further information
3   about the nature of the conflict, but caution that if counsel
4   wishes to discuss any matter that would be covered by the
5   attorney-client privilege, we'll need to ask members of the
6   public and counsel for the United States to step outside while
7   that information is provided.
8       However, information regarding discovery that has been
9   produced and other issues that would not be subject to the
10  privilege, I believe the government may be able to provide some
11  information on those issues.
12      So with that bit of instruction, Mr. Spedding.
13      MR. SPEDDING:  Thank you, Your Honor.  I filed the motion
14  to withdraw shortly after a conversation that I had with
15  Mr. Fields via video conference between my office and the
16  Fayette County Jail.  During that conference, he indicated to
17  me that he was relieving me as counsel of record and that he
18  had retained alternate or substitute counsel.
19      And I indicated to him that, while I can't remember
20  exactly what I said, but I indicated to him that that was
21  certainly his prerogative and no hard feelings, so to speak.
22  And I didn't know how the Court would receive that, as far as
23  whether or not it would have any effect on any kind of
24  continuance or anything like that.
25      Subsequent to the filing of that motion, I think it was

1  actually that afternoon, I was given some additional discovery
2  by the United States.  It contained recorded phone calls
3  between Mr. Fields and -- this particular person's
4  unidentified.  I don't know who it was.
5      But during that conversation, I'm not concerned about the
6  attorney-client privilege area because it's obviously on the
7  record.  He, again, expressed his dissatisfaction with me and
8  my approach to how the case should be resolved.
9      And at one point I cited there in my supplement, he
10 indicates that he may end up filing a bar complaint against me.
11 Which, when I heard that, in my mind, professionally and
12 ethically, it raised red flags.  And I think it takes what
13 could have been a perceived conflict, takes it up into the
14 realm of an actual conflict between Mr. Fields and I.
15     I understand that the United States objects to it, and I
16 certainly understand their -- at least their initial response,
17 that's fine.
18     But since that time, I've been provided with additional
19 recordings between Mr. Fields and family members, and one
20 gentleman in particular, and these conversations make it
21 abundantly clear to me that the attorney-client relationship
22 between Mr. Fields and I, for whatever reason, has eroded to
23 the point where I no longer feel that I can be effective as his
24 attorney.
25     I certainly don't take these situations lightly, I would

1   much rather come in here and tell you Monday morning that I'm
2   ready to go to trial and announce ready, but I can tell you
3   today that I would not be able do that at this point because of
4   the reasons I just announced to the Court.
5       And while I understand the victim's rights and the
6   interests of justice and all of these types of prevailing
7   interests in this case, I do feel that, in this particular
8   case, under these particular circumstances, that it would be
9   best if Mr. Fields was allowed to hire an alternate counsel.
10      THE COURT:  He's had that opportunity, right?
11      MR. SPEDDING:  I have --
12      THE COURT:  That has not happened.
13      MR. SPEDDING:  I guess -- I can tell you this.  There has
14  been another attorney that has been consulted.  I received a
15  text message from this attorney today that told me that I was
16  free to tell you that, in the event that this case was
17  continued, he would be entering his appearance the first part
18  of the week, but that he could not enter it at this time and be
19  ready to go to trial on Monday.
20      THE COURT:  A couple of questions for you, Mr. Spedding.
21      Let's go back and look at the background of this case,
22  because this case was originally scheduled for trial in
23  December.
24      MR. SPEDDING:  Yes, sir.
25      THE COURT:  And it's been continued several times since

1  then.

2  MR. SPEDDING:  Yes, sir.

3  THE COURT:  What is to prevent a defendant who doesn't
4  want to go to trial, for whatever reason, strategical purpose
5  or whatever, he doesn't want to go to trial, from continuing to
6  ask for a continuance.  And when it's not granted, say I've got
7  a problem with my attorney, I'm going to fire him.  And
8  therefore, if the motion is granted, gets a continuance so the
9  other attorney can then come into the case.

10  So my options at this point would be, if I allow you to
11  withdraw, Mr. Fields may have to represent himself on Monday if
12  this new counsel, whoever it may be, doesn't come in and is not
13  ready for trial.  If we proceed to trial on Monday, it will
14  either be with you as counsel, Mr. Fields, or with you as
15  standby counsel in the case.

16  Of course, as you know, under the local rules, I think
17  your motion to withdraw is to be filed within 21 days --

18  MR. SPEDDING:  I believe that's correct.

19  THE COURT:  -- to prevent this exact situation from
20  happening.

21  MR. SPEDDING:  Yes, sir.

22  THE COURT:  And you have not told me yet why you have a
23  real conflict in the case, other than there's some disagreement
24  about the way the matter ought to be resolved.  And that's not
25  uncommon to have a person that's charged with an offense

1  disagree with an attorney that tells him we should do it a
2  certain way.
3      MR. SPEDDING:  I agree with that.
4      THE COURT:  So in other words, there hasn't been the first
5  bit of information provided to me that would allow me to
6  determine under this line of cases, *Benitez* and *Isles* that I've
7  just referenced, that there is a breakdown in communication
8  such that you could not represent him.
9      Now, he may not want you to look at discovery.  And in
10 your motion, you say he wouldn't agree to meet with you, I
11 think on the 13th or be brought over here on the 13th for a
12 meeting.
13     MR. SPEDDING:  On the 13th.  And then I had it lined up
14 for him to be brought here on the 14th.
15     THE COURT:  Because what's happened in the middle of all
16 these continuances, of course we've gone through this COVID
17 pandemic and a lot of the detention facilities have limited the
18 amount of contact that you can have with individuals there.
19     So to remedy that situation, in Fayette County, for
20 example, the marshals have made arrangements for individuals to
21 be brought to the courthouse so they can prepare for trial and
22 meet with their attorneys.
23     And, of course, Mr. Fields has been able to do that for a
24 couple of weeks now and he's chosen not to, according to the
25 motion that's been filed.  So the only conclusion that I can

```
 1   draw based on the information that's been provided is
 2   Mr. Fields is attempting to prevent this case from going
 3   forward on the date that's now been scheduled, which is
 4   June 1st, after several continuances have been granted.
 5         MR. SPEDDING:  Well, what I can -- the first answer I
 6   can -- that I'll give you is I don't think there's anything
 7   that could prevent somebody from taking the actions that you
 8   pose in your first scenario there.
 9         THE COURT:  Well, that's what happened here, isn't it?
10         MR. SPEDDING:  Well, I think that I respectfully differ
11   with you on that.  And the reason being is because I think in a
12   situation as the Court has set out -- well, I don't know if
13   this is true or not -- but I know that in this particular case,
14   we have actual tangible evidence, conversations between the
15   defendant and other individuals, that expresses his desire not
16   to go to trial with me.
17         That he, from what I can hear, may well end up filing a
18   bar complaint against me, and has actually terminated me.  And
19   throughout these -- these conversations are rife with
20   references to the fact that he doesn't feel that I'm
21   representing him in the fashion that I should.  And we're not
22   prepared to go to trial on Monday.
23         THE COURT:  This case has been filed for several months.
24   As I indicated, first scheduled for trial in December, and then
25   we had the series of continuances and the parties had indicated
```

1   that there was some additional discovery produced.  I gave you
2   a continuance for those reasons.  And so this matter has been
3   pending for a long time.
4       MR. SPEDDING:  Yes, sir.
5       THE COURT:  As you indicate, I think it's under 3771,
6   victim's rights statute, that not only the victim, but the
7   public has the right to have this matter concluded.
8       MR. SPEDDING:  Yes, sir.
9       THE COURT:  And it would appear to me there may be a
10  strategic reason here that the defendant is perhaps wishing
11  that the victim is no longer present in the state and therefore
12  may not have to go to trial.  That's not going to happen.  The
13  case is going to go to trial.
14      So you can confer with Mr. Fields, I'm planning to go
15  ahead on the 1st of June, which is Monday.
16      Now, he has a right to represent himself and if he chooses
17  to exercise that right, if he indicates he wishes to, I need to
18  go over some things with him, because obviously he is not an
19  attorney, and I do want to advise him of some of the pitfalls
20  if that is his decision.
21      If he requests standby counsel, that's another issue for
22  us to talk about.
23      But I'm going to deny your motion to withdraw from the
24  case at this time based upon the information that's been
25  provided.  It's inefficient for the Court to grant the motion

1   at this late stage.
2           So do you need additional time to confer with Mr. Fields?
3   If you do, we'll take a brief recess.
4           All right.  We will be recess until Counsel indicates they
5   are ready to have further conversations.
6           (A recess was taken from 2:13 p.m. to 2:36 p.m.)
7           THE COURT:  We'll continue at this time the hearing in
8   United States versus William Michael Fields, Lexington Criminal
9   Action 19-178.
10          Mr. Spedding, has Mr. Fields had further conversations
11  about how he wishes to proceed on Monday?
12          MR. SPEDDING:  Your Honor, we have conferred and I will be
13  here Monday morning to help him as counsel.
14          THE COURT:  There are a few matters I do want to go over
15  with you now about the jury selection.
16          Elizabeth, do you have those questionnaires?  Upstairs?
17          When this case was originally scheduled for May 18th, we
18  sent out notices to a sufficient number of jurors to make sure
19  that we would have the number needed for trial.  I think we
20  sent out maybe 90 notices to jurors, along with a brief
21  questionnaire that has some very generic questions and also has
22  some questions about concerns about the virus in that
23  questionnaire.
24          Those questionnaires were returned.  They were to be
25  returned prior to the trial on the 18th.  We have those

1   questionnaires for those jurors that will be called in on
2   Monday.  And I've had copies made for the United States and the
3   defendant, and we'll give those to you here in just a moment.
4        When we sent out the notices, we also advised the jury
5   that we would be conducting the jury selection in two phases.
6   So we will have half of the jurors coming in at 9:00, I'll have
7   the second group coming in about an hour later, that allows us
8   to screen the jurors as they are coming in.  There's not a
9   backlog when they are coming in, but it also allows us to
10  socially distance in the courtroom when we're doing the voir
11  dire.
12       We're actually in trial this week, or I'm in trial this
13  week, and this is the procedure we're following.
14       We'll start with the first group on Monday at 9:00.  We'll
15  go through the voir dire.  I'll begin with my questions.
16  Counsel, each side will get 15 minutes for follow-up voir dire.
17  You'll exercise your challenges for cause at the bench, bring
18  your mask.  If you come up to bench, you need to have a mask.
19  All the jurors will have on masks, the defendant as well, any
20  custodial witnesses.
21       We'll ask you to exercise your challenges for cause.  And
22  then those that are not stricken for cause, we'll send those
23  jurors back down.  We have -- we're using either Courtroom D or
24  the jury assembly room so that everybody can be separated in
25  those two areas.

1     We'll bring the second group up, follow the same
2 procedure.  After challenges for cause against that second
3 group, that group will be sent down, I'll ask the clerk to
4 identify 31 jurors at that point.  The jurors will not be
5 present in the courtroom.
6     But after the second group is sent down, the clerk will
7 call the numbers of 31 jurors that have not been excused from
8 those two groups.  We will then take a recess of 20 minutes to
9 allow the attorneys to exercise their peremptory challenges.
10     The first 28 of the 31 will be for the main jury.  The
11 last three will be for the panel of alternates.  Against that
12 first panel of 28 that will be called, the defendant gets 10
13 peremptory challenges, the United States gets six.  The first
14 12 jurors called but not stricken from that group of 28 will be
15 the jury that will be seated in the case.
16     From the remaining three jurors on that list of 31, the
17 last three would be for the alternates.  Each side gets one
18 strike against the panel of three potential alternates.
19 There's only going to be one alternate seated.  So the first
20 alternate called but not stricken will be the alternate that
21 will be seated in the case.
22     So after you've exercised your challenges against those
23 two panels, the clerk will then go downstairs, identify the
24 jurors that will be trying the case plus the alternate, they
25 will come back upstairs into the courtroom.  I will put them in

1 the jury box, administer the oath.  In all likelihood, it will
2 be time for lunch or we may be getting closer to 1:00 by that
3 point, but we'll take our lunch break.
4     I'm having lunches brought in for jurors, so we've been
5 taking about 40 minutes for the lunch break.
6     We'll then proceed -- assuming we do this after lunch,
7 we'll proceed with preliminary jury instructions, which are
8 very basic.  They include just the nuts and bolts of what the
9 jury can and can't do, it will also include the elements that
10 the government is required to prove to obtain a conviction for
11 the two counts that are charged in the case.
12     When you come into the courtroom at 8:30 on Monday, you
13 will have a draft of those preliminary instructions and you
14 will also have a draft statement of the case.  It will probably
15 be different than what you've submitted, but you'll have a very
16 basic statement of the case that identifies the charges and the
17 position of the defendant in the case.  Usually it's no more
18 than one or two paragraphs, usually one page or maybe a little
19 over one page, so it's very basic.  I use the statement of the
20 case to identify for the jury what the case is about.  That's
21 as far as I go with it.  I don't get into much detail other
22 than that.
23     In the preliminary jury instructions, I do identify the
24 charges and the elements that have to be proven.
25     And so after we do the preliminary instructions, we'll

1  have opening statements.  And on Monday morning, you can tell
2  me how much time you want for your opening.  And then at that
3  point, we will proceed with presentation of proof.
4      Getting back to the two panels, we have -- I believe the
5  magistrate has excused a number from that original group and I
6  think we have 60 we're calling in, that doesn't mean 60 will be
7  here.  But 60 is supposed to be here, 30 in the first group, 30
8  in the second group.
9      And you'll have the basic information that they provided
10 through the questionnaires as well as the other information
11 that you typically can get from the clerk.  Did you get those
12 already?  If you could just give me -- let me have one and we
13 can give one set to the attorneys, each side.
14     You will see these questionnaires identify the potential
15 jurors by number.  But some may also contain some personal
16 identifying information so you should consider this information
17 the same as you would other juror information that you do
18 receive.
19     But it will, for example, have if there's any reason they
20 can't serve.  This originally was set for May 18th, that's why
21 you'll see those dates.  Identification if the person has ever
22 worked in law enforcement, for example, in the area of criminal
23 defense or public defender or investigator.  Ever worked for a
24 judge or personnel.  Ever served as a juror.  Ever been
25 arrested for a crime.  And then we have some questions related

1   to COVID, it looks like beginning with question number 8
2   through 12.
3       As you can see, this is very generic information that I
4   typically would cover, but it's intended to, number one, allow
5   you to have the information in advance, so if you do need to
6   ask follow-up questions, you can certainly do that, inasmuch as
7   you have limited time.
8       But it also covers a number of areas that I typically
9   would cover during voir dire.  So my voir dire will be a little
10  shorter than it typically would be, but keep in mind we will be
11  going through this process two times.  So you would have that
12  information, you can look over that over the weekend.
13      And again, we'll have those two groups of jurors,
14  hopefully 30 and 30, but we may have a few less than that.  But
15  we do need 31 after we've gone through challenges for the 28
16  plus the panel for the alternates.  So that's the way we plan
17  to proceed.
18      I have been taking one break in the morning and one break
19  in the afternoon, about midway through.  It's uncomfortable to
20  wear these masks in the courtroom for a lengthy period of time,
21  so I do like to give everyone a break to be able to take those
22  off and give the jury a break as well.
23      In the trial we're in currently, we're starting at 9:00,
24  we're taking about 40 minutes for lunch and ending around 4:30.
25  The jury is deliberating now, as a matter of fact.  And my plan

1     is, if for some reason they don't complete their deliberations
2     today, I may bring them back at 1:30 on Monday because at that
3     point we'll have a room that will be empty that they will be
4     able to use for their deliberations.
5          Also, just in terms of the nuts and bolts, the other thing
6     we're doing is when we take breaks for the jury, half of the
7     jurors are going back into the jury deliberation room that's
8     behind Courtroom A, and we have another jury deliberation room
9     that was used years ago, it's referred to as the smoking room
10    for jurors that smoked, we're using that room for another group
11    of the jurors.  So we have about half in one room and about
12    half in the other.  That's the way we're handling that until
13    they begin their deliberations, and we're using the jury
14    assembly room for that.
15         I know that's a lot of information, but I do want to
16    answer any questions if you have questions now.  If you don't,
17    we can discuss this further on Monday at 8:30.  At that time
18    I'll give you the statement of the case as well as the
19    preliminary jury instructions.
20         The other thing that I have been doing is I've been giving
21    a draft set of what may be the final instructions, what I put
22    together to that point, realizing they are not final, but it's
23    based on what the parties have requested or what I have used in
24    previous cases.  If you would like for me to do that, I'll try
25    to get that to you, it may not be first thing Monday morning,

1   but I'll try to get that to you at some point on Monday, if you
2   would like to begin looking through those instructions.
3        Is that your preference?
4        MS. ROTH:  That would be great, Your Honor.  I do have one
5   question.  In addressing the victim, I wanted to get the
6   Court's input on how we plan to do that.  What we would propose
7   would just be to ask her her first name, and use that first
8   name only throughout the case.  Also clarifying her initials,
9   she goes by a different name than her initials would indicate,
10  so that could be confusing.
11       THE COURT:  All right.
12       MS. ROTH:  With the indictment.
13       THE COURT:  So you would say that you've been identified
14  in various filings as --
15       MS. ROTH:  Correct.
16       THE COURT:  -- through those initials?
17       MS. ROTH:  With the initials.  But you know, I think it's
18  important to recognize her humanity by using a name.  We would
19  just propose to only use her first name to help keep her
20  identity.
21       THE COURT:  Yes, ma'am, I think that's an appropriate way
22  to proceed in the case.
23       Mr. Spedding, do you have any problems with that?
24       MR. SPEDDING:  I don't, Your Honor.  One question I was
25  going to ask.  On the jury information on these

```
 1   questionnaires --
 2         THE COURT:  Yes, sir.
 3         MR. SPEDDING:  -- in the two groups, will they be divided
 4   up numerically?
 5         THE COURT:  I'm not sure how those are set up to be called
 6   in.  I'm assuming that they will, but as soon as I say yes,
 7   they will -- I'm not sure how the clerk was doing that in terms
 8   of how they are divided.  We'll try to get that information for
 9   you before you leave today.
10         Susan, would Pam know that?
11         THE CLERK:  She's gone for the day, but I'll find out.
12         THE COURT:  We'll try to get that information for you just
13   as soon as we finish here this afternoon.
14         MR. SPEDDING:  Thank you, Judge.
15         THE COURT:  I just don't know.  The magistrate judge
16   handles excuses.  This is really the first information I've
17   gotten with this group of jurors.  So I assume these will all
18   be in numerical order -- well, no, they are not.  I see that
19   they are not.
20         We'll see if we can get the number range from the group
21   that's 9:00 versus the 10:00 group.  I would say that we would
22   call the second group at 10:30, based on my experience this
23   week, but it's too late, I think, to notify them of the change
24   of time.  If we do that, we'll have a bunch that will not show.
25   So we'll keep the times the same, 9 and 10, but it probably
```

1  would be 10:30 or maybe a little bit later before we would get
2  to the second group of jurors.
3       MR. SPEDDING:  Okay, thank you.
4       MS. ROTH:  Your Honor, this isn't procedural, but I feel
5  like I should say this for the record as it would relate to
6  Mr. Spedding's motion to withdraw.  I just want to put on the
7  record that he has continued to be involved in preparing for
8  this case.  He has come to our office numerous times this week
9  to review evidence, he has called me about evidence.  It is
10 apparent to me that he is still exercising due diligence in
11 preparing and understanding he may not have been allowed to
12 withdraw from this case.
13      THE COURT:  Yes, ma'am.
14      MS. ROTH:  And that he is preparing himself to be ready to
15 go to trial.  I understand the defendant has refused to meet
16 with him, but he has done everything that I would expect and am
17 used to a defense attorney doing to prepare themselves.
18      THE COURT:  All right.  If you feel it necessary to file
19 an affidavit in the case under seal outlining some of those
20 matters, then you can certainly feel free do that.
21      MS. ROTH:  I can do that, if it would be helpful.
22      THE COURT:  All right.  Thank you.
23      Any other issues we can take up in the case at this time?
24      MS. ROTH:  No, Your Honor.  Thank you.
25      THE COURT:  All right.  Thank you.  We will be in recess

1  in this case until 8:30 on Monday morning.
2          (Proceedings concluded at 2:51 p.m.)
3
4
5                    C E R T I F I C A T E
6          I, Linda S. Mullen, RDR, CRR, do hereby certify that
7  the foregoing is a correct transcript from the record of
8  proceedings in this above-entitled matter.
9
10 /s/Linda S. Mullen              January 13, 2021
   Linda S. Mullen, RDR, CRR      Date of Certification
11 Official Court Reporter