```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                    CENTRAL DIVISION AT LEXINGTON

                              - - -
UNITED STATES OF AMERICA,       .    Case No. 5:19-CR-00178
                                .
           Plaintiff,           .    Lexington, Kentucky
                                .
         - v -                  .    Monday, June 1, 2020
                                .
WILLIAM MICHAEL FIELDS JUNIOR,  .
                                .    JURY TRIAL DAY 1 OF 2
           Defendant.           .    OPENING STATEMENTS
                              - - -

       EXCERPT OF TRANSCRIPT OF JURY TRIAL PROCEEDINGS
            BEFORE THE HONORABLE DANNY C. REEVES
              UNITED STATES DISTRICT COURT JUDGE

                              - - -


For the United States:       ERIN ROTH, ESQ.
                             MARY LAUREN MELTON, ESQ.
                             Assistant U.S. Attorneys
                             United States Attorney's Office
                             260 West Vine Street, Suite 300
                             Lexington, Kentucky  40507

For the Defendant:           CHRISTOPHER A. SPEDDING, ESQ.
                             Spedding Law Office
                             271 West Short Street, Suite 402
                             Lexington, Kentucky  40507

Court Reporter:              LINDA S. MULLEN, RDR, CRR
                             Official Court Reporter
                             101 Barr Street
                             Lexington, Kentucky  40507


Proceedings recorded by mechanical stenography, transcript
produced by computer.
```

1   (Voir dire was conducted on 6/1/2020, and a jury was impaneled
2   and sworn.)
3           THE COURT:  At this time, Ms. Roth, will you be presenting
4   the opening on behalf of United States?
5           MS. ROTH:  Yes, Your Honor.
6           THE COURT:  All right.  You may proceed.
7           MS. ROTH:  May it please the Court.
8           THE COURT:  Ms. Roth.
9           MS. ROTH:  Mr. Spedding, ladies and gentlemen of the jury.
10          This is a case about an imbalance of power.  On the one
11  hand, it's about a man with power.  The power that comes with
12  being an elected official.  The power that comes with being a
13  firefighter.  The power that comes with being someone in a
14  position of authority.  The power of being someone in law
15  enforcement.
16          On the other hand, this is a case about a lack of power.
17  The lack of power that comes with being a 17-year-old high
18  school junior being pursued by a 36-year-old married father of
19  two.  The lack of power that comes with being used sexually by
20  someone in a position of trust in the community.  The lack of
21  power that comes with being a teenager, afraid to tell your mom
22  what's happening because you're afraid you will be in trouble.
23  In short, it's the lack of power that comes with being a child.
24          Now, the defendant in this case you've heard is charged
25  with two counts of producing child pornography, which is using

1  someone under the age of 18 to make visual representations,
2  videos, pictures of sexually explicit conduct.  That's it.
3      The facts of this case take us back to late 2018, early
4  2019.  At that time the victim in this case, we're going to
5  call Grace, was a high school junior, she was 17.  She was shy,
6  reserved, and a bit of a tomboy.  She was interested in a
7  career in law enforcement, being a firefighter, being an EMT,
8  maybe the military.  She was part of her school's ROTC program
9  and a member of an organization called the Police Explorers.
10     You'll hear that the Police Explorers is a program for
11 young people interested in careers in law enforcement to learn
12 more about the profession.  It involves meetings, hands-on
13 activities, and experiences.
14     At the same time, the defendant in this case was a
15 36-year-old married father of two.  He was a constable in
16 Harrison County, which is an elected official, and that
17 election gave him the power of a law enforcement officer.  He
18 had the powers of arrest, power to patrol, power to serve legal
19 papers.  He was also a volunteer firefighter in Bourbon County,
20 and he taught EMT classes also in Bourbon County.
21     Now, the paths of Grace and the defendant crossed one day
22 in late 2018 when a friend of hers named Jacob asked if she
23 wanted to come hang out at the fire station in Bourbon County.
24 She accepted.  And while she was there, she met the defendant,
25 Mr. Fields.  You'll hear that very first day he asked her to go

1   run an errand with him in his car.
2          She said, "Can my friend Jacob come too?"
3          And he said, "No, just you."
4          Now, you're going to hear she was a little uncomfortable
5   with that, she was shy.  She didn't know this man.  But you'll
6   hear she thought, he's a firefighter, he's married, surely I
7   can trust him, surely he doesn't have inappropriate intentions
8   towards me.
9          Sadly, she was wrong.  On that very first car ride the
10  defendant asked her, "Hey, do you like older men?"  He reached
11  out and touched her thigh.
12         He said, "Why don't you add me on Snapchat?"  Which, if
13  you don't know, is an app for your phone and it lets you send
14  messages and pictures, which usually then deletes soon after.
15         You'll hear that very night, first night they ever met, he
16  started asking her for pictures of herself and sending her
17  pictures of himself.  Not just pictures of his face, pictures
18  of his penis.
19         You will hear that the defendant continued to pursue Grace
20  as months went on.  He started showing up where she was, he
21  would visit her at her workplace.  He started socializing with
22  her and her friends, and he even asked if he could start
23  attending the Police Explorers program, which you will hear is
24  the one place she felt she could get away from the defendant
25  and just be a normal kid.

1      You will hear that the defendant used his position of
2 authority to gain favor with Grace. He talked with her about
3 getting her accepted into his EMT classes. He gave her a
4 police radio. He took her to hang out at the EMT facility, to
5 look at ambulances, all things that would impress a young girl
6 interested in a career in law enforcement or as an EMT.
7      As I think you have realized by now, he wasn't doing that
8 simply because he wanted to mentor a young person interested in
9 a career in civil service. He did those things because he
10 wanted to use Grace sexually.
11      Ladies and gentlemen, you will hear that that is exactly
12 what he did. But he did not just want to use her sexually, the
13 evidence will show that he wanted to videotape and film and
14 photograph himself using her sexually. And that that is also
15 what he did, he filmed himself having sex with a child on two
16 separate occasions.
17      Count 1 of the indictment relates to an incident that
18 happened on March 17th of 2019. The evidence that you will
19 hear is that on that day, the defendant asked Grace if she
20 wanted to go look at the ambulances. You will hear that she
21 went with him, and that on the way he gave her alcohol, those
22 little bottles of alcohol, and he told her, "I bought these
23 just for you."
24      You will hear that by the time she got there, she was
25 intoxicated and that he put her in the back of that ambulance,

1  laid her over a bench, took off her pants and had sex with her.
2  While he did it, he asked to use her phone and he took pictures
3  of it.
4      You will hear that the next morning she woke up at home,
5  she saw those pictures on her phone.  You will hear that she
6  was bothered by them, she was afraid someone would see them,
7  she was worried about them.  She deleted them, but not before
8  seeing that the defendant had sent them to himself using
9  Snapchat.
10     The next incident with which the defendant is charged in
11 Count 2 of the indictment relates to an incident that happened
12 less than a week later, on March 23rd, 2019.  On that day, the
13 defendant called Grace and said, "Hey, you want to come hang
14 out with me at the EMT training facility?"  You'll hear she had
15 already been drinking that night, that helped lower her
16 resistance and her inhibitions.  She said yes, and she went to
17 the EMT training facility.
18     You will hear on that night the defendant picked Grace up,
19 put her over a desk, took off her pants, and again proceeded to
20 have sex with her, both orally and vaginally, as well as to
21 penetrate her with his fingers, both vaginally and anally.
22 Again, he photographed and filmed himself engaged in these sex
23 acts with a child.
24     You will hear that there were five videos and two pictures
25 found of the sexual events that occurred that night.

1          Eventually, ladies and gentlemen, you will hear that the
2    defendant stopped pursuing Grace, not voluntarily, but because
3    he started to be investigated by law enforcement.
4          You will hear that one evening after a Police Explorers
5    event he attended, he invited Grace and several other teenagers
6    back to his home while his wife was gone.  He gave the kids
7    alcohol, and word started to get out in the community.
8          An investigation was launched into providing alcohol to
9    minors.  And during the course of that investigation, the
10   defendant was discovered to have this inappropriate
11   relationship with Grace.  That investigation led the police to
12   take the phone of both Grace and the defendant, and to have the
13   information that was found on those phones analyzed, which is
14   what led to the recovery of the pictures and the videos that
15   I've talked with you about here today.
16         Most of them were found on Grace's phone, but some of them
17   were also found on the defendant's.
18         You're going to hear from several witnesses during the
19   course of this trial, many of them are law enforcement
20   witnesses.  You're going to hear from Sergeant Nathan Linville,
21   who worked with the Cynthiana Police Department.  He's going to
22   tell you about the Police Explorers program, what it was, what
23   it was meant to be and about the defendant asking, while Grace
24   was a participant, if he could start coming to these Police
25   Explorers meeting.

1     You're going to hear from Detective Alan Judy who knows
2  how to operate a program called Cellebrite, which law
3  enforcement officers use to retrieve information from cell
4  phones.  You're going to hear he ran that program, Cellebrite,
5  on Grace's phone.
6     You're going to hear from Mike Littrell, who is a
7  detective with the Kentucky Attorney General's Office Cyber
8  Crimes Division.  He is a forensic analyst, and what he does is
9  specialize in getting evidence and information from electronic
10 evidence, computers, cell phones.  And he looked at both
11 Grace's and the defendant's phone in this case.  He's going to
12 talk to you about what was found on each of those.
13    And you're going to hear from Detective Justin Jett, who
14 was the investigator in the case involving Grace and the
15 defendant.
16    But most importantly, ladies and gentlemen, you're going
17 to hear from Grace herself.  She is going to tell you her
18 story, how she came to know the defendant, how he ended up here
19 today.  She's going to tell you about the sexual acts that are
20 portrayed on those videos and the circumstances that led to
21 making them.  And I want to warn you, it's going to be very
22 hard for her.
23    She is naturally shy, she is naturally quiet, and we are
24 asking her to get up in front of a courtroom full of people and
25 talk about very personal, very intimate facts.  They are things

1    that most of us would have a hard time talking with our best
2    friends about, and we're going to ask an 18-year-old girl to
3    get on the stand, talk about them with a courtroom full of
4    strangers.  It's going to be hard.  She's going to do it
5    because it's important, and it's important that you hear from
6    her.
7         You're also going to be shown the video and photographic
8    evidence in this case.  They are graphic, they are disturbing,
9    and they are probably going to be hard for you to watch.  But
10   ladies and gentlemen, it is the evidence in this case, and I'm
11   sorry I have to show it to you.  But it is important that you
12   pay close attention to it when you watch what is depicted on
13   those videos.
14        Ladies and gentlemen, after hearing all of that evidence
15   and seeing it for yourself, we believe that you will be able to
16   find beyond all reasonable doubt that the defendant committed
17   the crimes with which he is charged.  And at the conclusion of
18   the case, we will ask you to return a verdict that is
19   consistent with that evidence, a verdict of guilty on all
20   counts.
21        Thank you.
22        THE COURT:  Thank you, Ms. Roth.
23        Mr. Spedding.
24        MR. SPEDDING:  Thank you, Your Honor.  May it please the
25   Court.

1       THE COURT: Mr. Spedding.

2       MR. SPEDDING: Ms. Roth, Ms. Melton, Detective Jett,
3  Mr. Fields, ladies and gentlemen of the jury. Ms. Roth paints
4  a compelling picture of the government's case or what they
5  expect the government's case to be.

6       Again, I can't stand up here and dispute the fact that
7  what you're going to see is graphic. I can't sit here and tell
8  you that when you see this, when you hear this evidence, that
9  you're going to like Michael Fields because you're probably
10 not. You're probably not going to like his involvement in what
11 he's been charged with.

12      But I also ask you to do the job that you're here to do,
13 and that is to view the evidence as you see it in this case.
14 View it critically and decide from what you see who videotaped
15 who. Decide what you see and you make the determination
16 whether or not Mr. Fields is guilty of the events that Ms. Roth
17 and the United States has charged him with.

18      We're here today, obviously, because the government feels
19 that Mr. Fields has committed some very unpleasant acts. And
20 my belief is that when you hear the evidence in this case, and
21 I have the opportunity to question some of their witnesses,
22 that you're going to realize that while there is this legal
23 concept of -- Judge, may we approach?

24      THE COURT: Yes, sir.

25      (Bench conference on the record.)

1    MR. SPEDDING: Before I said anything in my opening, I
2 hate to interrupt it, but a lot was made in the United States'
3 opening about this consent issue. And what I want to do is
4 address that with the jury and try to explain to them the
5 difference between what legal consent would be and what I would
6 characterize as physical consent, because we're not here on a
7 rape charge.
8    And the impression that was created during the
9 government's opening is that he just forcibly engaged in these
10 acts with her and videotaped them. That's not what happened.
11 So I think I'm entitled to at least tell them that's what I
12 anticipate.
13    THE COURT: Okay. You can comment on what you think the
14 facts would be, but you cannot instruct the jury about legal
15 issues --
16    MR. SPEDDING: Yes, sir.
17    THE COURT: -- such as consent, which I think is what
18 you're trying to do. At the appropriate time, if this is a
19 disputed issue, I will instruct the jury on the definition of
20 what would be consent. We're not at that point.
21    MR. SPEDDING: Okay.
22    THE COURT: And so the Court previously ruled on the issue
23 in limine and that ruling will stand.
24    MR. SPEDDING: Yes, sir.
25    THE COURT: Thank you.

1      (Bench conference concluded.)

2      MR. SPEDDING:  Thank you, Judge.

3      Ladies and gentlemen, sorry about the interruption.  There
4 is going to be a distinction during the course of this case
5 over the term "consent."  And to me, and in my mind and where
6 we're coming from, that is going to be a big issue that you all
7 as jurors are going to have to take into consideration.

8      And what I'm going to ask you to do at the end of the case
9 is, I'm going to ask you to look at everything.  And I want you
10 to look at the -- I want you to look at Grace, I want you to
11 listen to these witnesses.  And I think it's up to you to
12 decide whether or not the issue of credibility comes into play.
13 It's up to you to decide who taped -- who videotaped these
14 acts.

15     I can't sit here and tell you that you're not going to see
16 these acts on those monitors, because you're going to.  But
17 just because you don't like somebody, just because you don't
18 agree with something that they may have done does not as jurors
19 enable you to convict him of a crime.

20     So what I'm asking you to do is to follow the law, look at
21 the evidence critically, apply your common sense to it.  And
22 I'm convinced and I'm confident that when you do that, you'll
23 come back and you'll find Mr. Fields not guilty.

24     Thank you.

25     THE COURT:  All right.  Thank you, Mr. Spedding.

1     Ladies and gentlemen, at this time we will take our lunch
2  break.  It's five minutes after 12, so we'll take a recess
3  until 12:45 this afternoon.  You should have your lunches back,
4  as I understand, in the two rooms that you'll be using.
5     After you've finished your lunch, if you do want to
6  stretch your legs or go out, you'll have to check with the
7  security officer to make sure that you can go down the
8  hallways.
9     And if we have any smokers on the panel, the security
10 officer will tell you where you'll be able to take a smoke
11 break as well.
12    Again, I do want to remind you of the admonition that was
13 given to you previously.  Please don't discuss the case among
14 yourselves while we are in recess.  Don't allow anyone to
15 approach you to discuss the matter.  Don't read, watch, or
16 listen to any accounts of the case, if there should be any.
17 Don't do any type of research or investigation on your own.
18    Please don't communicate through any form of social media
19 your position as a juror or anything about the case.
20    During the course of the trial, don't visit any of the
21 locations that might be discussed and, of course, don't make up
22 your mind about the matter until it is finally submitted to
23 you.
24    So with that admonition, the jury will be excused until
25 12:45 this afternoon.

1   (Jury left courtroom at 12:04 p.m.)

2   THE COURT:  Thank you.

3   Let's see if we have anything to take up outside the

4   presence of the jury?

5   MS. ROTH:  No, Your Honor.

6   MR. SPEDDING:  No, Your Honor.

7   THE COURT:  Be in recess until 12:45.

8   (A recess was taken at 12:04 p.m.)

9

10   C E R T I F I C A T E

11   I, Linda S. Mullen, RDR, CRR, do hereby certify that

12   the foregoing is a correct excerpted transcript from the record

13   of proceedings in this above-entitled matter.

14

15   /s/Linda S. Mullen                February 22, 2021
    Linda S. Mullen, RDR, CRR         Date of Certification
    Official Court Reporter

16

17

18

19

20

21

22

23

24

25