```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF KENTUCKY
 2                   CENTRAL DIVISION AT LEXINGTON


 3                            - - -
     UNITED STATES OF AMERICA,      .   Case No. 5:19-CR-00178
 4                                  .
               Plaintiff,           .   Lexington, Kentucky
 5                                  .   Tuesday, June 2, 2020
              - v -                 .   JURY TRIAL DAY 2 OF 2
 6                                  .
     WILLIAM MICHAEL FIELDS JUNIOR, .   RULE 29 MOTION
 7                                  .   CLOSING ARGUMENTS
               Defendant.           .   CHARGE BY THE COURT
 8                            - - -

 9         EXCERPT OF TRANSCRIPT OF JURY TRIAL PROCEEDINGS
               BEFORE THE HONORABLE DANNY C. REEVES
10              UNITED STATES DISTRICT COURT JUDGE

11                            - - -

12

13   For the United States:     ERIN ROTH, ESQ.
                                MARY LAUREN MELTON, ESQ.
14                              Assistant U.S. Attorneys
                                United States Attorney's Office
15                              260 West Vine Street, Suite 300
                                Lexington, Kentucky  40507
16
     For the Defendant:         CHRISTOPHER A. SPEDDING, ESQ.
17                              Spedding Law Office
                                271 West Short Street, Suite 402
18                              Lexington, Kentucky  40507

19   Court Reporter:            LINDA S. MULLEN, RDR, CRR
                                Official Court Reporter
20                              101 Barr Street
                                Lexington, Kentucky  40507
21

22   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
23

24

25
```

1        (Jury left courtroom at 9:49 a.m.)

2        THE COURT:  Thank you.  Please be seated.

3        The United States has closed presentation of its case in

4 chief.  I'll hear from the defendant as to any motions under

5 Rule 29 of the Federal Rules of Criminal Procedure.

6        MR. SPEDDING:  Your Honor, pursuant to Rule 29, we move

7 for the Court to enter an order --

8        THE COURT:  Judgment of acquittal?

9        MR. SPEDDING:  -- of judgment of acquittal, I'm sorry.

10        And, Your Honor, the reason being is, despite much of the

11 evidence that was shown, it's insufficient to sustain a

12 conviction to show that Mr. Fields was the one that was

13 actually taking the video.  I think the testimony of

14 Dr. Littrell bolsters that particular argument.

15        For that reason, Judge, we would ask you to enter a

16 judgment of acquittal on both counts of the indictment.

17        THE COURT:  All right.  Thank you.  I will overrule the

18 motion for judgment of acquittal.

19        You can be seated.

20        As to the elements that must be proven, the government

21 must show that the defendant employed, used, persuaded,

22 induced, or coerced a minor to engage in sexually explicit

23 conduct for the purpose of producing a visual depiction of the

24 conduct.

25        Second, that the visual depiction was produced or

1   transmitted using materials that were mailed, shipped, or

2   transported in or affecting interstate commerce by any means,

3   including a computer.  Of course it's not limited to just a

4   computer, it could be a phone, cell phone.

5        With regard to the first element, the defendant focuses on

6   the one manner in which the first element may be met, that is

7   using a minor to engage in sexually explicit conduct, and makes

8   the argument that he and he alone would be the person that

9   would have to hold the camera to engage in the conduct.

10       And the Court finds that the definition of use is broader

11  than just the defendant himself holding the camera.  For

12  example, in a recent case from this district in which I think

13  Ms. Melton participated, the defendant had his girlfriend use a

14  phone, use the phone to take the pictures while he was engaging

15  in conduct with the minor.

16       I'll give you another example of a situation in which a

17  four-year-old may be the victim of a sexual offense such as the

18  one charged here, and the perpetrator of the crime has the

19  four-year-old, who is not able to give consent obviously, such

20  as this defendant based upon her age, but has the four-year-old

21  hold the cell phone to take the pictures.  Under that

22  circumstance, you would be hard-pressed to argue that the

23  defendant had not used a minor to engage in sexually explicit

24  conduct for the purpose of producing visual depictions of the

25  conduct.

1          So I do find that the defendant's argument is misplaced.

2   And it's also misplaced under the facts of the case, because

3   not only the victim that testified in the case, E.Y., but also

4   Dr. Littrell who testified and indicated that it would be -- a

5   reasonable person would be hard-pressed to find that the victim

6   as opposed to the defendant took most, if not all, of the

7   videos and photographs that have been introduced on the two

8   dates, the dates of the 17th and the 23rd.

9          So for those reasons, the Court will deny the motion.

10         I'll also note there is sufficient evidence, based upon

11  the testimony of all the witnesses, in terms of the second

12  element, and that is the materials that were used, phones that

13  were used, the victim's phone was certainly mailed, shipped,

14  and transported in or affecting interstate commerce.  Although

15  that's not an issue the parties have raised, there is

16  sufficient evidence to meet the second prong, second element to

17  obtain a conviction for both Counts 1 and 2.

18         So the defendant's motion for judgment of acquittal under

19  Rule 29 will be overruled.

20         At this time let me inquire as to whether the defendant

21  will be presenting testimony or evidence in the case.

22         MR. SPEDDING:  Your Honor, we've discussed that and

23  Mr. Fields is declining to testify.

24         THE COURT:  All right.

25         I will advise the defendant, of course, that he has the

1   right to testify if he chooses to do so, but he's not required

2   to do so.  An individual should make that determination after

3   consulting with his counsel, understanding that ultimately the

4   decision as to whether to testify would be his and his alone.

5        And you do understand that?

6        THE DEFENDANT:  I do, Your Honor.

7        THE COURT:  Thank you.

8        Will there be any other testimony, other than that?

9        MR. SPEDDING:  No, Your Honor.

10       THE COURT:  All right.  So the defendant will be able to

11  announce close in front of the jury --

12       MR. SPEDDING:  Yes, sir.

13       THE COURT:  -- when I call the jury back?

14       MR. SPEDDING:  Yes, sir.  And -- well, once we do that, we

15  would renew our motion under Rule 29.

16       THE COURT:  Yes, sir.

17       MR. SPEDDING:  Same reason.

18       THE COURT:  We'll have our instructions conference.  I

19  will give you the remaining time before we call the jury back

20  in to look through the jury instructions and we'll be able to

21  address those matters after the defendant announces close, then

22  we have any renewed motions to be taken up.

23       I would expect that we would be able to complete the

24  instructions conference, as well as finalize the jury

25  instructions and have arguments, prior to the lunch break

1    today.

2         So let me ask the parties how long they would expect for

3    the closing arguments.

4         MS. MELTON:  Your Honor, I'm probably being a little --

5    I'm probably overestimating, but I would like to ask for

6    40 minutes.  Ten for rebuttal, if possible.

7         THE COURT:  So 50, total?

8         MS. MELTON:  40 total, Your Honor.

9         THE COURT:  40 total.  So you want to split it 30-10?

10        MS. MELTON:  Yes, Your Honor.

11        THE COURT:  Mr. Spedding, would 40 minutes be sufficient

12   for you?

13        MR. SPEDDING:  I don't think it will take that long, but

14   that's fine.

15        THE COURT:  All right.  Well, you're never required to use

16   it all.

17        MR. SPEDDING:  Yes, sir.

18        THE COURT:  I want to give you the same amount of time I

19   do give the government.

20        MS. MELTON:  Your Honor, while we're on the topic of

21   closing, I do have a presentation during my closing.  And I

22   just wanted to give some forewarning to the Court as well as

23   Mr. Spedding that there are a couple of explicit images in

24   there.  No videos.  But I just didn't want anybody to be

25   surprised.  We won't linger.  It's being shown for a very

 1    specific purpose, and then we'll move on.

 2         THE COURT:  These are either the photographs or the video

 3    clips that have been admitted?

 4         MS. MELTON:  Yes, Your Honor.

 5         THE COURT:  All right.  Yes, ma'am, that's fine.  It will

 6    be my practice in this case, as can you see from the jury

 7    instructions, the exhibits will not go back to the jury room.

 8    If they want to review or view anything, they would need to do

 9    that in the courtroom.  Although I am preparing -- I will

10    prepare, when we finish the jury instructions, a separate set

11    of instructions for each juror so they can have their own copy

12    and they don't have to pass those around back in the jury room.

13         All right.  Let's see.  When is the jury scheduled to come

14    back?  Five after, we'll be in recess until that time.

15         (A recess was taken from 9:58 a.m. to 10:08 a.m.)

16         THE COURT:  Thank you.  The United States having announced

17    close of its case in chief, I'll turn to the defendant to

18    determine if he wishes to present any testimony or evidence.

19         MR. SPEDDING:  Thank you, Your Honor.  Your Honor, the

20    defense would close the case at this time without presenting

21    any evidence.

22         THE COURT:  All right.  Thank you.

23         Ladies and gentlemen, at this point all of the testimony

24    and evidence has been presented.  I will take a brief recess

25    and review proposed jury instructions, I expect it will take

 1   about 30 minutes for me to have that instructions conference

 2   and have the instructions ready for you.  I will tell you that

 3   we will have the closing arguments and the instructions before

 4   we take our lunch break today, and so I will call you back just

 5   as quickly as I can.

 6        Please keep in mind the admonitions you were given.

 7   You've heard all the testimony and evidence in the case, but

 8   you have not heard the instructions that will be given to you

 9   or the argument of the attorneys, and so you should not be

10   making up your minds about the case until those matters are

11   completed.

12        So at this time we'll take a brief recess for the jury.

13   We will remain in session.

14        (Jury left courtroom at 10:09 a.m.)

15        THE COURT:  Thank you.  Please be seated.

16        At this time we'll proceed with our instructions

17   conference.  Previously, I had given the attorneys a draft set

18   of instructions that were revised this morning and placed on

19   counsel table.  And so at this time we'll proceed with the

20   instructions conference.

21        Ms. Roth or Ms. Melton, have you had a chance to review

22   the instructions?

23        MS. ROTH:  Yes, Your Honor.

24        THE COURT:  All right.  Do you have any additions or

25   comments before I review the full set?

1          MS. ROTH:  I don't, Your Honor.  I see the change that was

2    made on page 18, Instruction Number 14, about where someone at

3    his direction.  And while I do, I think that's an accurate

4    statement, I would just also note, really for the record, that

5    I think that, again, there could be certain things where it

6    doesn't even have to be at the direction.

7          I think these are all examples of how you can use, but not

8    necessarily an exclusive list of how you can use.

9          THE COURT:  Yes, ma'am.

10          MS. ROTH:  I think in this case it covers the conduct or

11    any of the alleged conduct.  I just note there could be, for

12    future cases, even circumstances beyond this that would fit

13    that use language.  But I think for this case it fits the

14    issue, Your Honor.

15          THE COURT:  All right.

16          Mr. Spedding.

17          MR. SPEDDING:  Your Honor, we reviewed the jury

18    instructions and I have a couple of comments on the word, the

19    definition of "uses."  I've looked at the *Wright* case that the

20    Court alluded to yesterday when we were wrapping up.

21          THE COURT:  Yes, sir.

22          MR. SPEDDING:  And when I read that case, I think at best

23    it's ambiguous, but I think what it fails to take into

24    consideration is when it is a situation where the defendant

25    does not direct, does not cause, otherwise induce, whatever the

1   case may be, a minor -- or doesn't cause the video or the

2   depiction to be taken.

3       What I mean by that, I think that there's been sufficient

4   evidence in this trial brought out on cross and things where

5   the jury could conclude that, of her own volition, Grace took

6   the video.  And I don't think this definition contained in the

7   definitions section here encompasses that.  And I would ask the

8   Court to add some language, something along the lines, that use

9   does not include when a victim or a third party engages in the

10  recording or taking of the photographs of their own volition.

11  Something along those lines.

12      I think that would fairly and accurately portray what the

13  factual situation is or what it could be determined to be in

14  this particular case.  So I would ask you to consider that,

15  Judge.

16      Other than that -- and then one other thing, I'm just

17  dovetailing back into our -- my motion at the outset when I

18  advised the Court that we were going to announce that we were

19  not ready, dovetailing that into this particular state of the

20  proceedings.  I would also, based on that, object to giving any

21  instructions at this point.

22      THE COURT:  I'll address both of those issues and I'll go

23  over just a couple of other matters that I covered, I mentioned

24  earlier when the jury wasn't present but the parties were

25  present this morning, I think a little before 9:00.

1        As to Instruction Number 14, which has the definition of

2   use or refers to use, "the defendant uses a minor if he, or

3   someone in his direction, photographs or takes video of the

4   minor engaging in sexually explicit," if an individual that's

5   the minor, that's the victim, decides of his or own volition to

6   do this and not at the direction of a defendant, that would be

7   covered by this particular instruction, because the instruction

8   includes the phrase "someone at his direction."

9        And that would not prevent counsel from arguing to jury

10  that the defendant did not direct the conduct and did not take

11  the photograph himself.  So the instruction as written will

12  allow an argument to that effect, but the facts in this case

13  would certainly support a finding of guilt, either if the

14  defendant took the videos and photographs or if he directed the

15  victim to do so.

16       So under the two examples that I have given you earlier, I

17  think this definition would include that as well.

18       Ms. Roth indicates there may be other situations outside

19  the scope of this definition, and I'll leave that for another

20  day.

21       But based upon all the information that I have reviewed

22  and the case law that I have reviewed, obviously the -- I think

23  it's the *Wright* case from 2014 from the Sixth Circuit, in that

24  case I believe the defendant was the person that actually took

25  the photograph.  And so that was the issue in that matter, as

1   to whether, by taking the photograph, he's using a minor.

2       So I'll overrule the objection to the language that's

3   currently contained in Instruction Number 14 to be given to the

4   jury.

5       Likewise, for the same reasons I noted earlier, I will

6   overrule the general objection to giving any instructions based

7   upon the assertion that the defendant was not prepared for the

8   trial.  I will again note, as I have in other hearings held in

9   this case, that the defendant has been given several

10  continuances in order to prepare for a trial in this matter.

11      During one period of time, of course, we've experienced

12  the pandemic, COVID-19 pandemic.  And as a result of that, a

13  number of detention facilities were limiting the ability of

14  attorneys to have face-to-face contact with the defendants.

15  And when that issue was brought to the Court's attention, I did

16  specifically direct the marshals to make arrangements for

17  defendants that were preparing for trial to be brought here to

18  the courthouse so they would be able to have face-to-face

19  meetings with their attorneys and consult and prepare for

20  trial.  And that opportunity was given in this particular case.

21      But as indicated in a prior hearing, and also as indicated

22  by counsel in response to some of my questions and outlined in

23  the motion to withdraw, the defendant in this case specifically

24  refused to meet with his attorney.

25      And under those circumstances, it is entirely

1    inappropriate to grant another continuance that is created by

2    defendant's actions in refusing to participate and cooperate.

3        The defendant held out that he was going to hire another

4    attorney.  No attorney ever appeared in the case, and he was

5    given several options based on his actions on Friday of last

6    week.

7        It's evident from the presentation of proof in the case

8    that counsel was certainly prepared to present the case, and

9    has done so appropriately here based upon the evidence that has

10   been made available.  So that objection likewise will be

11   overruled.

12       Now, turning to the final review of the instructions that

13   will be given so that everyone's on the same page.  The

14   defendant has not proposed a specific statement of his

15   position.  And the instructions are clear that if there is a

16   request then, the Court would provide a defendant's position,

17   but it's not required to do so under the circumstances here,

18   when there's not been one presented.  That would not prevent

19   the defendant from outlining and explaining his position to the

20   jury, but the Court can't speculate about what that might be.

21       So on the first instruction, Instruction Number 1, page 3,

22   numerical paragraph number 4 will be removed.

23       And then turning to Instruction Number 4, page 7.  In the

24   second paragraph, I didn't take any judicial notice of any

25   facts, so paragraph 2 will read, "The evidence in the case

1  includes only what the witnesses said while they were

2  testifying under oath and the exhibits I allowed into

3  evidence."  There are no stipulations and the Court did not

4  take judicial notice of anything.

5      And then we've discussed Instruction Number 14, at least a

6  part of it, but I do want to ask the attorneys if you want me

7  to include a definition for the term "computer."  It's on

8  page 20 of the current draft.

9      MS. ROTH:  We do not request it.  I don't believe that

10  it's necessary because there was no evidence of a computer

11  being used in this case.

12      MR. SPEDDING:  We concur, Your Honor.

13      THE COURT:  I'll take out that paragraph.

14      And the next would read -- this does come from the pattern

15  jury instructions.  "It is not necessary that the government

16  prove that the defendant took the visual depictions or that the

17  defendant knew of the interstate nature of the materials used

18  to produce such depictions."

19      I've included Instruction Number 15, mistake of age and

20  consent and are not defenses, the instruction that I had

21  advised the parties of earlier.

22      And then turning over to Instruction Number 17, I've taken

23  out the alternative instruction if the defendant were to have

24  testified in the case, so only that upper section will be

25  given.

1        And then on the table of contents, the caption for

2   Instruction Number 17 will be changed to "defendant's election

3   not to testify."

4        Paragraph 19 will be taken out on judicial notice, and

5   therefore the remaining instructions will be renumbered, which

6   will begin with -- it will be a new number 19 for introduction.

7   And the balance, I believe, is as it is currently written.

8        I will make those changes, make copies available for

9   counsel to use.  And as soon as you have those instructions, we

10   will bring the jury back out.  I will instruct the jury first

11   and then we'll proceed with closing arguments again before the

12   lunch break.  So we will be in recess at this time.

13        (A recess was taken from 10:22 a.m. to 10:48 a.m.)

14        THE COURT:  Thank you.  Just check with the attorneys to

15   make sure everyone is ready to go before we bring the jury.

16        I assume by your silence your answer is yes?

17        MS. MELTON:  Yes, Your Honor.

18        THE COURT:  I will give the parties an additional citation

19   for the instruction that has the "use" definition.  It's *United

20   States versus Robert David Sirois,* it's a case from the Second

21   Circuit, 87 F.3d, beginning at page 34.  It specifically

22   discusses "use" being a generic term and not specifically or

23   limited in the way that counsel for the defendant has

24   requested.

25        Also I will give the jury, in addition to the

1    instructions, a copy of the indictment with a cautionary

2    warning that this is only for their purpose of understanding

3    the charge and it's not to be considered as evidence in the

4    case.

5            We will bring the jury down, Bill.

6            (Jury entered courtroom at 10:50 a.m.)

7            THE COURT:  The record will again reflect that all members

8    of the jury are present, that the defendant and all counsel are

9    present in the courtroom as well.

10           Ladies and gentlemen, at this time I will provide you with

11   the instructions that should guide you as you deliberate in the

12   case.  After I have gone through the jury instructions, the

13   attorneys will present their closing arguments.  We will then

14   recess for your deliberations and we'll send you down to the

15   jury assembly room, down on the first floor, and your lunches

16   should be available by the time we finish this morning.

17           Members of the jury, now it is time for me to instruct you

18   about the law that you must follow in deciding this case.

19           I will start by explaining your duties and the general

20   rules that apply in every criminal case.

21           After that, I will explain the elements, or parts, of the

22   crimes that the defendant is accused of committing.

23           Next, I will explain some rules that you must follow in

24   evaluating the particular testimony and evidence.

25           Last, I will explain the rules that you must follow during

1   your deliberations in the jury room and the possible verdicts

2   that you may return.

3        Please listen carefully to all of these instructions.

4        You have two main duties as jurors.  The first one is to

5   decide what the facts are from the evidence that you saw and

6   heard here in court.  Deciding what the facts are is your job

7   and not mine, and nothing that I have said or done during this

8   trial was meant to influence your decision about the facts in

9   any way.

10       Your second duty is to take the law that I give you, apply

11  it to the facts, and decide if the government has proved the

12  defendant guilty beyond a reasonable doubt.

13       It is my job to instruct you about the law and you are

14  bound by the oath that you took at the beginning of the trial

15  to follow the instructions I give you, even if you personally

16  disagree with them.  This includes the instructions I gave you

17  before and during the trial and these instructions.

18       Now, all the instructions are important and you should

19  consider them together as a whole.

20       The lawyers may talk about the law during their arguments,

21  but if what they say is different from what I say, then you

22  must follow what I say.  What I say about the law controls.

23       Perform these duties fairly.  Do not let any bias,

24  sympathy or prejudice that you may feel toward one side or the

25  other influence your decision in any way.

1    As you know, the defendant has pleaded not guilty to the

2  crimes charged in the indictment.  The indictment is not any

3  evidence at all of guilt.  It's just the formal way that the

4  government tells the defendant what crimes he is accused of

5  committing.  It does not even raise any suspicion of guilt.

6    Instead, the defendant starts the trial with a clean slate

7  with no evidence at all against him, and the law presumes that

8  he is innocent.  This presumption of innocence stays with him

9  unless the government presents evidence here in court that

10  overcomes the presumption and convinces you beyond a reasonable

11  doubt that he is guilty.

12    This means that he has no obligation to present any

13  evidence at all or to prove to you in any way that he is

14  innocent.  It's up to the government to prove that he is

15  guilty, and this burden stays on the government from start to

16  finish.

17    You must find the defendant not guilty unless the

18  government convinces you beyond a reasonable doubt that he is

19  guilty.

20    Now, the government must prove every element of the crimes

21  charged beyond a reasonable doubt.  Proof beyond a reasonable

22  doubt does not mean proof beyond all possible doubt.  Possible

23  doubts or doubts based purely on speculation are not reasonable

24  doubts.  A reasonable doubt is a doubt based on reason and

25  common sense.  It may arise from the evidence, the lack of

1    evidence, or the nature of the evidence.

2         Proof beyond a reasonable doubt means proof which is so

3    convincing that you would not hesitate to rely and act on it in

4    making the most important decisions in your own lives.

5         If you are convinced that the government has proved the

6    defendant guilty beyond a reasonable doubt, say so by returning

7    a guilty verdict.  If you are not convinced, say so by

8    returning a not guilty verdict.

9         You must make your decision based only on the evidence

10   that you saw and heard here in court.  Do not let rumors,

11   suspicions, or anything else that you may have seen or heard

12   outside of court influence your decision in any way.

13        The evidence in this case includes only what the witnesses

14   said while they were testifying under oath, the exhibits that I

15   allowed into evidence -- and the exhibits that I allowed into

16   evidence.

17        Nothing else is evidence.  The lawyers' statements and

18   arguments are not evidence.  Their questions are not evidence.

19   My legal rulings are not evidence.  And my comments and

20   questions are not evidence.

21        During the trial, I did not let you hear the answers to

22   some of the questions the lawyers asked.  You must completely

23   ignore these things.  Do not even think about them.  Do not

24   speculate about what a witness might have said.  This is not

25   evidence, and you're bound by your oath not to let it influence

1   your decision in any way.

2        Make your decision based only on evidence as I have

3   defined it here and nothing else.

4        Now, you should use your common sense in weighing the

5   evidence.  Consider it in light of your everyday experience

6   with people and events and give it whatever weight you believe

7   it deserves.  If your experience tells you that certain

8   evidence reasonably leads to a conclusion, then you are free to

9   reach that conclusion.

10        Now, you've heard the terms "direct evidence" and

11   "circumstantial evidence."

12        Direct evidence is simply evidence like the testimony of

13   an eyewitness, which if you believed it, directly proves a

14   fact.  If a witness testified that he saw it raining outside

15   and you believed him, that would be direct evidence that it was

16   raining.

17        Circumstantial evidence is simply a chain of circumstances

18   that indirectly proves fact.  If someone walked into the

19   courtroom wearing a raincoat covered with drops of water and

20   carrying a wet umbrella, that would be circumstantial evidence

21   from which you could conclude that it was raining.

22        It is your job to decide how much weight to give the

23   direct and circumstantial evidence.  The law does not make any

24   distinction between the weight you should give to either one or

25   say that one is any better evidence than the other.

1     You should consider all the evidence, both direct and

2 circumstantial, and give it whatever weight you believe it

3 deserves.

4     Now, another part of your job as jurors is to decide how

5 credible or believable each witness was.  Now, this is your job

6 and not mine.  It is up to you to decide if a witness's

7 testimony was believable, and how much weight you think it

8 deserves.  You are free to believe everything that a witness

9 said, or only part of it, or none of it at all.  But you should

10 act reasonably and carefully in making these decisions.

11     Now let me suggest some things for you to consider in

12 evaluating each witness's testimony.

13     Ask yourself if the witness was able to clearly see or

14 hear the events.  Sometimes even an honest witness may not have

15 been able to see or hear what was happening and may make a

16 mistake.

17     Ask yourself how good the witness's memory seemed to be.

18 Did the witness seem able to accurately remember what happened?

19     Ask yourself if there was anything else that may have

20 interfered with the witness's ability to perceive or remember

21 the events.

22     Ask yourself how the witness acted while testifying.  Did

23 the witness appear honest?  Or did the witness appear to be

24 lying?

25     Ask yourself if the witness had any relationship to the

1   government or the defendant, or anything to gain or lose from

2   the case that might influence the witness's testimony.

3        Ask yourself if the witness had any bias or prejudice or

4   reason for testifying that might cause the witness to lie or

5   slant the testimony in favor of one side or the other.

6        Ask yourself if the witness testified inconsistently while

7   on the witness stand, or if the witness said or did something,

8   or failed to say or do something at any other time that is

9   inconsistent with what the witness said while testifying.

10       If you believe that the witness was inconsistent, ask

11  yourself if this makes the witness's testimony less believable.

12  Sometimes it may, and other times it may not.  Consider whether

13  the inconsistency was about something important or some

14  unimportant detail.  Ask yourself if it seemed like an innocent

15  mistake or if it seemed deliberate.

16       And ask yourself how believable the witness's testimony

17  was in light of all the other evidence.  Was the witness's

18  testimony supported or contradicted by other evidence you found

19  believable?  If you believe that a witness's testimony was

20  contradicted by other evidence, remember that people sometimes

21  forget things, and that even two honest witnesses -- excuse

22  me -- two honest people who witness the same event may not

23  describe it exactly the same way.

24       These are only some of the things that you may consider in

25  deciding how believable each witness was.  You may also

1   consider the other things that you think shed some light on the

2   witness's believability.  Use your common sense and your

3   everyday experience in dealing with other people, and then

4   decide what testimony you believe and how much weight you think

5   it deserves.

6       Now, one more point about the witnesses.  Sometimes jurors

7   wonder if the number of witness who testified makes any

8   difference.

9       Do not make any decision based only on the number of

10  witnesses who testified.  What is more important is how

11  believable the witnesses were and how much weight you think

12  their testimony deserves.  Concentrate on that, not the

13  numbers.

14      There is one more general subject that I want to talk with

15  you about before I begin explaining the elements of the crimes

16  charged.

17      The lawyers for both sides objected to some of the things

18  that were said or done during the trial.  Do not hold against

19  that either side.  The lawyers have a duty to object whenever

20  they think that something is not permitted by the rules of

21  evidence.  Those rules are designed to make sure that both

22  sides receive a fair trial.

23      And do not interpret my rulings on their objections as any

24  indication of how I think the case should be decided.  My

25  rulings are based on the rules of evidence, not on how I feel

1    about the case.  Remember that your decision must be based only

2    on the evidence that you saw and heard here in court.

3         That concludes the part of my instructions explaining your

4    duties and the general rules that apply in every criminal case.

5    In a moment, I will explain the elements of the crimes that the

6    defendant is accused of committing.

7         But before I do that, I want to emphasize that the

8    defendant is only on trial for the particular crimes charged in

9    the indictment.  Your job is limited to deciding whether the

10   government has proved the crimes charged.

11        Also keep in mind that whether anyone else should be

12   prosecuted and convicted for these crimes is not a proper

13   matter for you to consider.  The possible guilt of others is no

14   defense to a criminal charge.  Your job is to decide if the

15   government has proved this defendant guilty.  Do not let the

16   possible guilt of others influence your decision in any way.

17        Now, the defendant has been charged with two crimes.  The

18   number of charges is no evidence of guilt, and this should not

19   influence your decision in any way.  It is your duty to

20   separately consider the evidence as it relates to each charge

21   and to return a separate verdict for each one.  For each

22   charge, you must decide whether the government has presented

23   proof beyond a reasonable doubt that the defendant is guilty of

24   that particular charge.

25        Your decision on one charge, whether it is guilty or not

1    guilty, should not influence your decision on the other charge.

2         Next, I want to say a word about the dates mentioned in

3    the indictment.  The indictment charges that the crimes

4    happened "on our about" March 17th, 2019, and March 23rd, 2019.

5    The government does not have to prove that the crimes happened

6    on those exact dates, but the government must prove that the

7    crimes happened reasonably close to those dates.

8         Next, I want to explain something about proving a

9    defendant's state of mind.

10        Ordinarily there is no way that a defendant's state of

11   mind can be proved directly because no one can read another

12   person's mind and tell what that person is thinking.  But a

13   defendant's state of mind can be proved indirectly from the

14   surrounding circumstances.  Now, this includes things like what

15   the defendant said, what the defendant did, how the defendant

16   acted, and any other facts or circumstances in evidence that

17   show what was in the defendant's mind.

18        You may also consider the natural and probable results of

19   any acts that the defendant knowingly did, and whether it is

20   reasonable to conclude that the defendant intended those

21   results.

22        Now, this, of course, is all for you to decide.

23        Now let me turn to the specific counts.

24        Count 1 of the indictment accuses the defendant of using a

25   minor to engage in sexually explicit conduct to produce a

1  visual depiction, in violation of federal law, on or about

2  March 17th, 2019.

3       Count 2 of the indictment accuses the defendant of using a

4  minor to engage in sexually explicit conduct to produce a

5  visual depiction, in violation of federal law, on or about

6  March 23rd, 2019.

7       Now, regarding each count, for you to find the defendant

8  guilty, you must find that the government has proved each and

9  every one of the following elements beyond a reasonable doubt,

10  and there are two elements:

11       First, that the defendant employed, used, persuaded,

12  induced, or coerced a minor to engage in sexually explicit

13  conduct for the purpose of producing a visual depiction of that

14  conduct.

15       Second, that the visual depiction was produced or

16  transmitted using materials that were mailed, shipped, or

17  transported in or affecting interstate commerce by any means,

18  including computer.

19       Now I'll give you more detailed instructions on some of

20  these terms.

21       A defendant "uses" a minor if he, or someone at his

22  direction, photographs or takes video of the minor engaging in

23  sexually explicit conduct.

24       The term "minor" means any person under the age of

25  18 years.  It's not necessary that the government prove that

1    the defendant knew that the person depicted was a minor.

2         The term "for the purpose of" means that the defendant

3    acted with the intent to create visual depictions of sexually

4    explicit conduct, and the defendant knew the character and

5    content of the visual depictions.

6         The term "sexually explicit conduct" means actual or

7    simulated sexual intercourse, including genital-genital,

8    oral-genital, anal-genital, or oral-anal, whether between

9    persons of the same or opposite sex; actual or simulated

10   bestiality; actual or simulated masturbation; actual or

11   simulated sadistic or masochistic abuse; and actual or

12   simulated lascivious exhibition of the genitals or pubic area

13   of the person.

14        In deciding whether an exhibition is lascivious, you may

15   consider these factors:  Whether the focal point of the visual

16   depiction is on the child's genitalia or pubic area.

17        Second, whether the setting of the visual depiction is

18   sexually suggestive, such as in a place or pose generally

19   associated with sexual activity.

20        Number three, whether the child is depicted in an

21   unnatural pose, or in inappropriate attire, considering the age

22   of the child.

23        Four, whether the child is fully or partially clothed, or

24   nude.

25        Fifth, whether the visual depiction suggests sexual

1   coyness or a willingness to engage in sexual activity.

2       And, six, whether the visual depiction is intended or

3   designed to elicit a sexual response in the viewer.

4       Now, this list is not exhaustive, and an image need not

5   satisfy any single factor to be deemed lascivious.  Instead, of

6   you must determine whether the visual depiction is lascivious

7   based on its overall content.  It is for you to decide what

8   weight or lack of weight to be given to any of these factors.

9       Now, the term "producing" means not only producing, but

10  also making, creating, directing, manufacturing, issuing,

11  publishing, or advertising.

12      The term "visual depiction" includes data stored on

13  computer disk or by electronic means which is capable of

14  conversion to a visual image.  It also includes data which is

15  capable of conversion into a visual image that has been

16  transmitted by any means, whether or not stored in a permanent

17  format.

18      The term "in interstate commerce" means that the

19  production or transition materials crossed a state line.

20      The term "means or facility of interstate commerce"

21  includes the internet or telephone.

22      Now, it is not necessary that the government prove that

23  the defendant took the visual depictions or that the defendant

24  knew of the interstate nature of the materials used to produce

25  the visual depictions.

1    If you are convinced that the government has proved all of

2    these elements, then so say by returning a guilty verdict on

3    these charges.  If you have a reasonable doubt about any of

4    these elements, then you must find the defendant not guilty of

5    the charge.

6    Title 18 of the United States Code, Section 2251(a)

7    prohibits the use of a minor for the purpose of producing

8    visual depictions of sexually explicit conduct.  The government

9    is not required to prove that the defendant knew that the

10   victim was a minor.  A defendant's lack of knowledge regarding

11   the victim's age is not a defense to a charge of producing

12   child pornography.

13   Additionally, a minor's consent is not a defense to a

14   charge of producing child pornography under Title 18 of the

15   United States Code, Section 2251(a).

16   That concludes the part of my instructions explaining the

17   crimes charged.  Next I will explain some rules that you must

18   use in considering some of the testimony and evidence.

19   A defendant has an absolute right not to testify or

20   present evidence.  The fact that he did not testify or present

21   any evidence cannot be considered by you in any way.  Do not

22   even discuss it in your deliberations.

23   Remember that it is up to the government to prove the

24   defendant guilty beyond a reasonable doubt.  It is not up to

25   the defendant to prove that he is innocent.

1          Now, you've heard the testimony of Detective Alan Judy of

2     the Cynthiana Police Department, Dr. Michael Littrell of the

3     Cyber Crimes Branch of the Kentucky Office of the Attorney

4     General, and Detective Justin Jett of the Cynthiana Police

5     Department, who testified to both facts and opinions.  Each

6     type of testimony should be given the proper weight.

7          Regarding the testimony concerning facts, consider the

8     factors discussed earlier in these instructions for weighing

9     the credibility of witnesses.

10         Regarding the testimony concerning opinions, you do not

11    have to accept the witness's opinion.  In deciding how much

12    weight to give it, you should consider the witness's

13    qualifications and how he reached his conclusions along with

14    the other factors discussed in these instructions for weighing

15    the credibility of witnesses.

16         Remember that you alone decide how much of a witness's

17    testimony to believe and how much weight you think it deserves.

18         Now, that concludes the part of my instructions explaining

19    the rules for considering some of the testimony and evidence.

20    Now let me finish up by explaining some things about your

21    deliberations in the jury room and your possible verdicts.

22         After the parties' closing arguments have been presented

23    and you retire to the jury room to begin your deliberations,

24    the first thing you should do is choose someone to be your

25    foreperson.  This person will help to guide your discussions

1    and will speak for you here in court.

2          Once you start deliberating, do not talk to the jury

3    officer, or to me, or to anyone else except each other about

4    the case.  If you have any questions or messages, you must

5    write them down on a piece of paper, sign them, and give them

6    to the jury officer.  The officer will give them to me, and I

7    will respond as soon as I can.  I may have to talk to the

8    parties about what you've asked, so it may take me some time to

9    get back to you.  Any questions or messages normally should be

10   sent to me through your foreperson.

11         Now, the exhibits admitted into evidence are available for

12   your review and may be reviewed in the courtroom if you request

13   to review any of those materials.  If you want to see any of

14   the exhibits, you should send me a message.  You will also be

15   provided with copies of the jury instructions.  I made a copy

16   for each person in the jury so you'll have your own individual

17   copy.

18         One more thing about messages.  Do not ever write down or

19   tell anyone, including me, how you stand on your votes.  For

20   example, do not write down or tell anyone that you are split

21   6-6, or 8-4, or whatever your vote happens to be.  That should

22   stay secret until you're finished.

23         Remember, you must make your decision based only on the

24   evidence you saw and heard here in court.

25         During your deliberations, you must not communicate with

1     or provide any information to anyone by any means about this

2     case.  You may not use any electronic device or media, such as

3     a cell phone, or computer, the internet, or any internet

4     service, or any social media websites such as Facebook or

5     Twitter, to communicate to anyone any information about this

6     case or to conduct any research about this case until I accept

7     your verdict.  In other words, you cannot talk with anyone on

8     the phone, correspond with anyone, or electronically

9     communicate with anyone about the case.

10         Ladies and gentlemen, your verdict, whether it is guilty

11    or not guilty, must be unanimous.

12         To find the defendant guilty, every one of you must agree

13    that the government has overcome the presumption of innocence

14    with evidence that proves his guilt beyond a reasonable doubt.

15         To find him not guilty, every one of you must agree that

16    the government has failed to convince you beyond a reasonable

17    doubt.

18         Now, either way, guilty or not guilty, your verdict must

19    be unanimous.

20         And now that all the evidence is in, and once the

21    arguments are completed, you will be free to talk about the

22    case in the jury room.  In fact, it is your duty to talk with

23    each other about the evidence and to make every reasonable

24    effort you can to reach unanimous agreement.  Talk with each

25    other, listen carefully and respectfully to each other views.

1   Keep an open mind as you listen to what your fellow jurors have

2   to say.  Try your best to work out your differences.  Do not

3   hesitate to change your mind if you are convinced that other

4   jurors are right and that your original position was wrong.

5        But do not ever change your mind just because other jurors

6   see things differently, or just to get the case other with.  In

7   the end, your vote must be exactly that, your own vote.  It's

8   important for you reach unanimous agreement, but only if you

9   can do so honestly and in good conscience.

10       No one will be allowed to hear your discussions in the

11   jury room, and no record will be made of what you say.  So you

12   should all feel free to speak your minds.

13       Listen carefully to what the other jurors have to say, and

14   then decide for yourselves if the government has proved the

15   defendant guilty beyond a reasonable doubt.

16       If you decide that the government has proved the defendant

17   guilty, then it will be my job to decide what the appropriate

18   punishment should be.

19       Deciding what the punishment should be is my job, and not

20   yours.  It would violate your oaths as jurors to even consider

21   the possible punishment in deciding your verdict.

22       Your job is to look at the evidence and decide if the

23   government has proved the defendant guilty beyond a reasonable

24   doubt.

25       I have prepared a verdict form that you should use to

1   record your verdict.  If you decide that the government has

2   proved the charges against the defendant beyond a reasonable

3   doubt -- change that to has proved a charge against the

4   defendant beyond a reasonable doubt, say so by having your

5   foreperson mark the appropriate place on the form.

6       If you decide that the government has not proved a charge

7   against the defendant beyond a reasonable doubt, say so by

8   having your foreperson mark that appropriate place on the form.

9   The foreperson should then sign the form, put the date on it,

10  and return it to me.

11      Let me finish up by repeating something that I said to you

12  earlier.  Nothing that I have said or done during the course of

13  the trial was meant to influence your decision in any way.  You

14  decide for yourselves if the government has proved the

15  defendant guilty beyond a reasonable doubt.

16      And remember that if you elected to take notes during the

17  trial, your notes should be used only as memory aids.  You

18  should not give your notes greater weight than your own

19  independent recollection of the evidence.  You should rely on

20  your own independent recollection of the evidence or lack of

21  evidence and you should not be unduly influenced by the notes

22  of other jurors.  Notes are not entitled to any more weight

23  than the memory or impression of each juror.

24      Whether you took notes or the not, each of you must form

25  and express your own opinions as to the facts of the case.

1        Ladies and gentlemen, when you go back to begin your

2   deliberations, as I have indicated, you will have 11 copies of

3   what I have just read from, and you'll have my original set.

4   And you'll notice, I think I made about three corrections of

5   typos in this original set of instructions.

6        You will also have a verdict form that will be clipped to

7   the back of this set of instructions, it's a one-page document,

8   and you're to record your verdict on this form.

9        I'll read it to you.

10       It reads as follows:  We the jury unanimously find as

11  follows:

12       With respect to Count 1, charging the defendant, William

13  Michael Fields Junior, with using a minor to engage in sexually

14  explicit conduct for the purpose of producing visual depictions

15  of that conduct on or about March 17th, 2019, we, the jury,

16  find the defendant either guilty or not guilty.

17       You are then asked with respect to Count 2, charging

18  defendant, William Michael Fields, with using a minor to engage

19  in sexually explicit conduct for the purpose of producing

20  visual depictions of that conduct on or about March 23rd, 2019,

21  we, the jury, find the defendant either guilty or not guilty.

22       Your foreperson should add his or her name, as well as the

23  foreperson's number and also the date.  Today is June 2nd.

24       I will tell you that before this document is filed in the

25  record, that the foreperson's name will be whited out in the

1   form that would appear for the public's viewing.  The original

2   copy will be maintained under seal in the record.

3        You will also be given a copy of the indictment in the

4   case.  When you go back to deliberate, the indictment is not

5   evidence.  You're not to consider it as evidence.  It's only to

6   assist you in understanding the nature of the two charges that

7   are presented.

8        Now, at this time, we will proceed with closing arguments.

9        Ms. Melton, will you be doing the closing argument for the

10  government?

11       MS. MELTON:  Yes, Your Honor.

12       THE COURT:  You may proceed.

13       MS. MELTON:  Good morning, ladies and gentlemen.

14       So we started this case off by talking about power, right?

15  Ms. Roth talked about an imbalance of power.  Concentration of

16  power on the one hand and lack of power on the other hand.

17       But what do you think of when you typically think about

18  power?  You probably think of coercive power, right?  You know,

19  like fear of violence or intimidation, I think that's what most

20  of us think of.

21       But there are actually a lot of different shades of power.

22  If we look at the definition of power, we see that it's the

23  capacity or ability to direct or influence behavior of others

24  over the course of events.  So power is not so limited as to

25  only fear or intimidation or direction.  It's also the capacity

1  to influence.

2       So like probably 75 percent of attorneys, I was a

3  political science major in college.  And as you might imagine,

4  we talked a lot about power in those classes.  And I've always

5  felt there was a lot of parallels between, you know,

6  international relations and those discussions of power and sort

7  of the interpersonal relations, because both of them require a

8  balance of power to work, right?

9       So in one of my international relations classes, we talked

10  a lot about this notion of hard power versus soft power.  And

11  so hard power is coercive, it's military might, it's economic

12  power.  You know, for example, sanctions that you might impose

13  on another country, or war.

14       But then there's soft power.  And soft power is the

15  kinder, gentler form of power, but it's no less persuasive.

16  So, for example, on the international arena, it's values, it's

17  policy, it's culture, common interests.

18       I had one professor, he was an older gentleman from

19  West Africa.  And it always struck -- and he loved boxing, I

20  always remember that.  But also he told us that when he was

21  growing up in West Africa in 1960s, that everyone loved the

22  United States.  He said they loved America.  And it was not

23  because of our military might or our economic power, even

24  though we certainly had plenty of both and we did exercise

25  both.

1     But everybody loved the United States because we were the

2     land of John Wayne and Elvis Presley, Marilyn Monroe, JFK,

3     Martin Luther King Junior.  And so even though we used all that

4     hard power, that economic, coercive power to fight the Cold

5     War, probably our soft power, you know, our interests, our

6     common interests and our values were just as influential.

7         But like hard power, soft power can be abused.  Any type

8     of power can be abused.  And I would like you to think about

9     the notion of soft power as it relates to this case.

10        So when all of this went down, Grace was a 17-year-old

11    high school junior.  She was interested in law enforcement, she

12    was interested in firefighting.  And she wanted to do one of

13    those two things with her life.  Excuse me.

14        This is not just like some sort of plot device or ploy by

15    the United States.  You know, when Grace testified, she

16    actually said she enlisted in the National Guard as a

17    firefighter, so she has actually done those things.  And if we

18    look at a couple of the exhibits you've seen in this case,

19    there on the left we see Grace in her Police Explorers shirt.

20    That was one of the extracurricular activities she participated

21    in related to law enforcement.

22        And then there on the right, she's there with Mr. Fields

23    at that Police Explorers event that we told you about, the

24    truck pull that was in Morehead right before the bonfire.

25        So as you might remember, Grace said that she was, quote,

1    obsessed with all things first responder, right?

2        And then we have Mr. Fields.  He was a 36-year-old

3    constable and firefighter, and he was the teacher in an EMT

4    training course or like an EMT certification course.  So he was

5    interested in all the things she was interested in.  Police,

6    firefighter, EMT.  Those were all things first responder,

7    right?

8        Mr. Fields leveraged those common interests that he had

9    with Grace.  He leveraged his knowledge about the things that

10   she was interested in.  He often used those common interests as

11   an icebreaker.  He offered to teach her things and to show her

12   things.  And she took him up on it.  She even testified that

13   she was interested in a friendship with him.

14       Now, little time passed between when Mr. Fields would make

15   these offerings and when he would ultimately exploit her.

16       So on March 17, 2019, that's the ambulance incident that

17   we have talked a lot about, Mr. Fields took Grace out to this

18   storage shed that's got firetrucks and ambulances to show her

19   around.  And you all could probably hear the excitement in her

20   voice even when she was recalling seeing those things.  I could

21   hear it.

22       So he takes out there to show her things that she's

23   interested in.  He had given her alcohol on the way, but within

24   moments of arriving, he's taking her pants off in the back of

25   that ambulance, having sex with her, and videoing it.

1        And then fast forward to March 23rd, the day of the EMT

2   training facility incident.  Earlier in the day, you might

3   recall that Grace and her friend Lakota had been at the EMT

4   training facility, and that Mr. Fields was showing them the

5   dummies they use for the EMT training course, what you practice

6   CPR and all that on.

7        It was actually that day also that Mr. Fields gave Grace

8   that police radio where she could hear everything that was

9   going on over the scanner.  And what happens that night?

10  Mr. Fields asks her back out to the empty training facility.

11  Shortly after she arrives, he takes her pants off, he puts her

12  over his desk, he has sex with her, and he videos it.

13       But you know, there was soft power at play here, that's a

14  big part of the story.  But there was some other elements as

15  well.  There's inherent disparity and control in authority

16  between a 17-year-old and a 36-year-old.  You know, Grace was

17  really worried about all of this coming out.  She was really

18  worried about getting in trouble, but Mr. Fields is really not

19  in that same position when that happened.  He doesn't have to

20  worry about his mom yelling at him, right?

21       And then there's also his position of authority, him being

22  a constable, being in law enforcement.  And even though Grace

23  was interested in those things, you know, she was not an adult

24  and he was an adult who was in law enforcement.  And most kids

25  are afraid of those types of authority figures.  Shoot, you

don't even have to be a kid.

I mean, I have family in law enforcement, work with law
enforcement all the time, and my palms still get a little
sweaty when I get pulled over.  And then there's that element
of deference too.  We are raised, most of us, to obey and
respect authority figures like law enforcement.

You don't really have to make an explicit threat.  You
know, it's really kind of like if my boss came on to me or
something, he wouldn't have to say, well, I'm going to fire
you.  It's sort of the disparity of position that creates a
little bit of an intimidation, even if it's not said.

Then there's the issue of alcohol.  So on both of the
occasions that are at issue in this case, Grace was
intoxicated.  And on one of those occasions, Mr. Fields
actually provided the alcohol to her.  And, unfortunately, I
think we all know that alcohol does not give us greater control
over our faculties, it gives us less control.

We also began this case talking about credibility.  I'm
not talking about the United States' opening statement, I'm
talking about Mr. Spedding's opening statement.  He asked you
all specifically to weigh Grace's credibility in making your
decision.  And you know what?  I implore you to do the same.
Because she -- I can't substitute my judgment for yours, you
all have to use your judgment, just like the judge said.  But
she sounded pretty credible from where I was sitting.

1          Mr. Spedding, during his cross-examination, tried to catch

2     Grace in several lies unsuccessfully.  And that's not an attack

3     on Mr. Spedding, he's a good guy, good attorney, just doing his

4     job.  But you might recall that he first asked her whether she

5     had talked to Mr. Fields in that first car ride they had

6     together about really liking older guys.  You know, did she say

7     she liked older guys?  And she said, yeah, I did, but not over

8     30, not men Mr. Fields' age.

9          And he also asked her whether she had ever taken any

10    pictures or video.  And she said yeah, I did.  She had not

11    remembered it.  She said the prosecutors had showed her that a

12    couple of days ago, I had not remembered that, but like I saw

13    the video and, yeah, I took it.

14         And we will talk a little bit later when we talk about the

15    judge's instructions that it -- for the purposes here, it

16    really doesn't matter who took the video, but we'll address

17    that later.

18         But just think to yourself in this attempted attack on

19    Grace's credibility, why would Grace admit taking the video in

20    one instance and then try to falsely accuse Mr. Fields into

21    other instances?  That doesn't make a lot of sense.

22         Finally, he asked Grace if she had previously told

23    Detective Jett that she didn't remember some of the events that

24    occurred.  She also admitted to that, that yeah, she had told

25    Detective Jett on a couple of occasions that she didn't really

1   remember all of the intimate acts that occurred between her and

2   Mr. Fields in the back of that ambulance or at the EMT training

3   facility.

4        At first, she just didn't want it to come out, period.

5   But then once the cat was out of the bag, she was embarrassed,

6   which makes sense to me.  It is embarrassing.  Like Ms. Roth

7   said, it's tough to talk about those things with your friends

8   sometimes, and then you're a 17-year-old girl and you've got a

9   detective coming to your house, in front of your mom, who's,

10  you know, good looking, kind of young.  I wouldn't want to talk

11  to him about it either.

12       I was about Grace's age actually.  I had hurt my Achilles

13  tendon and had to go to a sports medicine doctor and had not

14  shaved my legs.  And my face was probably about as red as that

15  carpet.  You're just modest and embarrassed about everything at

16  that age to begin with.  And then something like this that's

17  really intimate, yeah, you don't want to talk about it.

18       So this has been a pretty short trial, and so I don't

19  think it's necessary for us to rehash all the evidence.  You

20  know, if this trial was six weeks long, I might go through

21  piece by piece everything that we talked about.

22       But first I just want to talk about the time line in this

23  case and just remind you all of a couple of important events

24  here.

25       So one event that's not on this time is before Grace

1  remembers meeting Mr. Fields.  Apparently before they even met

2  or she even knew who he was, he was showing up at McDonald's to

3  check up on her because he knew who she was.

4       But then we go to late 2018, early 2019, Grace does not

5  remember the exact date, she just knows it was cold outside,

6  and Grace meets Mr. Fields.

7       You'll recall she went up to the fire station to meet her

8  friend Jacob.  Mr. Fields was talking to her, asked her to go

9  run that errand with him, during which he asked her if she

10 liked older men.  He also touched her thigh.  And then later

11 that night, he sent her a picture of his penis on Snapchat.

12      Then March 14th, 2019, we know from Sergeant Linville's

13 testimony that Fields asked to participate in Police Explorers.

14      Moving on to March 17th, that's when the sexual conduct in

15 the ambulance occurred.  And there's actually two events for

16 March 17th on that time line you'll see, because the picture

17 that was on Mr. Fields' phone, so that's GX3, that also has a

18 created date of March 17th.  So the event occurred in the

19 ambulance on March 17th, the picture on his phone is there by

20 March 17th.

21      Moving on to March 23rd, 2019, that's when the sexual

22 conduct and visual depictions occurred at the EMT training

23 facility.  That's also the same day, as I mentioned before,

24 that Mr. Fields gave Grace that radio.  And then just a few

25 hours later, it was technically the next day, but just a few

1    hours later on March 24th, the images that are on GX4 are on

2    Mr. Fields' phone.

3         Moving on to April 13th, 2019, the Police Explorers event

4    and bonfire that started this whole investigation, that's when

5    that occurred.

6         Just a couple of days later, Detective Jett started his

7    investigation.  And then we saw in the demonstrative, in

8    Dr. Littrell's slide show, where he showed you all the Smart

9    Calculator app and where things had started to be deleted.  So

10   just a day after Detective Jett started his investigation,

11   Mr. Fields starts deleting items from his phone.

12        So next I wanted to make sure that we all have the

13   exhibits straight in our head for what day goes with what and

14   whose phone it came from.

15        So for March 17th, 2019, that's the ambulance incident,

16   which relates to Count 1, you all will consider what you saw on

17   GX1 and GX3.  One of those comes from Grace's phone, one of

18   them comes from the defendant's phone.

19        So March 23rd, 2019, that's the EMT training facility

20   event relating to Count 2, you'll consider GX2 from Grace's

21   phone and GX4 from the defendant's phone.  And this is just a

22   slightly different representation of it.  And I did include the

23   type of extraction that discovered the images here.

24        Mainly, you all might have been wondering, why did the

25   United States spend so much time talking about extractions in

1    this case?  Well, it's because we had three different ones and

2    each one showed something slightly different.

3         So GX1 was that first sort of incomplete iTunes backup on

4    Grace's phone.

5         And then the file system extraction showed the images from

6    March 23rd because it was more complete.

7         And then of course GX3 and GX4 both came from the physical

8    extraction of the defendant's phone.

9         I am going to warn you, I do have a couple of explicit

10   photos coming up, we're not going to linger on them.  I'm going

11   to show you for a specific purpose and then we'll move on,

12   okay?  But they relate to how GX1 and GX3 are connected and how

13   GK2 and GX4 are connected.

14        So starting with March 17th, which is GX1 and 3.  There on

15   your left, that's GX1.  There on your right, that's GX3.  One

16   is from the victim's phone, one is from the defendant's phone.

17        Then moving on to the comparison of GX2, GX4.  I will tell

18   you that I don't have a picture of GX2 up because most of them

19   were pretty explicit, and I'm going to show you her pink shirt

20   in a second, but I bet you all probably remember that pink

21   shirt, right?

22        So this is from GX4 than was on the defendant's phone just

23   hours after this incident occurred.

24        Third, I want to spend a little bit of time talking about

25   March 17th versus March 3rd.  Because on March 23rd, we kind

1    of have an abundance of evidence, we have five videos and two

2    photos.  Whereas on March 17th, we just have a single photo.

3        So I want to emphasize to you all that you don't have to

4    have an abundance of visual evidence in order to find the

5    defendant guilty of Count 1 for March 17th.  You just have to

6    believe that he used a minor to create a visual depiction of

7    her engaging in sexually explicit conduct.

8        So we have indicators that that happened.  We have direct

9    testimony from Grace that that occurred, and that she watched

10    the video on her phone the next morning.

11        And then we have this image that is like a thumbnail or a

12    screen shot of that video.  And it's pretty close up so you

13    don't see any faces.  But we heard Detective Jett talk about

14    this mole the witness has that identifies her.  So we know the

15    victim in that photo there.

16        Finally, discussing all of the visual depictions that you

17    all have seen here, I want to talk about this notion that we

18    can't tell who took the videos.  So from March 17th, again,

19    Grace testified that Mr. Fields took the video.

20        For March 23rd, in addition to Grace's testimony, we've

21    got the videos themselves.  And they show Grace's body

22    position, which would make it awfully difficult for her to take

23    those images.  They, as you probably recall, were very, very up

24    close to her genitalia and were from such an angle that she

25    would not have been able to achieve that.

1          So knowing that, Mr. Spedding asked Dr. Littrell about the

2    possibility of a selfie stick or a tripod, but you still have

3    to hold a selfie stick.  And we saw the victim's arms in those

4    videos, and we saw her body position so we know that she wasn't

5    holding a selfie stick.

6          And then in terms of a tripod, you would expect a tripod

7    to be stationary if it were being used.  And we saw a lot of

8    movement in those videos indicating that Mr. Fields, who was

9    engaging in sexual activity with the victim, was the one that

10   was taking those videos.

11         So again, we've got a couple of explicit photos coming up,

12   just wanted to warn you all.

13         Looking here, this shows the victim's body position in one

14   of the videos, in GX2.  There are her arms, you may recall were

15   kind of pinned up underneath her body.  She was laying on her

16   stomach.  The beginning of this video, as you may recall, was a

17   video of her being penetrated from behind with the defendant's

18   fingers.  And again, I just want to emphasize the pink shirt

19   because we saw that in GX4, right?

20         This is another representation of a video from GX2.

21   Throughout this video we see the victim's hand up on her face.

22   There on the image on the very right, we also see her other

23   arm.  If you look at the top right-hand corner of that right

24   photo, you can see her fingers, where she's still got it over

25   her face, and then you can see her other arm in that video as

1    well.

2         The next one is the one that's explicit that I want to go

3    ahead and warn you about.  I'm showing it to you for the angle,

4    showing that it's very unlikely Grace took that video.  I'm

5    also showing it to you because it's got the defendant's face in

6    it clear as day.  There's the defendant, and there is the

7    impossible angle at which Grace would have to maneuver her body

8    to take that video.

9         So before I started my closing, you heard a lot of

10   instructions from the judge, and the instructions lay out the

11   law for you.  So I'm not going to reread or repeat what

12   Judge Reeves said, but I do want to highlight a couple of

13   things that might be important in terms of your application of

14   that law to these facts.

15        So just starting with the elements.  I've got these in

16   different colors because each of these things sort of have

17   different definitions, and you'll have to think about both of

18   them.  But the elements -- or the first element of this offense

19   is that the defendant employed, used, persuaded, induced, or

20   coerced a minor to engage in sexually explicit conduct for the

21   purpose of producing a visual depiction of that conduct.

22        So starting with the language about employed, used,

23   persuaded, induced, or coerced.  In your jury instructions,

24   you've got a definition for use there.  The jury instructions

25   don't define each one of those verbs that you see in red.  And

1    that because "use" is the most common one that we see in these

2    types of cases.  But I do want to emphasize that the element

3    does have other verbs besides "use" in there.

4        But nevertheless, Judge Reeves said, "A defendant uses a

5    minor if he, or someone at his direction, photographs or takes

6    a video of the minor engaging in sexually explicit conduct."

7        And then later in the instructions, it states, "It is not

8    necessary that the government prove that the defendant took the

9    visual depictions."  So I want to highlight that merely because

10   I anticipate that Mr. Spedding is going to argue that the minor

11   victim here took the videos or the photos, and that therefore

12   his client should be absolved of liability, which is not how

13   the law reads.

14       This crime is about using, employing, persuading,

15   inducing, or coercing a minor to engage in sexually explicit

16   conduct for the purpose of creating a visual depiction.  So he

17   can ask or direct the minor victim to take the video, and that

18   is just as culpable of him taking the video himself.

19       In terms of a minor, the term "minor" means any person

20   under the age of 18 years old.  Here, Grace's -- sorry, I get

21   so tied up sometimes with her name -- Grace's birthday is

22   November 24th, 2001.  So that means in March 2019, she was

23   17 years old.  So she is a minor under federal law.

24       Looking at sexually explicit conduct, there's a pretty big

25   definition for that in the instructions.  Because these images

1   were so clear, it's pretty simple for your purposes.  It says,

2   "the term sexually explicit conduct means actual or simulated

3   sexual intercourse, which includes genital-genital, or

4   oral-genital," so we saw that.  We saw vaginal intercourse both

5   on the 17th and on the 23rd.  We saw oral sex on the 23rd.  And

6   we also saw some digital penetration on the 23rd.  All three of

7   those things meet the definition or sexually explicit conduct.

8   And the vaginal intercourse was on the 17th as well, which

9   obviously meets this definition.

10      Looking at "for the purpose of," the instructions state

11   that "The term 'for the purpose of' means that the defendant

12   acted with the intent to create visual depictions of sexually

13   explicit conduct, and that the defendant knew the character and

14   content of the visual depictions."

15      So that is -- that does not mean that they had to initiate

16   sex with the sole intent of creating those visual depictions.

17   As long as the defendant acted with the intent to create the

18   visual depiction, that's enough.  I'm sure he probably

19   separately got sexual gratification from this act.  You know,

20   the gratification doesn't have to be the video alone or the

21   production of the video alone.

22      And then production is defined -- or excuse me --

23   "producing" is defined as "making, creating, directing,

24   manufacturing, issuing, publishing or advertising."  So most of

25   those are not relevant to this case, but by getting Grace's

1   phone from her on the 17th and on the 23rd, and by pressing

2   record with that phone, Mr. Fields was making or creating a

3   video that was sexually explicit.

4        And then finally, "visible depiction" is pretty simple.

5   It's "a visual image, whether it's stored in a data format or

6   on paper."  Here, it was in a data format.

7        So looking at the second element, which we won't spend

8   nearly as much time on, the second element is that the visual

9   depiction was produced or transmitted using materials that were

10  mailed, shipped, or transported in or affecting interstate

11  commerce by any means, including computer.

12       So what do we know about interstate commerce in this case?

13  Grace's phone was manufactured or assembled in China.  And we

14  also heard from Dr. Littrell and Grace, kind of a combination

15  of both, that Mr. Fields sent these images to himself using

16  Snapchat.  And Dr. Littrell said when you communicate by

17  Snapchat, it goes from your phone to the Snapchat server in

18  California, back to the other phone.  So there is interstate

19  commerce here, despite the fact that both of these individuals

20  were in Kentucky, because it was produced using something that

21  was manufactured elsewhere and because it was transmitted

22  across interstate commerce.

23       So again, we began this trial talking about power, and we

24  did that because power is integral to the facts here, but it's

25  also integral to the charge that Mr. Fields is facing or the

1    charges that he is facing.

2         You'll recall that "power" means the capacity or ability

3    to direct or influence.  Here, the defendant is charged with

4    employing, using, persuading, inducing, or coercing a minor to

5    engage in sexually explicit conduct for the purpose of creating

6    a visual depiction of that conduct.

7         Those verbs in italics there, employ, use, persuade,

8    induce, they really cover the whole spectrum of power that we

9    talked about in the very beginning.  Only one of those words is

10   coercion.  The rest of them are things like persuade, induce,

11   entice.  And even though that's like the soft power that we

12   were talking about, you still have to have influence, you still

13   have to power to persuade or induce or entice a minor to engage

14   in sexually explicit conduct.

15        Mr. Fields had that influence, he had that power.  And

16   with that influence, he had sex with Grace, he pressed record,

17   and he created a visual depiction of her engaging in sexually

18   explicit conduct.  He did so, I believe, so that he could have

19   a trophy.  So he could have some sort of proof of his conquest.

20        Ladies and gentlemen, the United States has the burden of

21   proof in this case.  You have heard that throughout since you

22   were impaneled, and we don't carry that burden lightly.  So

23   we've tried to give you all the facts that we think are

24   relevant.  We've tried to give you the whole story so that, you

25   know, you're not wondering, you know, what about this or what

1    about that?

2         We wanted to make sure you had all the information that

3    you might need to make your decision.  But I will submit to you

4    that this case is pretty simple.  Really, all you need for your

5    decision is to know Grace's birthday, her age at the time of

6    these events.  You need to have the visual depictions

7    themselves, which you all have seen and will have access to if

8    you need to see again.

9         And you need to know that Mr. Fields used means of

10   interstate commerce, that is a phone manufactured in China, to

11   create those visual depictions.  Those things alone can satisfy

12   the elements in this case.

13        As we saw a few slides ago, it's clear as day that

14   Mr. Fields is in that video, in those videos.  And it's also

15   clear that Grace, who is 17, who was a minor at the time, was

16   in those visual depictions.  So what reasonable doubt can there

17   be with that concrete evidence?  And with that concrete

18   evidence, we are going to ask that you find Mr. Fields guilty

19   on both counts in the indictment.

20        Thank you.

21        THE COURT:  Thank you, Ms. Melton.  You have seven

22   minutes' time remaining if you would like it for rebuttal.

23        MS. MELTON:  Thank you.

24        THE COURT:  Thank you.

25        Mr. Spedding.

1          MR. SPEDDING:  Thank you, Your Honor.  May it please the

2     Court.

3          THE COURT:  Mr. Spedding.

4          MR. SPEDDING:  Ms. Roth, Ms. Melton, Detective Jett,

5     Michael, ladies and gentlemen of the jury.  I stood up here the

6     other day, or yesterday it was, and I really didn't know what

7     we were going to see, so it was difficult for me to really tell

8     you what I could expect.  But I saw the same thing you all did.

9          And I think that I was right when I told you guys that you

10    probably weren't going to like Mike Fields.  You weren't going

11    to like the information that you received about Mike Fields

12    during this trial, and I was right about that too.  I saw it

13    just like you did.

14         The problem or the issue is not whether we like somebody

15    in a court of law.  The issue is whether or not the government

16    carries their burden.  And the United States, and rightly so,

17    attempts to make this as simple as they possibly can so that

18    you all as the jury don't have much to think about when you go

19    back there.

20         But what I submit to you is that there's a lot more that

21    you need to think about.  There is an instruction in there that

22    talks about the credibility of witnesses.  There was not a lot

23    of physical evidence in this case.  This wasn't a drug case

24    where we're looking at kilos of cocaine or, you know, murder

25    weapons or anything like that.  We looked at some videos and

1   some photos.

2        Ms. Melton started out her closing talking about soft

3   power and hard power.  And, you know, I served four years in

4   the Marine Corps, I was in the military police battalion.  And

5   I understand a little bit about what the hard power is, and I

6   understand a little bit about what the soft power is, because

7   depending on your leadership style and things like that, that's

8   what you experience.  Anybody that's been in the military, they

9   know what I'm talking about.

10       But there's another -- there's another example of hard

11  power, and we're sitting in it.  Look at this room.  This is a

12  federal courtroom.  The federal government is bringing all of

13  their resources against Mike Fields and trying to persuade you

14  as jurors, beyond a reasonable doubt, that he committed the

15  offenses that he was indicted for.

16       And what they did is initially they brought Grace to the

17  stand, who admittedly was a 17-year-old girl at the time that

18  these videos and photos were taken.  But the thing I would like

19  for you to do, and I'm going to try not to bounce around here

20  too much, but under Instruction Number 14, and Ms. Melton again

21  alluded to it, the term "use."

22       Grace testified, I believe it was on direct, that she

23  really didn't remember Mr. Fields taking the video.  And she

24  did it twice.  And then she corrected herself when I

25  cross-examined her.  But the bottom line is, we're talking

1  about the concept of reasonable doubt here.  And what I'm

2  submitting to you, standing here, you can look at all of these

3  instructions, you can look at the elements of the offenses in

4  Instruction Number 14.  And if you go back there and you think

5  that Grace was the one that took those videos on her own, then

6  my client is not guilty.  It's that simple.

7      Now, you know, we talked a lot about, well, a reasonable

8  person couldn't have taken these shots at this angle.  And then

9  I've looked at the videos showing arms and hands and all that,

10  and I'm assuming you all did too when Ms. Melton put it on

11  there.  I couldn't see two hands and two arms in any single

12  video.

13      I submit to you that there are accessories out there,

14  there are ways that persons and people can take videos and

15  pictures of whatever they want, however they want.  And it is

16  not beyond reason to think, based on what we heard from Grace,

17  that she's the one that took it.  She admitted to you all that

18  she took a video of her and Mike.  So we know that she did

19  that.

20      You know, it's by design that our forefathers, the framers

21  of the Constitution, drafted that document the way they did.

22  And they drafted it so that the burden, when the government is

23  trying to take your liberty, is on the United States.  And it's

24  by design from that document that you all sit where you sit.

25  It's by design from that document that I stand where I am.  And

1    it's by design that the government has to prove what they are

2    saying against Mr. Fields beyond a reasonable doubt, and they

3    haven't.

4         When Dr. Littrell testified yesterday, obviously that man

5    knows what he's talking about.  And I didn't have any beef with

6    what he had to say.  I didn't have any beef with what

7    Detective Judy had to say, they both know what they were doing.

8    The problem that I have with Dr. Littrell is that he didn't

9    look at the whole picture.  I asked him specifically about

10   72 pornographic files on Grace's phone -- they weren't on

11   Michael's phone, they were on Grace's phone -- that he didn't

12   look at.

13        There were 248,000 media files on her phone that he didn't

14   talk to you about.  And that there were over a hundred thousand

15   files on her phone that he didn't talk to you about.  The

16   bottom line is, what he did is, he went on there -- and it's

17   reasonable to conclude, he went on there, he listened to what

18   the government wanted him to look for, and he went on there and

19   he found it.  But what he found on Grace's phone were all

20   folders and videos and pictures that were taken by that phone.

21   He didn't find one single image, he didn't find one single

22   video on Mike Fields' phone that was taken by that phone.

23        You can sit here and speculate all day long until the cows

24   come in.  Well, he grabbed it and she knew it was passworded,

25   but I don't really remember how it happened, and you know,

1    these files could have been created the next day at 0800,

2    whatever.

3        The bottom line is we know -- we know two things.  They

4    were taken on Grace's phone, they were not taken on Michael's

5    phone.  We know that by the government's own witnesses.  So

6    what do we do with that?

7        Well, you hold the government to their burden is what you

8    do.  You can't just speculate.

9        You know, one of the first things that Grace talked about

10   was how strict her mother was and how petrified she was that

11   her mother would find those files on her phone.

12       But what I found curious when I was sitting there

13   listening to her is, and I think she even found it amusing a

14   little bit when she talked about being drunk, the fact that you

15   couldn't tell when she was drunk.  She found it amusing that

16   she was out at 10 or 11:00 at night and she met Mr. Fields at

17   Walmart.

18       And we just kind of gloss over the fact that she wasn't

19   worried again about those other folders and files that were on

20   the phone, you know, she's specifically worried about these two

21   things.

22       You know, she told you that -- on this, I think Ms. Melton

23   may have misspoke -- she told you that her friend Jacob Moore

24   introduced her to Michael Fields.  It wasn't that Michael was

25   at the Police Explorers and said hey, bring her, I want to meet

1  her.  This Jacob Moore introduced her to him.  So it wasn't

2  like he was asking people in the community, hey, set us up.

3       She testified that she worked at McDonald's, and I don't

4  know where this even came from, I don't remember who she said

5  said it, that he used to come up there and check her out.  I

6  mean, I don't know that that happened.  And I don't remember

7  who she said told her that.  I don't think she said anybody in

8  particular.

9       Detective Jett met with her over and over and over prior

10  to the time that she came in here to testify, trying to get

11  ready for trial.  And, ladies and gentlemen, that's called

12  practice.  You can say what you want, but that's called

13  practice.  That's like producing a Broadway play.  You go over

14  things so many times, you correct things, you tell people --

15  you go over the story with them.  You point things out to them,

16  so that when they come in here and they put on their show to

17  the jury, it's a finely polished version of what happened.  But

18  the problem is that they can't explain the fact that those

19  photos were on her phone and not his.

20       When we're looking at her phone, I asked Dr. Littrell if

21  he was aware of any third-party apps that could be used to

22  alter date and times on videos and photos, and he acknowledged

23  that there are.

24       Now, I can't go over to and pick my phone up -- I can

25  barely go over there and pick my phone up and take a picture, I

1   submit to you the younger generation, they know what they're

2   doing.  And it's not beyond the realm to think that that could

3   have happened in this particular case.  Those photos can be

4   altered.  Those videos can be altered.

5       You know, I know that's been difficult for you all to come

6   in here and sit six feet apart, and you have to wear your masks

7   and you have to listen to a case like this.  And I understand,

8   and I think I can speak for everybody in the room that we all

9   appreciate you doing it.

10      But you know, I'll close with this.  I can't impress upon

11  you all as a jury how important it is for you all to look at

12  this evidence.  And no matter what you think about Mr. Fields

13  personally, no matter how repugnant those videos look to you,

14  you have to be able to look at what happened here in the last

15  two days, you have to be able to look at him, you have to be

16  able to look at the government and say you proved his guilt

17  beyond a reasonable doubt.

18      This case has all kinds of reasonable doubt in it.  You

19  could put all you want up on these monitors.  You could put all

20  the flow charts, all the graphs, bring all the experts you

21  want, but the bottom line is, it boils down to that.  And what

22  I'm asking you to do today is, again, set aside the

23  distastefulness of what you've seen.

24      You have to determine whether, based on the law, they

25  proved that he took those videos or those photos or he directed

1    somebody to.  If Grace took those videos and those photos, he's

2    not guilty.  Period.

3         So again, I appreciate you all being in here.  I know it's

4    not fun.  I know you probably would all be somewhere else, but

5    I think based on what Ms. Melton and I have told you, and

6    Ms. Roth during the course of this trial, I think you can

7    appreciate how important this process is, and I thank you.

8         Thank you, Judge.

9         THE COURT:  Yes, sir.

10        Ms. Melton, you have, I believe, seven minutes remaining

11   if you would like to use it.

12        MS. MELTON:  Mr. Spedding just told you all that if you

13   think, based on the evidence, that Grace took the videos or the

14   photos, then you've got to acquit his client.  That's just not

15   true.  Remember during the instructions when the judge said if

16   either of the attorneys -- if either side gives you instruction

17   about the law that conflict with his instructions, that you've

18   got to listen to him.  And let me just re-read what his

19   instructions say on that point of who may have taken the

20   videos.

21        They say, "A defendant uses a minor if he, or someone at

22   his direction," so that means it does not have to be defendant,

23   it could be someone else, so "A defendant uses a minor if he,

24   or someone at his direction, photographs or takes video of the

25   minor engaging in sexually explicit conduct."

1        And if that wasn't clear enough, the instructions also

2   say, "It is not necessary that the government prove that the

3   defendant took the visual depictions."  It doesn't have to show

4   that.  The evidence can show that -- I hate to do this because

5   this is not what the evidence shows in this case.

6        But just hypothetically, if the evidence showed that

7   Mr. Fields persuaded Grace or induced Grace to herself hold the

8   camera and take a video of the sexually explicit conduct,

9   Mr. Fields could still be guilty.  But we don't even have to

10  live in that fantasy world, because you all watched the videos.

11  It's clear who was taking them.

12       I don't think that we need to pull it back up on the

13  screen to show that absurdly close shot of him performing oral

14  sex on her while she was lying down.  Nobody else had the

15  camera that close to his face when he was doing that.

16       And Mr. Spedding was very upset that I didn't put up a

17  screen shot with two arms in it both at the same time.  But

18  this was an amateur video that was taken by Mr. Fields while he

19  was actively engaging in sexual activity.  Unfortunately, the

20  production value is not such that I could get all of that in

21  one shot.  But you all saw it.

22       And Mr. Spedding said that people can take pictures and

23  videos however they want, whenever they want.  But we all still

24  are operating under the law of physics.  You watched the videos

25  in their entirety, I don't want to show them to you again.  Is

1   there a way Grace could have been moving the camera such that

2   every angle she was the one doing it?  That's just not the

3   case.

4        And the judge also instructed you about possible doubt

5   versus reasonable doubt.  He said that possible doubt is

6   speculation.  And I think what we heard from Mr. Spedding about

7   people being able to take pictures or videos in any possible

8   fashion they see fit, that's speculation.  That's not

9   reasonable doubt.

10       And similarly, the issue of the third-party apps.

11  Dr. Littrell did indeed say he did not check for third-party

12  apps.  What we see in this case is that the data is associated

13  with the images on Grace's phone match up very closely with the

14  dates of the images on the defendant's phone.  How in the world

15  could Grace, who I don't think is some sort of IT genius, but

16  how could she download a third-party app on her phone and it

17  alter the date on his phone?  There's no way.  There's no way

18  she manipulated the evidence in this case so that both the

19  evidence on her phone and the evidence on his phone was

20  changed.

21       And those videos didn't materialize out of thin air.  At

22  most, if those third-party apps change the date, what benefit

23  would she have of doing that here?

24       In terms of the owner of the phone, we talked about who

25  took the videos, we submit to you that Mr. Fields did.  But

1    Mr. Spedding also made a big deal about where -- or, excuse

2    me -- what device the videos were taken on.

3         When you take the instructions back with you, look at

4    Instruction Number 14.  You're not going to see anything in

5    here about the ownership of the phone.  The defendant does not

6    have to own the phone.  He could go rent a phone from somebody.

7    He could pick up a random person's phone, or he could pick up

8    the victim's phone and produce a visual depiction and be guilty

9    of this offense.

10        And in terms of what was on his phone, images on his phone

11   matching the images on her phone were there.  And we're not

12   charging Mr. Fields with distribution of child porn here.  But

13   the fact that he sent them to himself and that they were on his

14   phone shows that he was an active participant in it.  He had

15   the intent to create these depictions so that he could enjoy

16   them for himself later.

17        MR. SPEDDING:  Your Honor, may we approach?

18        THE COURT:  Yes, you may.

19        (Bench conference on the record.)

20        THE COURT:  Yes, sir.  Let me put my mask on here.

21        MR. SPEDDING:  Ms. Melton just stated that Mr. Fields sent

22   the images to himself.  There was never any evidence of that in

23   this entire trial.

24        MS. MELTON:  Grace testified to that.

25        THE COURT:  She said she saw on Snapchat where he sent it

1   to himself.   Objection is overruled.

2          Two minutes left, Ms. Melton.

3          MS. MELTON:   Thank you, Your Honor.

4          (Bench conference concluded.)

5          THE COURT:   Objection is overruled.   Ms. Melton, I'll give

6   you an extra minute in case you need to use it in light of the

7   objection.

8          MS. MELTON:   Thank you, Your Honor.

9          I want to address two more things before we wrap up.

10   Mr. Spedding also talked about some items on Grace's phone that

11   were not examined.   Specifically when you saw that screen shot

12   of Dr. Littrell's software, there was a tab over there that

13   said pornography.   Dr. Littrell said he didn't examine that.

14   But that tab, those are not pornographic images on the phone.

15   Those are websites.   And since he didn't examine them, they may

16   or may not be pornography.

17          But we know that there are websites that it could possibly

18   be, because that software has an algorithm where it attacks

19   things.   And that's how -- remember that decoding process where

20   it goes from an unreadable format to a readable format?

21   Categorizing things like that is part of the decoding process.

22          But nevertheless, even if Grace looked at porn or went to

23   porn websites as a 17-year-old, that does not mean that

24   Mr. Fields did not use her as a minor to engage in sexually

25   explicit conduct for the purpose of creating a visual depiction

 1    himself of that conduct.

 2         It doesn't absolve Mr. Fields or make Grace any less of a

 3    victim in this case.

 4         Finally, Mr. Spedding said that, on direct examination,

 5    that Grace said that she didn't remember the videos being

 6    taken.  That's not what she said.  She did say on direct

 7    examination that she remembered the video being taken on the

 8    17th.  And on the 23rd, she remembered him asking for it.

 9    Remember, she told you how long or for what percentage of the

10    intercourse that she thought he was taking it?  And she also

11    watched the videos on her phone the next morning.

12         Mr. Spedding in his closing argument relied on possible

13    doubt to get you to acquit his client.  But the evidence here

14    is overwhelming.  For that reason, the United States asks you

15    to convict Mr. Fields on both Counts 1 and 2 of the indictment.

16         Thank you.

17         THE COURT:  All right.  Thank you.

18         Thank you, Counsel.

19         Ladies and gentlemen, at this time you'll be excused to

20    begin your deliberations.  If you would, please, go back to the

21    rooms that you were using.  If you have any materials, personal

22    materials back there, you can get those materials and you can

23    take those down to the jury assembly room.  Security officers

24    will accompany you and you will begin your deliberations at

25    that point.

1         I do want to advise you at any point during your

2    deliberations one of you would need to step outside, I don't

3    know if we have any smokers on the panel, for example, but if

4    anyone does need to go to the restroom or take a break, please

5    only deliberate when all 12 jurors are present in the

6    deliberation room.

7         You'll be given the instructions.  As I've indicated,

8    there's 11 copies plus my original, and the verdict form is

9    attached, clipped to my original.

10        You'll also be given a copy of the indictment in the case.

11   Again, you're reminded it's not evidence in the case, it's only

12   to be used for you to understand the nature of the two charges

13   in this matter.

14        Now, finally, I will excuse our alternate in the case at

15   this time, but I will not lift the admonition at this point.

16   I'll explain the reason for that.  Juror Number 348 was

17   selected as the alternate in this case.  If for some reason all

18   12 jurors could not continue with all deliberations until a

19   verdict is returned, we would have to call you back into the

20   case and begin the deliberations anew.

21        But my practice is as soon as the jury is able to reach a

22   verdict in the case, I have the clerk contact the alternate to

23   let the alternate know that a verdict has been reached.  At

24   that point the admonition is lifted and you are free to talk

25   with anyone you wish about the case, but you are never required

1    to.

2         So if at any point anyone were to ever attempt to talk to

3    you about the matter and you chose not to, contact the court.

4         With that further admonition, the jury will be excused.

5    Your lunches are downstairs in the jury assembly room.

6         I will tell you that I won't be able to take your verdict,

7    if you do return one in the next hour, before probably 1:30.

8    One of our attorneys has one other matter to take up with

9    another judge here in the courthouse, so I've indicated that we

10   wouldn't take a verdict until at least 1:30 this afternoon.

11        And so if you were to have a decision before that time, it

12   will be about 1:30 before I could call you back.

13        But please have your lunch as you begin your

14   deliberations.  And as soon as you're completed, then of course

15   notify the security officer.  With that admonition, again the

16   jury will be excused at this time.

17        (Jury left courtroom at 12:20 p.m.)

18        THE COURT:  Thank you.  We will be in recess to await the

19   verdict.

20        Before we recess, let me ask if there is any objection to

21   the instructions as given to the jury, as they were read to the

22   jury?

23        MS. ROTH:  No, Your Honor.

24        MR. SPEDDING:  No, Your Honor.

25        THE COURT:  All right.  We will be in recess.  Thank you.

 1        (A recess was taken from 12:21 p.m. to 1:40 p.m., verdict

 2   was returned, transcript not requested.)

 3

 4

 5                    C E R T I F I C A T E

 6        I, Linda S. Mullen, RDR, CRR, do hereby certify that

 7   the foregoing is a correct excerpted transcript from the record

 8   of proceedings in this above-entitled matter.

 9

10

11   /s/Linda S. Mullen              February 22, 2021
     Linda S. Mullen, RDR, CRR      Date of Certification
12   Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25