1                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
2                    CENTRAL DIVISION AT LEXINGTON

3                          - - -
UNITED STATES OF AMERICA,       .  Case No. 5:19-CR-00178
4                               .
            Plaintiff,          .
5                               .  Lexington, Kentucky
        - v -                   .
6                               .  Monday, June 1, 2020
WILLIAM MICHAEL FIELDS JUNIOR, .   8:55 a.m.
7                               .
            Defendant.          .
8                          - - -

9              TRANSCRIPT OF VOIR DIRE PROCEEDINGS
            BEFORE THE HONORABLE DANNY C. REEVES
10            UNITED STATES DISTRICT COURT JUDGE

11                         - - -

12

13   For the United States:    ERIN ROTH, ESQ.
                               MARY LAUREN MELTON, ESQ.
14                             Assistant U.S. Attorneys
                               United States Attorney's Office
15                             260 West Vine Street, Suite 300
                               Lexington, Kentucky  40507
16
     For the Defendant:        CHRISTOPHER A. SPEDDING, ESQ.
17                             Spedding Law Office
                               271 West Short Street, Suite 402
18                             Lexington, Kentucky  40507

19   Court Reporter:           LINDA S. MULLEN, RDR, CRR
                               Official Court Reporter
20                             101 Barr Street
                               Lexington, Kentucky  40507
21

22   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
23

24

25

1          (Proceedings in open court, June 1, 2020, 8:55 a.m.)

2          THE CLERK:  I'm going to call your numbers.  Please say

3     "here."

4          Juror Number 217.

5          PROSPECTIVE JUROR 217:  Here.

6          THE CLERK:  233.

7          PROSPECTIVE JUROR 233:  Here.

8          THE CLERK:  237.

9          PROSPECTIVE JUROR 237:  Here.

10         THE CLERK:  241.

11         PROSPECTIVE JUROR 241:  Here.

12         THE CLERK:  243.

13         PROSPECTIVE JUROR 243:  Here.

14         THE CLERK:  246.

15         PROSPECTVE JUROR 246:  Here.

16         THE CLERK:  249.

17         PROSPECTIVE JUROR 249:  Here.

18         THE CLERK:  250.

19         PROSPECTIVE JUROR 250:  Here.

20         THE CLERK:  252.

21         PROSPECTIVE JUROR 252:  Here.

22         THE CLERK:  260.

23         PROSPECTIVE JUROR 260:  Here.

24         THE CLERK:  263.

25         PROSPECTIVE JUROR 263:  Here.

```
 1        THE CLERK:  264.

 2        PROSPECTIVE JUROR 264:  Here.

 3        THE CLERK:  267.

 4        PROSPECTIVE JUROR 267:  Here.

 5        THE CLERK:  270.

 6        PROSPECTIVE JUROR 270:  Here.

 7        THE CLERK:  275.

 8        PROSPECTIVE JUROR 275:  Here.

 9        THE CLERK:  277.

10        PROSPECTIVE JUROR 277:  Here.

11        THE CLERK:  284.  284?

12        PROSPECTIVE JUROR 284:  That may be me.  I don't remember

13   my number.

14        THE CLERK:  What's your last initial?

15        PROSPECTIVE JUROR 284:  G.

16        THE CLERK:  First, A?

17        PROSPECTIVE JUROR 284:  Yes.

18        THE CLERK:  That's you, 284.

19        290.

20        PROSPECTIVE JUROR 290:  Here.

21        THE CLERK:  292.  292?

22        PROSPECTIVE JUROR 292:  Here.

23        THE CLERK:  295.

24        PROSPECTIVE JUROR 295:  Here.

25        THE CLERK:  296.
```

```
 1        PROSPECTIVE JUROR 296:  Here.

 2        THE CLERK:  298.

 3        PROSPECTIVE JUROR 298:  Here.

 4        THE CLERK:  301.

 5        PROSPECTIVE JUROR 301:  Yeah.

 6        THE CLERK:  306.

 7        PROSPECTIVE JUROR 306:  Here.

 8        THE CLERK:  307.

 9        PROSPECTIVE JUROR 307:  Here.

10        THE CLERK:  309.

11        PROSPECTIVE JUROR 309:  Here.

12        THE CLERK:  315.

13        PROSPECTIVE JUROR 315:  Here.

14        THE CLERK:  314.  Are we here yet, 314?  Okay.  Thank you

15   all.

16        What's your number?

17        PROSPECTIVE JUROR 314:  314.

18        THE CLERK:  314?

19        PROSPECTIVE JUROR 314:  Yes.

20        THE CLERK:  Okay.  Thank you.

21        THE COURT:  Thank you.  Good morning, everyone.  It's good

22   to see everybody.  I know that you're probably as anxious to

23   get out as I have been.

24        Madam Clerk, at this time would you call the matter

25   schedule for trial?
```

1          THE CLERK:  Yes, Your Honor.  Lexington Criminal Action

2     Number 19-178, United States of America versus William Michael

3     Fields Junior, called for jury trial.

4          THE COURT:  Thank you.

5          Would counsel state their appearance, please.

6          MS. ROTH:  Good morning, Your Honor.  Erin Roth on Mary

7     Melton on behalf of the United States.

8          THE COURT:  Thank you.

9          Mr. Spedding.

10          MR. SPEDDING:  Good morning, Your Honor.  Christopher

11     Spedding for William Michael Fields.  He is seated to my right.

12          THE COURT:  All right.  Thank you.

13          Again, ladies and gentlemen, good morning.  We're going to

14     begin selection of the jury here in just a moment for a matter

15     that's set for trial.

16          Before I begin by asking you some questions, and then

17     follow-up questions by counsel, I want to mention a couple of

18     things about the precautions we're taking in light of the

19     COVID-19 pandemic and the manner in which the jury will be

20     selected today.

21          If you have been here before, I'm sure you will notice

22     that we don't have as many jurors as we typically would have

23     for trial.  That's because we've split the jurors that were

24     scheduled to come in today in two groups.  You will be the

25     first group, and then we have another group that hopefully that

1    we'll be able to start with in an hour or so.

2        We're going to complete our questions for you.  And after

3    we have done that, there may be some of you that will be

4    excused and then the balance will go back downstairs.  Were you

5    all in the jury assembly room, or were you in -- you were in

6    jury assembly room?  You'll go back down to the jury assembly

7    room until we make the final selections.  And then we'll bring

8    up those jurors that will be seated for the trial and I'll be

9    able to excuse the balance of you.

10       Now, this is a new process we're following and I do

11   appreciate your cooperation and your understanding.  Things

12   will take maybe a little bit longer because of some of these

13   precautions, but I'm sure you do understand the need to do

14   that.

15       When you came into the courtroom, I'm sure you were told

16   that there are certain places you can be seated.  You can

17   notice those blue Xs on the chairs.  And we'll be following

18   that procedure during the trial in the case.

19       Also, during the trial we'll have our jurors wear their

20   face coverings as well as some other parties in the courtroom.

21   If we have bench conferences, for example, with the attorneys,

22   the attorney will have to come up and wear their mask.  If they

23   approach witnesses, we'll follow the same procedure there.

24       But I found that -- this is our second trial, I had a

25   trial last week here, and I found that when the attorneys are

1   speaking to you or when I'm speaking to you, it's really

2   difficult for you to be able to hear and understand when I'm

3   wearing a mask.  And so there may be times when I'll certainly

4   wear a facial covering, but in this selection process, I will

5   be doing that unless we have someone that does need to come up

6   to the bench.

7         You'll also notice that throughout the courtroom there's

8   quite a bit of hand sanitizer and some wipes, Clorox wipes.

9   Feel free to use as much of that as you need to use.  Don't

10  stick any of it in your pocket to take it home, but while

11  you're here, feel free to use as much of that as you want to

12  use.

13        We also have, in case someone loses a mask or doesn't have

14  one, we have some additional masks that you can certainly ask

15  for if you don't have one available.  And we also have gloves

16  in case anyone wants to wear some of those.  I don't think they

17  are latex.  Neoprene gloves, perhaps.  We can make those

18  available to you if you do need those and would like to use

19  those.

20        Also, everyone was sent a letter before we called you in.

21  This is a group that originally we were scheduled to start

22  earlier with the trial and it was delayed a bit, but you did

23  fill out those questionnaires that were sent along with those

24  letters, and I certainly do appreciate that.  Hopefully that

25  will speed up the jury selection process a bit.

1      Also, on the letter that I sent you, I outlined some

2  procedures that you were supposed to follow in terms of if

3  you're sick, if you've traveled.  And I appreciate you doing

4  that, and I would ask that you just continue to follow those

5  same procedures while we have you here as jurors in the case.

6      Now, before we begin, I know we have some new jurors here

7  for the first time that will need to be qualified.  And what

8  I'm going to do is I'm going to ask the clerk to administer the

9  oath to all of our jurors to answer questions, then I'll have a

10  few questions for the new jurors.

11      Madam Clerk, at this time would you please administer the

12  oath to the new jurors?

13      THE CLERK:  Yes, Your Honor.

14      (Jury Panel A sworn.)

15      THE COURT:  Please be seated.  What I'm going to do is ask

16  the clerk to identify by number the new jurors that will need

17  to be qualified, and then I do have just a couple of questions

18  for you.

19      Madam Clerk.

20      THE CLERK:  263.

21      THE COURT:  If you can stand up as your number is called

22  and then I'll ask you those questions.

23      THE CLERK:  264.  275.  277.  284.  290.  292.  295.  296.

24  298.  And 309.

25      THE COURT:  All right.  Now, just a few questions for the

1    group that's standing.  And these are questions that you

2    answered when you filled out those questionnaire forms and sent

3    those back into the court originally.  So I want to make sure

4    this information is still accurate.

5         First, are each of you citizens of the United States?

6         ALL:  Yes.

7         THE COURT:  Are you 18 years of age or older?

8         ALL:  Yes.

9         THE COURT:  Has your primary residence for the past year

10   been in this state and also in the same county?

11        ALL:  Yes.

12        THE COURT:  Do each of you read, write, speak, and

13   understand the English language?

14        ALL:  Yes.

15        THE COURT:  Are any charges now pending against you for a

16   violation of state or federal law punishable by imprisonment

17   for more than one year?

18        ALL:  No.

19        THE COURT:  Have any of you ever been convicted either by

20   a guilty or nolo contendere plea, or by a court or jury trial,

21   of a state or federal crime for which punishment could have

22   been more than one year in prison?

23        ALL:  No.

24        THE COURT:  Do any of you have any physical or mental

25   disabilities that would interfere with or prevent you from

1    serving as a juror if you're selected?

2        ALL:  No.

3        THE COURT:  All right.  Thank you.  All these jurors are

4    qualified, Madam Clerk.

5        You may be seated.

6        THE CLERK:  Yes, Your Honor.

7        THE COURT:  Now, ladies and gentlemen, before I proceed

8    with my substantive questions about the case, I want to go over

9    just a couple of procedural matters with you in terms of how we

10   will be selecting the jury.

11       As I go through my questions, there will be some of you

12   that will want to give a response.  And I will remind you,

13   first, that of course you are under oath and therefore it's

14   important that you give full and complete answers to my

15   questions and to the questions that the attorneys may have.

16       So when you do need to give a response, if you could

17   please raise your hand to identify yourself until you are

18   called on to respond.  Then every time that you have to

19   respond, if you could give me your juror number.

20       The reason that's important is that we're transcribing the

21   proceedings and we need to know which jurors are responding to

22   which questions.  So I would ask you, if you could, when you

23   respond to please give me your juror number.  If you forget, I

24   may remind you, or perhaps one of the attorneys may remind you

25   if they're asking you questions.

1        Next, if you're soft spoken, and it's hard to talk through

2   these masks, I know, so if you are a bit soft spoken, you may

3   need to use one of the microphones.  I think we'll be able to

4   hear the jurors that are up in the jury box, but for those of

5   you that are toward the back of the courtroom, we've placed a

6   couple of microphones about halfway back.  Again, if you're

7   soft spoken or if you would like to come up and use those

8   microphones, you're certainly welcome to do that.

9        Let me begin by giving you a brief summary of this case,

10  and then after I've given you this summary, I'll be asking if

11  you know anything about the case or if you've heard anything

12  about the case that would prevent you from being a juror.

13       Now, ladies and gentlemen, there are two counts or charges

14  that will be presented for your consideration during the trial.

15  The defendant, William Michael Fields Junior, is charged with

16  using a minor to engage in sexually explicit conduct for the

17  purpose of producing visual depictions of that conduct.  That's

18  commonly referred to as the production of child pornography, in

19  violation of Title 18 of the United States Code, Section

20  2251(a).

21       The indictment alleges that the defendant knowingly

22  engaged in this conduct and that he produced or transmitted

23  child pornography using materials that had been mailed,

24  shipped, or transported in interstate commerce.

25       The events charged in Count 1 are alleged to have happened

1   on or about March 17th, 2019, while the events charged in

2   Count 2 are alleged to have occurred on or about March 23rd,

3   2019.

4        Now, regarding both counts, the activities charged are

5   alleged to have occurred in Bourbon County, in the Eastern

6   District of Kentucky.

7        Now, the defendant denies both charges against him.

8        So let me begin by asking if any of our prospective jurors

9   have heard anything about the case or if you know anything

10  about the case?  If you have, if you could raise your hand.

11       All right.  If not, then let me again introduce the

12  attorneys that will be presenting the proof to you during the

13  course of this trial.

14       First, on behalf of the United States, Assistant United

15  States Attorneys Erin Roth and Mary Melton.

16       On behalf of the defendant, Mr. Christopher Spedding who

17  is over to my left.

18       MR. SPEDDING:  Good morning.

19       THE COURT:  And, of course, Mr. Fields is seated with

20  Mr. Spedding at counsel table.  Mr. Fields, if you could stand

21  as well, please, sir.

22       THE DEFENDANT:  Morning.

23       THE COURT:  Thank you.

24       Let me ask if any of our jurors know any of the attorneys

25  or the defendant that I have just identified?

1          Yes, ma'am, on the first row.

2          PROSPECTIVE JUROR 315:  I know Mr. Spedding.  Our son --

3          THE COURT:  What is your juror number?  And if you could

4     speak up?

5          PROSPECTIVE JUROR 315:  315.

6          THE COURT:  315?  Yes, ma'am.  You know Mr. Spedding?

7          PROSPECTIVE JUROR 315:  (Nodding head.)

8          THE COURT:  Can you tell me just briefly how you know him?

9          PROSPECTIVE JUROR 315:  Our sons played baseball together.

10         THE COURT:  All right.  Probably not right now.

11         As a result of your interaction with Mr. Spedding as being

12    a parent with children playing baseball together, do you have

13    conversations with him from time to time?

14         PROSPECTIVE JUROR 315:  Yes.

15         THE COURT:  He and some of the other parents?

16         PROSPECTIVE JUROR 315:  Uh-huh.

17         THE COURT:  Based on those conversations you might have

18    had or your observations of him as a parent, a baseball parent,

19    do you believe that you would either favor or disfavor his side

20    of the case just based on that knowledge?

21         PROSPECTIVE JUROR 315:  No.

22         THE COURT:  Can you set aside your personal knowledge and

23    listen to the evidence and render a fair and impartial verdict

24    based on the evidence?

25         PROSPECTIVE JUROR 315:  Yes.

```
 1        THE COURT:  If you were to return a guilty verdict in the
 2   case, if the evidence supported it, do you feel like you would
 3   have a difficult time interacting with Mr. Spedding going
 4   forward?
 5        PROSPECTIVE JUROR 315:  No.
 6        THE COURT:  That wouldn't affect you in any way?
 7        PROSPECTIVE JUROR 315:  No.
 8        THE COURT:  All right.  Thank you, ma'am.
 9        Anyone else?
10        Is there anyone that's had a case with any of the
11   attorneys either in which you've been a party, a witness, or
12   appeared in any other capacity?
13        Mr. Spedding practices law here in Lexington, I think it's
14   the Spedding Law Firm.  Anyone have any legal or other dealings
15   with his law firm?
16        Do we have anyone that knows the defendant I've
17   identified?
18        Let me identify some potential witnesses in the case,
19   ladies and gentlemen.  I think I've got four individuals I'll
20   be able to identify by name.  I'll go through these names, and
21   then if you either know any of these individuals or have had
22   interaction with them, if you could please identify yourself.
23        The person that's alleged to be the victim in this case
24   will be identified throughout the course of the trial by her
25   initials, which are E.Y.  So obviously you won't be able to say
```

1   yes, I know a person by the name of E.Y.

2       But in addition to that individual, I believe that we'll

3   also have testimony from Nathan Linville, who is a sergeant

4   with the Cynthiana Police Department.

5       Alan Judy, who is a detective with the Cynthiana Police

6   Department.

7       And Justin Jett, who is also a detective with the

8   Cynthiana Police Department.

9       And also I believe we'll have testimony from Dr. Michael

10   Littrell, who is a detective with the cyber crimes unit with

11   the Office of the Attorney General in Kentucky.

12       Let's see if any of our potential jurors know any of the

13   individuals that I've identified as potential witnesses.

14       Yes, ma'am.

15       PROSPECTIVE JUROR 270:  I know Michael Littrell.

16       THE COURT:  Can you tell me just briefly how you know him?

17       PROSPECTIVE JUROR 270:  He used to be in my scout troop as

18   a young man.

19       THE COURT:  If you could come to the microphone?  What was

20   your number again?

21       PROSPECTIVE JUROR:  I'm sorry, 2-7-0.

22       THE COURT:  270.

23       PROSPECTIVE JUROR 270:  He was in my scout troop as a

24   young child.

25       THE COURT:  All right.

1      PROSPECTIVE JUROR 270:  I've known him all through his

2   school years.

3      THE COURT:  What was the last part?

4      PROSPECTIVE JUROR 270:  I've known him all through his

5   school years, up to the twelfth grade.

6      THE COURT:  Based on the fact that you know a potential

7   witness in the case, do you feel like that you would give his

8   testimony more weight or less weight than other witnesses, all

9   things being equal?

10      PROSPECTIVE JUROR 270:  No.

11      THE COURT:  Could you listen to the testimony of all the

12   witnesses in the case and render a fair and impartial verdict

13   based on what you've been told so far?

14      PROSPECTIVE JUROR 270:  I could.

15      THE COURT:  When you know someone growing up, sometimes

16   you may tend to favor that person.  Do you believe you can set

17   aside any personal knowledge you have and listen to the

18   testimony fairly?

19      PROSPECTIVE JUROR 270:  He was a stickler.

20      THE COURT:  I'm sorry?

21      PROSPECTIVE JUROR 270:  I said he was a stickler, and yes,

22   I can be impartial.

23      THE COURT:  Stickler.  Sometimes that can be good and

24   sometimes that can be bad.  Yes, ma'am.

25      PROSPECTIVE JUROR 270:  He was a kid.

1          THE COURT:  All right.  Thank you, ma'am.

2          Also, as our one potential juror goes back to her seat,

3     these microphones, the one on my left over here doesn't have a

4     wire, it's wireless.  The one on my right does.  So if anyone

5     comes up that way, make sure you don't trip on that cord, if

6     you could please try to avoid that.

7          Anyone else have any knowledge of any of the potential

8     witnesses?

9          Let me ask you a general question.  I know, again, ladies

10    and gentlemen, that all of you provided some information on

11    those questionnaires that were submitted to you early in May.

12    Is all of the information accurate?  If it's not, if there's

13    anything you provided that's not accurate, if you could just

14    raise your hand?

15         All right.  Now, as I've indicated, I do expect there will

16    be several law enforcement officers who will be testifying in

17    the case and so therefore I want to ask you a couple of

18    additional questions about this.

19         I want to ask you if you have any current or past

20    relationships with anyone in law enforcement, or if you've had

21    an encounter with someone in law enforcement?  And based upon

22    either the relationship or the encounter that you've had, if it

23    would cause you to either give more weight or less weight to

24    the testimony of such witnesses?  Anyone?

25         Yes, ma'am.

1        PROSPECTIVE JUROR 260:  Juror 260.

2        THE COURT:  Yes, ma'am.

3        PROSPECTIVE JUROR 260:  I'm a previous criminal

4   investigator with the Office of the Attorney General.

5        THE COURT:  All right.  You're not in that capacity now;

6   is that correct?

7        PROSPECTIVE JUROR 260:  No, sir, I'm retired.

8        THE COURT:  I'm assuming you know generally the procedures

9   that are followed when they conduct investigations?

10        PROSPECTIVE JUROR 260:  Yes, sir.

11        THE COURT:  Do you know Dr. Littrell, who is in the Office

12   of the Attorney General?

13        PROSPECTIVE JUROR 260:  No, sir.  I've been retired for

14   20-some years.

15        THE COURT:  Do you feel like, based upon your prior work

16   experience, that you would tend to favor law enforcement more

17   than any other witnesses who might testify?

18        PROSPECTIVE JUROR 260:  No, sir.

19        THE COURT:  So my question is the same.  Could you set

20   aside your past background and experience and listen to all the

21   testimony and evidence and be fair and impartial to both sides?

22        PROSPECTIVE JUROR 260:  Yes, sir.

23        THE COURT:  Thank you.

24        Yes, sir.  First --

25        PROSPECTIVE JUROR 252:  Juror 252.  I did fill out my

19

 1   form.  My father is a retired police officer and my

 2   brother-in-law works for the Lexington Police Department.

 3        THE COURT:  Uh-huh.

 4        PROSPECTIVE JUROR 252:  I don't think that I would have

 5   bias.

 6        THE COURT:  All right.  You just want to let us know that?

 7        PROSPECTIVE JUROR 252:  Yeah, I do.

 8        THE COURT:  If you're instructed that you are required to

 9   listen to all the testimony and the evidence and not favor

10   witnesses based on their status --

11        PROSPECTIVE JUROR 252:  I think I can.

12        THE COURT:  You can do that?

13        PROSPECTIVE JUROR 252:  Yes.

14        THE COURT:  All right.  Thank you, sir.

15        Let me go up here and come over to you, sir.

16        PROSPECTIVE JUROR 263:  Juror Number 263.  I have a

17   brother-in-law who is a retired police officer with the

18   Covington and Newport Police Department.

19        THE COURT:  Now, based upon that relationship, would you

20   tend to favor or disfavor the testimony of other law

21   enforcement officers if they were to testify?

22        PROSPECTIVE JUROR 263:  No.

23        THE COURT:  All right.  Thank you, sir.

24        Let me come over here.  Yes, sir.

25        PROSPECTIVE JUROR 296:  296.  I have a son that's a police

1   officer.  I have a nephew that's a police officer.  And my

2   son-in-law was a police officer.  He quit that job in March of

3   this year.

4        THE COURT:  Are they in the Central Kentucky area?

5        PROSPECTIVE JUROR 296:  Deputies in Louisville and the

6   son-in-law is in Mt. Sterling.

7        THE COURT:  Is there anything about those relationships --

8   obviously you have relatives in law enforcement.  Do you feel

9   like you could listen to the testimony of other law enforcement

10  officers and give their testimony the same weight you would any

11  other person?

12       PROSPECTIVE JUROR 296:  Yes.

13       THE COURT:  All right.  Thank you, sir.

14       Yes, on the first row here.

15       PROSPECTIVE JUROR 295:  295.  One of my best friends is a

16  retired Kenton County police officer.

17       THE COURT:  Same question.  Would you tend to favor law

18  enforcement based upon your relationship with your friend?

19       PROSPECTIVE JUROR 295:  No, sir.

20       THE COURT:  All right.  You can listen to all the

21  testimony and be fair to both sides?

22       PROSPECTIVE JUROR 295:  Yes, sir.

23       THE COURT:  All right.  Thank you.

24       Back in the back.

25       PROSPECTIVE JUROR 298:  Juror 298.  I used to be a

1    corrections officer and my ex-wife works for the Department of

2    Criminal Justice Training.

3        THE COURT:  Would you tend to favor law enforcement based

4    upon those relationships and your past experience?

5        PROSPECTIVE JUROR 298:  No, sir.

6        THE COURT:  Could you be fair and impartial if you were

7    seated?

8        PROSPECTIVE JUROR 298:  Yes.

9        THE COURT:  All right.  Thank you.

10       Did I miss anybody?

11       As I've indicated, this case involves two counts alleging

12   that the defendant traded child pornography and then

13   transmitted it using materials that had been mailed, shipped,

14   or transported in interstate commerce.  So I want to ask a

15   couple of questions about the subject matter.

16       I want to ask if either you or a person close to you has

17   been involved in a case in which a similar allegation has been

18   made.

19       Is there anyone who believes -- I'm sorry, in the back.

20       PROSPECTIVE JUROR 267:  Juror 267.  I don't know if this

21   counts, but I do have a cousin that's been involved in a rape

22   in that capacity.  A rape.

23       THE COURT:  I'm sorry.  Involved in, what was it again?

24       PROSPECTIVE JUROR 267:  Rape.

25       THE COURT:  Writing?

1    PROSPECTIVE JUROR 267:  Rape.

2    THE COURT:  Oh, I'm sorry.  Is it a pending charge or

3 something that's been disposed of?

4    PROSPECTIVE JUROR 267:  Many years ago, in the '80s.

5    THE COURT:  Is there anything at all about the fact that

6 you may have known or had a relative that was involved in that

7 type of a charge that would prevent you from being a fair and

8 impartial juror here?

9    PROSPECTIVE JUROR 267:  No.

10    THE COURT:  Can you set all of that aside and listen to

11 the evidence in this case if you were selected?

12    PROSPECTIVE JUROR 267:  I can.

13    THE COURT:  All right.  Thank you.

14    Does anyone believe that due to the nature of the charges

15 or the evidence which will be presented in the case that, for

16 whatever reason, you would not be able to listen to the

17 evidence and return a verdict of guilty if it were supported by

18 the evidence?  Anyone feels that you couldn't do that?

19    Is there anyone who believes, again, due to the nature of

20 the charges or the evidence to be presented, that you would be

21 unable to listen to the evidence and render a not guilty

22 verdict if the evidence did not support a guilty verdict?

23    Now, ladies and gentlemen, I expect that you'll be

24 instructed that consent is not a defense to a charge of child

25 sexual exploitation.  Is there anyone who believes that consent

1    should be a defense, and as a result you could not follow this

2    instruction if you're given the instruction?

3         Is there anyone who believes that as a society we should

4    not have laws that prohibit the production of child

5    pornography?

6         Is there anyone who believes that engaging in sexual

7    activity with children under the age of 18 should not be

8    illegal?

9         PROSPECTIVE JUROR 270:  Under 18, not be illegal?

10        THE COURT:  Should not be.  Yes, ma'am.

11        PROSPECTIVE JUROR 270:  270.

12        THE COURT:  And if you're instructed otherwise, could you

13   follow that instruction?

14        PROSPECTIVE JUROR 270:  I could.

15        THE COURT:  Notwithstanding your own personal beliefs, do

16   you feel like you could follow the instruction that you're

17   given?

18        PROSPECTIVE JUROR 270:  It would depend on the situation.

19        THE COURT:  All right.  Thank you.

20        Now, I expect if you're selected as a juror, that you will

21   be required to view photos or videos of conduct that I've

22   described, which is graphic in nature.

23        Is there anyone who believes that you would be unable to

24   view such evidence and consider it together with all the other

25   evidence submitted in the case?

1      I also understand that at the time charged in the

2  indictment, the defendant was a constable and volunteer

3  firefighter.  Does anyone feel that as a result of this type of

4  public service, you could not fairly consider the evidence and

5  reach a fair and impartial verdict on the evidence presented?

6      I also expect that evidence will be presented regarding

7  the transmission of materials using cell phones or through

8  Snapchat.

9      Is there anyone who has any special training in the use of

10 computers, internet technology, computer programming, or the

11 forensic examination of computers?

12     Yes, sir, first row.

13     PROSPECTIVE JUROR 295:  295.  I ran the global network for

14 a Fortune 500 company for two years.

15     THE COURT:  So you're pretty well versed in computers and

16 computer technology?

17     PROSPECTIVE JUROR 295:  Yes, sir.

18     THE COURT:  Again, I do expect that there will be some

19 testimony about the transmission of materials using phones or

20 using websites such as Snapchat.

21     Do you feel like that you can listen to the evidence

22 presented and not substitute your own knowledge for the

23 testimony of the witnesses in the case?

24     PROSPECTIVE JUROR 295:  Yes, sir.

25     THE COURT:  All right.  You can use your common sense

1    obviously, but you wouldn't be sitting as an expert yourself.

2         And you do understand that?

3         PROSPECTIVE JUROR 295:  Yes, sir.

4         THE COURT:  And you can do that?

5         PROSPECTIVE JUROR 295:  Yes.

6         THE COURT:  Thank you, sir.

7         Anyone else?

8         Now, ladies and gentlemen, as I indicated earlier, this is

9    a criminal matter, and of course criminal matters are different

10   from civil cases.  In a civil case, the party that has the

11   burden of proof is generally the plaintiff, has to prove his or

12   her case by what's called a preponderance of the evidence.

13   That's more likely so than not so.

14        In criminal cases, of course the government has a higher

15   burden of proof.  The government has to prove the elements of

16   the crimes charged beyond a reasonable doubt.  Again, that's a

17   higher standard of proof than a civil case.

18        First, is there anyone who doesn't understand in a

19   criminal case the burden of proof is higher?

20        Additionally, ladies and gentlemen, the charges in this

21   matter are brought by way of indictment of a grand jury.  Now,

22   of course, an indictment is not evidence and at this time you

23   haven't heard any evidence.  You just heard some of my

24   questions.  But is there anyone who believes that just because

25   a person has been charged with an offense by the return of an

1    indictment that he must be guilty of something?  Anyone who

2    feels that way?

3         Ladies and gentlemen, if you are selected to serve as a

4    juror in this case, you would be asked to determine if the

5    defendant is guilty of the crimes charged but you would have no

6    input regarding any punishment if the defendant is found guilty

7    of the crimes charged.  Would that in any way affect your

8    decision or your ability to sit as a juror in the case?

9         I do expect that that matter will take approximately three

10   days to complete.  I do think it may go into Wednesday of this

11   week, so let me ask if being here for three days would prevent

12   such a unique hardship that you could not serve if you were

13   selected?

14        Also, as you heard me say several times to some of our

15   jurors, if you are selected, you would be required to render a

16   verdict based solely on the evidence in the case and also in

17   the context of the law that I'll be giving you.

18        Is there anyone who could not disregard whatever personal

19   feelings you may have and reach a verdict based only on the

20   facts presented and also in the context of the law that you'll

21   be given?

22        Is there anyone who has a difficulty either seeing or

23   hearing that would make it difficult or impossible for you to

24   be selected as a juror?

25        Now let me ask the catch-all question before I turn the

1   questions over to the attorneys.  You've been sitting here for

2   a few minutes, about 30 minutes now.  You're waiting for me to

3   ask the question so you can tell me why you would not be a good

4   juror, and I have not asked the question yet, so you haven't

5   said anything.

6       I'll ask you to tell me, is there any reason you believe

7   you should not be selected to serve in this particular case?

8       Thank you, ladies and gentlemen.  I'll ask the attorneys

9   if they have additional questions for the jury.

10      Ms. Roth.

11      MS. ROTH:  Good morning.  I have one follow-up question.

12  The judge mentioned in this case that the charge is production

13  of child pornography, and he asked if anybody believed that

14  children under 18 should not be able to consent to that type of

15  activity.

16      The victim in this case was 17 at the time of the alleged

17  crime.  And I wanted to know if there's anyone who, knowing

18  that she was 17, would feel that she should be able to consent

19  and therefore this shouldn't be a crime to take a video of

20  sexually explicit conduct using a 17 year old?

21      Thank you.  That's all I have.

22      THE COURT:  Thank you.

23      Mr. Spedding.

24      MR. SPEDDING:  Thank you, Judge.

25      My name is Chris Spedding.  The judge introduced me to you

```
 1    and these are the questions I wanted to ask.

 2         If you would, when I ask them, if you would respond with a

 3    shake or a nod of your head, I would appreciate it.

 4         When you guys walked into the courtroom, you saw

 5    Mr. Fields here.  How many of you looked at him said, "I wonder

 6    what he did."  Did anybody?  It's a natural reaction.

 7         The reason I asked the question is because you'll be

 8    instructed on this, you'll hear a lot of it, he has what's

 9    called a presumption of innocence as he sits here.

10         Do you all understand what that means?  Do you agree with

11    me that as he sits here, he hasn't done anything wrong?  He's

12    innocent of what the government said he did.

13         Do you all understand that?

14         Some of these, I'm going to try to limit them.  Has

15    anybody themselves been a victim of sex abuse, or however you

16    would like to -- anybody here been a victim of -- yes, ma'am.

17         THE COURT:  Ma'am, if you would like to come up and

18    respond at the bench, you can certainly do that.

19         PROSPECTIVE JUROR 277:  Yes, please.

20         THE COURT:  Come on up.

21         (Bench conference on the record.)

22         PROSPECTIVE JUROR 277:  I was sexually abused by my

23    father.

24         THE COURT:  All right.  Your number?

25         PROSPECTIVE JUROR 277:  277.
```

 1          THE COURT:  277.  All right.

 2          Mr. Spedding, if you would like to follow-up with

 3     questions?

 4          MR. SPEDDING:  Ma'am, a lot of these are same types of

 5     questions.  The judge asked, do you feel that situation would

 6     make it impossible for you to hear this case and render an

 7     impartial verdict?

 8          PROSPECTIVE JUROR 277:  No.  No, it's no problem.

 9          THE COURT:  Okay.

10          MR. SPEDDING:  Okay.  That's all I have, Judge.

11          THE COURT:  Ms. Roth, do you have any --

12          MS. ROTH:  No.

13          THE COURT:  -- follow-up questions?

14          MS. ROTH:  No.

15          THE COURT:  Thank you, ma'am.

16          (Bench conference concluded.)

17          THE COURT:  Did anybody else -- yes, ma'am.  Would you

18     like to come up to the bench?  Come on up.

19          (Bench conference on the record.)

20          THE COURT:  Yes, ma'am.  You indicated that you had been a

21     victim?

22          PROSPECTIVE JUROR 292:  Yes, I was nine years old.

23          THE COURT:  All right.  What's your number?

24          PROSPECTIVE JUROR 292:  292.

25          THE COURT:  Mr. Spedding, do you have any follow-up?

1          MR. SPEDDING:  Can you, without going into detail --

2          PROSPECTIVE JUROR 292:  It was an oral, oral sex.

3          MR. SPEDDING:  Committed by?

4          PROSPECTIVE JUROR 292:  My half brother.

5          THE COURT:  Okay.

6          MR. SPEDDING:  Do you think that experience would render

7   you unable to do your job as a juror here today in this trial

8   and render an impartial verdict?

9          PROSPECTIVE JUROR 292:  I don't believe so.  I think that,

10  you know, based on the evidence, I can make a fair decision.

11         MR. SPEDDING:  Okay.  And let me ask you just a follow-up

12  to that.  Given what the judge has told you about the victim's

13  age, is that going to cause you any problems in that regard?

14         PROSPECTIVE JUROR 292:  No.

15         MR. SPEDDING:  Okay.  That's all I have, Judge.

16         THE COURT:  Ms. Roth, any questions?

17         MS. ROTH:  There's going to be videos and pictures

18  presented, would that be difficult for you?

19         PROSPECTIVE JUROR 292:  No.

20         MS. ROTH:  No other questions.

21         THE COURT:  All right.  Thank you, ma'am.

22         MR. SPEDDING:  Thank you, ma'am.

23         (Bench conference concluded.)

24         THE COURT:  See if we have anybody else?  Anyone else that

25  needed to respond?

1          (Bench conference on the record.)

2          PROSPECTIVE JUROR 270:   270.

3          MR. SPEDDING:   Speak into the microphone.

4          PROSPECTIVE JUROR 270:   I've had this problem twice in my

5     life.  As a young child when I was around four --

6          MR. SPEDDING:   I didn't hear what you said.

7          PROSPECTIVE JUROR 270:   As a young child around four.  And

8     then when I was ten, by two different people.  Would you like

9     me to elaborate?

10          THE COURT:   No.  The attorneys may have real basic

11     follow-up questions for you.

12          MR. SPEDDING:   Just generally, were they family members or

13     friends?

14          PROSPECTIVE JUROR 270:   They were family members both

15     times.

16          MR. SPEDDING:   Okay.

17          PROSPECTIVE JUROR 270:   Maybe three times.

18          MR. SPEDDING:   Okay.  Do you think that experience in your

19     life would render you unable to sit as an impartial juror in

20     this case?

21          PROSPECTIVE JUROR 270:   I honestly don't know.

22          MR. SPEDDING:   You don't know.

23          PROSPECTIVE JUROR 270:   Honestly don't know.

24          MR. SPEDDING:   So it might?

25          PROSPECTIVE JUROR 270:   I don't know.

1          THE COURT:  It's hard to say until you know more about the

2    case.

3          PROSPECTIVE JUROR 270:  Yes.

4          MR. SPEDDING:  Very good.  There are going to be some --

5    there's probably going to be some video evidence that, no

6    matter who you are, is going to be disturbing.  Knowing that,

7    would your answer change as far as whether you would be able to

8    sit and be impartial?

9          PROSPECTIVE JUROR 270:  Like I said, I don't know.  I

10   would have to see all the evidence before I could make that

11   promise.

12         MR. SPEDDING:  Okay.  Before you could make the promise?

13         PROSPECTIVE JUROR 270:  Before I could make a promise to

14   you.

15         THE COURT:  Ms. Roth?

16         MS. ROTH:  I have no follow-up.

17         MR. SPEDDING:  That's all I have.

18         THE COURT:  Thank you, ma'am.

19         PROSPECTIVE JUROR 270:  Thank you.

20         MR. SPEDDING:  Thank you, ma'am.

21         THE COURT:  Anybody else?  Thank you, Counsel.

22         (Bench conference concluded.)

23         MR. SPEDDING:  Now, I asked that last question pertaining

24   to individuals.  And, again, my question -- my next question is

25   whether or not any bad -- I'm not talking about distant cousins

1    twice removed and all that stuff, did you all have close

2    friends or family members that have been victims of any type of

3    sex abuse or sex crime?

4         Now, the only other thing that I'm going to talk about is

5    the fact that the victim in this case is young and she's going

6    to be -- she's going to testify.

7         And my question to you all is whether or not her being

8    young is going to cause you to give more weight to the

9    testimony that she gives in this case as opposed to any of the

10   other witnesses?  Does anybody feel like that would happen if

11   you were listening to her testimony?

12        Does everybody understand that -- Judge Reeves said this,

13   I'm going to touch on this very lightly.  Everybody understands

14   that the government has the burden in this case to prove, what

15   I'm going to tell you is important, each element of the offense

16   beyond a reasonable doubt.  Okay?

17        When you're deliberating and look at it and say, well,

18   yeah, I think they did this and not this.  They have to prove

19   each element of the offense beyond a reasonable doubt.

20        Does everybody agree with that?

21        And more importantly, do you understand what I'm saying

22   when I say that?  If you don't, it's okay, just let us know so

23   we can explain it.

24        And does everybody understand we can sit here and we don't

25   have any obligation at all to put any type of proof on in this

 1   case?  We could sit here and not do a thing and we don't have

 2   to prove Mr. Fields' innocence.  That's not how this works.

 3        Does everyone understand that?

 4        I believe that's all I have, Your Honor.  I appreciate

 5   you.  And thank you, Judge.

 6        THE COURT:  All right.

 7        If counsel is ready, if you would like to come up to the

 8   bench briefly?  If you need to check your notes, take as much

 9   time as you need.  When you're ready, let me know.

10        (Bench conference on the record.)

11        THE COURT:  At this particular time, we'll address any

12   challenges for cause that the attorneys may have.

13        MS. ROTH:  Your Honor, 270, she had a number of answers I

14   think that were cause for concern to one of our witnesses from

15   the time he was a young child and he's been a scout, seeing

16   they had a close relationship.

17        THE COURT:  Would there be any objection?

18        MR. SPEDDING:  No.  No objection, Judge.

19        THE COURT:  She certainly will be excused.

20        MS. ROTH:  Your Honor, that is the only witness that I

21   have that we would move to strike for cause.

22        THE COURT:  All right.  Mr. Spedding, do you have any?

23        MR. SPEDDING:  Your Honor, I do.  Juror Number 260, she

24   indicated that she's retired from the Attorney General's Office

25   as a long-time investigator.  You know, the Court did

1    rehabilitate her.  However, being that she was an investigator

2    and that she retired, we're not dealing with situation where

3    she did it for five years and that was it.  I think that will

4    inherently cause her to be biased for the United States.  We

5    would ask that she be struck for cause.

6         THE COURT:  All right.

7         Your position, the United States?

8         MS. ROTH:  Your Honor, we object to that.  She answered

9    that question in response to whether she had any connection

10   with law enforcement.  I believe she mentioned she's been

11   retired for 20 years.  She has no knowledge of any of the

12   individuals currently working there.  She said she could be

13   fair.  We have no reason not to believe that to be the case.

14        Her answers were right, does not seem to be a bias.

15        THE COURT:  I'll deny the motion to excuse this juror for

16   cause.  She didn't answer my questions in a way that would

17   cause me to believe she couldn't set aside her past work

18   experience and be fair and impartial in the case.  She has been

19   away for some period of time and she didn't know the potential

20   witnesses in this matter, so I don't think there's been

21   sufficient cause demonstrated to excuse her at this time.

22        MR. SPEDDING:  Okay.

23        Juror Number 252.

24        THE COURT:  Family in law enforcement?

25        MR. SPEDDING:  Your Honor, some of this is based on my

1  personal dealings with that juror's father.  So whether it

2  translates here, I don't know.  But his father retired from

3  Lexington Police Department and he was a pretty vocal, at least

4  in my experience, anti-defendant police officer.

5      Now, whether that translates down to his son, I don't

6  know.  But I want to put it on the record that I would move to

7  strike him for cause based on that.

8      THE COURT:  His answers didn't indicate any bias

9  whatsoever in favor of law enforcement.  He did indicate that

10  he could listen to the evidence, so I'll deny that motion.

11      MR. SPEDDING:  Okay.  270, we already addressed.

12      THE COURT:  What was the number?

13      MR. SPEDDING:  270.

14      THE COURT:  We already talked about that.

15      MR. SPEDDING:  I'm just going through my notes.

16      I would move to strike 277, 292.  Those are two of the

17  jurors that we brought up here, they were actual victims of sex

18  abuse.  What's probably most telling, it's not a situation

19  where they were adults when it happened or anything like that,

20  they were underage.  I don't -- I think that that personal

21  experience with that type of situation would, again, inherently

22  render them unable to be unbiased.

23      THE COURT:  I can't draw that conclusion that being a past

24  victim would prevent a person from being a juror in a case such

25  as this.  Based upon the answers that were given, that they

1    could set aside those events and listen to the testimony and

2    base their decision on the evidence in the case.

3        They didn't give me any independent reason -- other than

4    past experiences, they didn't give me any independent reason

5    they couldn't be fair and impartial.  I'll overrule those

6    motions as well.

7        MR. SPEDDING:  Thank you, Judge.  I believe that's all.

8        THE COURT:  All right.  I'll go ahead and excuse

9    Juror 270, and then we'll send everybody else downstairs.  I

10   think we have 28 that are here, so that will leave 27 from this

11   pool and then we'll bring the others up and start the

12   examination at 10:00.

13       MR. SPEDDING:  Yes, sir.

14       THE COURT:  Thank you.

15       MR. SPEDDING:  Thank you, Your Honor.

16       (Bench conference concluded.)

17       THE COURT:  Ladies and gentlemen, thank you for your

18   patience, I do appreciate it.  At this time I would excuse one

19   of our jurors.  Juror Number 270, you are being excused from

20   this case.  You will be advised by the clerk's office when you

21   should report again.  Thank you for being here this morning.

22       Now, again, just to refresh everyone's memory in terms of

23   how we're going to proceed.  I will ask you at this time to go

24   back downstairs to that jury assembly room when you first came

25   in.  And we're going to go through the same questioning with

1   the second panel of jurors, and then we'll call up those jurors

2   that will be selected in the case, hopefully within the next

3   hour or so, 20 minutes, perhaps.

4        As you go back downstairs, let me just remind you that as

5   we do take breaks in the case, please don't talk with each

6   other about this matter and don't allow anyone to approach you

7   to discuss the case.

8        Don't read, watch, or listen to any accounts of the matter

9   if there should be any.

10       Don't, of course, read or do any type of investigation on

11  your own.

12       And don't communicate through social media the possibility

13  of you being selected as a juror or anything about the case.

14       And, of course, don't be deliberating or making up your

15  mind about this matter, you haven't heard the first bit of

16  evidence.  You've only heard my questions and the questions of

17  the attorneys.

18       So with my thanks, we'll send you back downstairs and

19  hopefully we will be able to call some of you up and excuse the

20  balance here in the next hour and 20 minutes.  Thank you.

21       (Jury Panel A left courtroom at 9:45 a.m.)

22       THE COURT:  Thank you.  We will be in recess until

23  10:00 a.m. this morning.

24       (A recess was taken from 9:46 a.m. to 10:00 a.m.)

25       (Jury Panel B entered the courtroom at 10:02 a.m.)

1          THE CLERK:  When you hear your number, answer "here,"

2     please.

3          322.

4          PROSPECTIVE JUROR 322:  Here.

5          THE CLERK:  324.

6          PROSPECTIVE JUROR 324:  Here.

7          THE CLERK:  325.

8          PROSPECTIVE JUROR 325:  Here.

9          THE CLERK:  326.

10         PROSPECTIVE JUROR 326:  Here.

11         THE CLERK:  328.

12         PROSPECTIVE JUROR 328:  Here.

13         THE CLERK:  331.

14         PROSPECTIVE JUROR 331:  Here.

15         THE CLERK:  338.

16         PROSPECTIVE JUROR 338:  Here.

17         THE CLERK:  340.

18         PROSPECTIVE JUROR 340:  Here.

19         THE CLERK:  341.

20         PROSPECTIVE JUROR 341:  Here.

21         THE CLERK:  348.

22         PROSPECTIVE JUROR 348:  Here.

23         THE CLERK:  350.

24         PROSPECTIVE JUROR 350:  Here.

25         THE CLERK:  352.

```
1          PROSPECTIVE JUROR 352:  Here.

2          THE CLERK:  354.

3          PROSPECTIVE JUROR 354:  Here.

4          THE CLERK:  359.

5          PROSPECTIVE JUROR 359:  Here.

6          THE CLERK:  367.

7          PROSPECTIVE JUROR 367:  Here.

8          THE CLERK:  368.

9          PROSPECTIVE JUROR 368:  Here.

10         THE CLERK:  373.

11         PROSPECTIVE JUROR 373:  Here.

12         THE CLERK:  379.

13         PROSPECTIVE JUROR 379:  Here.

14         THE CLERK:  380.

15         PROSPECTIVE JUROR 380:  Here.

16         THE CLERK:  381.

17         PROSPECITVE JUROR 381:  Here.

18         THE CLERK:  383.

19         PROSPECTIVE JUROR 383:  Here.

20         THE CLERK:  385.

21         PROSPECTIVE JUROR 385:  Here.

22         THE CLERK:  386.

23         PROSPECTIVE JUROR 386:  Here.

24         THE CLERK:  387.

25         PROSPECTIVE JUROR 387:  Here.
```

1        THE CLERK:  388.

2        PROSPECTIVE JUROR 388:  Here.

3        THE CLERK:  389.

4        PROSPECTIVE JUROR 389:  Here.

5        THE CLERK:  390.

6        PROSPECTIVE JUROR 390:  Here.

7        THE CLERK:  393.

8        PROSPECITVE JUROR 393:  Here.

9        THE CLERK:  394.

10       PROSPECTIVE JUROR 394:  Here.

11       THE CLERK:  397.

12       PROSPECTIVE JUROR 397:  Here.

13       THE CLERK:  400.

14       PROSPECTIVE JUROR 400:  Here.

15       THE CLERK:  Is there anybody's number that I did not call?

16  Okay, thank you.

17       THE COURT:  Thank you.  And good morning, everyone.

18       Madam Clerk, would you call the matter scheduled for

19  trial, please?

20       THE CLERK:  Yes, Your Honor.  Lexington Criminal Action

21  Number 19-178, United States of America versus William Michael

22  Fields Junior, called for jury trial.

23       THE COURT:  Thank you.  And if counsel would again state

24  their appearances.

25       Ms. Roth and Ms. Melton.

1        MS. ROTH:  Good morning, Your Honor.  Erin Roth and Mary

2    Melton on behalf of the United States.

3        THE COURT:  Thank you.

4        Mr. Spedding.

5        MR. SPEDDING:  Good morning, Your Honor.  Christopher

6    Spedding on behalf of William Michael Fields, who is standing

7    to my right.

8        THE COURT:  All right.  Thank you.

9        Again, ladies and gentlemen, good morning to you.  Good to

10   see everyone here.  We're going to begin a trial this morning,

11   and I want to tell you that we've done this a little

12   differently in light of the COVID pandemic, so I want to talk

13   with you about that for just a moment, and then I'll get into

14   some of the procedures that we'll be following here today.

15       If you've been here before, if you're not a new juror,

16   you'll notice that we don't have as many jurors as we typically

17   would have.  I know you're spread out, but we don't have the

18   typical 50 people that are all back in the back of the

19   courtroom.  That's because we are selecting the jury in two

20   groups.  So this morning we had half of the jurors that were

21   called in here at 9:00, and then you're the second group at

22   10:00.

23       We've gone through the questioning for that first group

24   and so we'll follow the same procedures here with this group of

25   jurors.

1       When we have finished the questions, I'll send you back

2  downstairs to the room -- I think you were in Courtroom D down

3  here.  We'll send you back down to that courtroom so we can

4  make the final selection of the jurors that will be trying the

5  case.

6       Now, this is a new process we're following and I do

7  appreciate your cooperation and your understanding.

8       When you came into the courtroom, you'll notice that there

9  were some Xs placed with black tape on the seats where you're

10  located.  We're doing that to social distance everyone.  And so

11  when you're finally selected, we'll follow the same procedure

12  with the jury box.  You'll see we've got some additional chairs

13  up front here, one juror up in the front row, but we'll have

14  the jury box completed when we select the jury that will be

15  trying the case.

16       Now, you'll notice that, of course, all of you jurors are

17  wearing masks.  And if anyone needs a mask or if you lose a

18  mask and you need one, make sure you advise one of the security

19  officers or the clerk and they will get you a mask.

20       Also, you'll see there is lots of hand sanitizer

21  throughout the courtroom.  And there's some Clorox wipes, I

22  think, at different locations.  Use as much of that as you

23  need.  I told the first group don't put it in your pocket and

24  take it with you, but use as much as you need while you're

25  here.

1    Also we have some gloves if you do need gloves or if you

2  would feel more comfortable with gloves, we'll make some gloves

3  available for you.

4    When the attorneys come up to the bench to talk with me,

5  or during the trial if they approach the witness stand to talk

6  with a witness, they've been asked to put on their mask as

7  well.

8    Now, one of the things that I've discovered -- we had a

9  trial last week here.  And one of the things I've discovered is

10  that if you're doing a lot of talking, either the attorneys or

11  if I'm talking to you, it's very difficult for you to hear and

12  understand if I'm wearing a mask.

13    So when the attorneys come up to me, I'll put my mask on,

14  and they'll do the same thing as they approach other

15  individuals, other persons that are participating in the trial.

16    But when they're talking to you, it's very difficult for

17  them to keep those masks on.  But we will distance everyone.

18  And if you do approach someone during the course of the trial,

19  I do ask the attorneys to put on those masks.

20    Finally, if you recall before trial, a couple of weeks ago

21  you were sent a letter and a questionnaire.  Everyone filled

22  out that questionnaire and sent it back in, and I really do

23  appreciate that.  We are going to try to avoid repeating those

24  questions.  There may be some follow up, but I'm going to try

25  to avoid repeating those questions that were asked to you in

1    that questionnaire, so that will speed up the process a bit.

2        That letter you got along with the questionnaire also had

3    some things for you to observe, such as checking your

4    temperature, making sure that if you become sick or if you have

5    someone in your family that's sick, that you report that to us

6    to make sure that we have everyone here that's healthy and able

7    to participate.

8        Now, as we begin, what I'm going to do is I'm going to ask

9    the clerk to administer the oath to all our jurors.  And then

10   we have some new jurors, this is the first time that they have

11   appeared, and I have some individual questions for those new

12   jurors.  But first I'll ask the oath be given to all of our

13   jurors.

14       Madam Clerk.

15       THE CLERK:  Could you all please stand and raise your

16   right hand?

17       (Jury Panel B sworn.)

18       THE COURT:  Please be seated.

19       Madam Clerk, if you could please identify our new jurors

20   by calling their numbers?  As your number is called, if you

21   could please stand.

22       THE CLERK:  326.  340.  350.

23       THE COURT:  Stand if you could, please.

24       THE CLERK:  359.  367.  368.  381.  383.  390.  393.  394.

25   And 397.

1        THE COURT:  All right.  Thank you.

2        Ladies and gentlemen, for those of you that are standing,

3   I have just a few questions.  If you'll remember when you

4   filled out those original questionnaires and you sent those

5   back, you had to check a bunch of boxes, I just need to make

6   sure that that information you provided is still accurate.

7        If you could please respond to the following questions:

8        Are each of you citizens of the United States?

9        ALL:  Yes.

10       THE COURT:  Are each of you 18 years of age or older?

11       ALL:  Yes.

12       THE COURT:  Has your primary residence in the past year

13   been in this state and also in the same county?

14       ALL:  Yes.

15       THE COURT:  Do each of you read, write, speak, and

16   understand the English language?

17       ALL:  Yes.

18       THE COURT:  Are any charges now pending against you for a

19   violation of state or federal law punishable by imprisonment

20   for more than one year?

21       ALL:  No.

22       THE COURT:  No?  Have any of you ever been convicted

23   either by a guilty or nolo contendere plea, or by a court or

24   jury trial, of a state or federal crime for which punishment

25   could have been more than one year in prison?

1          ALL:  No.

2          THE COURT:  Do any of have you any physical or mental

3     disabilities that would interfere or prevent you from serving

4     as a juror if you are selected?

5          ALL:  No.

6          THE COURT:  Thank you.

7          Madam Clerk, all of these jurors are qualified.

8          THE CLERK:  Yes, Your Honor.

9          THE COURT:  Thank you.  You can be seated.

10         Now the procedures.  As we go through the questions this

11    morning, ladies and gentlemen, I'm going to begin by asking you

12    about 30 minutes of questions probably.  And my questions are

13    intended to determine if you know anything about the case and

14    to ensure that you're otherwise qualified to be selected as

15    jurors.

16         Now, I do want to remind everyone that you are all under

17    oath, and therefore it's important that you give full and

18    complete answers to the questions that I'll be asking you and

19    then that the attorneys may be asking you as well.

20         When you do need to respond to a question, if you need to

21    respond, if you would please raise your hand until I see you or

22    the attorneys see you, and we can identify you and then follow

23    up.

24         When you do give an answer, if you could give us your

25    juror number.  Every time that you give an answer, you need to

1    give us your juror number because we are transcribing the

2    proceedings, so we need to know the identity of the jurors by

3    number that are responding to our questions.

4        And then, finally, if you're a little bit soft spoken, and

5    you're wearing these masks anyway, it may be hard for us to

6    hear you.  So we put a couple of microphones back in the middle

7    of the gallery of the courtroom for those of you that are

8    seated toward the back.  If you're soft spoken or if we have a

9    hard time, come on up to those microphones and give us your

10   answers.  We should be able to hear everyone that's in the jury

11   box, but make sure that you speak up loud enough for the

12   attorneys to hear you, I need to hear you, as well as the court

13   reporter.

14       So with those procedural matters out of the way, let me

15   begin by giving you a brief summary of what I expect this case

16   will be about, and I'll ask you if you know anything about the

17   case or if you've heard anything about it.

18       Ladies and gentlemen, there are two counts or charges that

19   will be presented for your consideration during the trial.

20   Defendant William Michael Fields, who was identified earlier,

21   Junior, is charged with using a minor to engage in sexually

22   explicit conduct for the purpose of producing visual depictions

23   of that conduct, and that's commonly referred to as the

24   production of pornography, in violation of Title 18 of the

25   United States Code, Section 2251(a).

1       The indictment alleges that the defendant knowingly

2  engaged in this conduct and he produced or transmitted child

3  pornography using materials that had been mailed, shipped, or

4  transported in interstate commerce.

5       Now, the events that are charged in Count 1 are alleged to

6  have occurred on or about March 17th, 2019, while the events

7  charged in Count 2 are alleged to have occurred on or about

8  March 23rd, 2019.  Regarding both counts, the activities charge

9  are alleged to have occurred in Bourbon County, in the Eastern

10  District of Kentucky.

11       And the defendant denies the charges that have been placed

12  against him.

13       Let me begin by asking if any of our potential jurors have

14  heard anything about this case or if you know anything about

15  the case?  If you could just identify yourself by raising your

16  hand.

17       Well, again, let me introduce the attorneys that will be

18  participating in the trial.  First, on behalf of the United

19  States, two Assistant United States Attorneys are here, Erin

20  Roth and Mary Melton.

21       On behalf of the defendant, Christopher Spedding is here

22  in Lexington with the Spedding Law Firm, and Mr. Fields is over

23  to his left.  Thank you.

24       Let me ask if any of our potential jurors know any of the

25  attorneys or the defendant in the case that I've identified?

1     Has anyone had any type of legal proceedings either as a

2  witness, as a party in any litigation with any of the

3  attorneys?

4     Does anyone know the defendant that I've identified?  He

5  stood up for you just a moment ago.  No?

6     I expect that there will be several witnesses testifying

7  in the case.  And the victim has been -- or the alleged victim

8  has been identified by initials, and we'll be using her

9  initials throughout the course of this proceeding.  The

10  initials are E.Y., and I wouldn't expect you to be able to know

11  who the person is just by me telling you initials.

12     But the other individuals I think may be testifying would

13  include Nathan Linville, who is a sergeant with the Cynthiana

14  Police Department.

15     Alan Judy, a detective with the Cynthiana Police

16  Department.

17     As well as Justin Jett, who is a detective with the

18  Cynthiana Police Department.

19     And then I also expect that we may hear testimony from

20  Dr. Michael Littrell, who is a detective with the Cyber Crimes

21  Unit in the Office of the Attorney General for the Commonwealth

22  of Kentucky.

23     Let me ask our potential jurors if you know any of the

24  potential witnesses that I've identified for you by name?

25     Yes, sir, in the first row.

1          PROSPECTIVE JUROR 352:  Juror 352.  I'm familiar with two

2     officers in the Cynthiana Police Department.

3          THE COURT:  All right.  I think we had one sergeant and

4     maybe two detectives.

5          PROSPECTIVE JUROR 352:  I know the one detective, Judy,

6     Linville.

7          THE COURT:  Judy and Linville you think you know?

8          PROSPECTIVE JUROR 352:  I'm not personally acquainted with

9     them, but I know who they are.

10         THE COURT:  You're from that community?  If you would see

11     those individuals, you may be able to -- you may know who they

12     are.

13         PROSPECTIVE JUROR 352:  That's right.

14         THE COURT:  Is there anything about the fact that you know

15     those officers that would prevent you from being a fair and

16     impartial witness in the case?

17         PROSPECTIVE JUROR 352:  No, sir.

18         THE COURT:  If you were to find that the evidence did not

19     support a guilty verdict in this case and you returned a not

20     guilty verdict, do you feel like that that would cause you a

21     problem if they testified contrary in the case?

22         PROSPECTIVE JUROR 352:  No, sir.

23         THE COURT:  All right.  So you could be fair and impartial

24     to both sides?

25         PROSPECTIVE JUROR 352:  Yes, sir.

1          THE COURT:  All right.  Thank you, sir.

2          Anyone else?

3          Now, ladies and gentlemen, I mentioned that questionnaire

4     that you filled out earlier.  Let me ask you if all of the

5     information you provided through that questionnaire previously

6     was accurate?  Anything that needs to be changed on any of the

7     information provided?

8          All right.  Ladies and gentlemen, let me ask you another

9     question about law enforcement.  As you know, I've just

10    identified several law enforcement officers that may be

11    testifying in the case.  So I want to ask you really a two-part

12    question.  I want to ask you if anyone has a current or past

13    relationship with someone employed by law enforcement, or if

14    you've had an encounter with someone employed by law

15    enforcement, and as a result of that relationship or that

16    encounter, that you feel like that you would give either more

17    weight or less weight to the testimony of an officer who would

18    testify?

19         In other words, have you had any experience with law

20    enforcement that would cause you to give the testimony of law

21    enforcement officers more weight or less weight than anyone

22    else that might testify?

23         This case involves two counts alleging that the defendant

24    created child pornography and transmitted it using materials

25    that had been mailed, shipped, or transported in interstate

53

 1    commerce.

 2         So I want to ask if you or someone close to you has been

 3    involved in a case in which a similar allegation has been made?

 4         Yes, ma'am, in the very back.

 5         PROSPECTIVE JUROR 400:  Juror 400.

 6         THE COURT:  Yes, ma'am.

 7         PROSPECTIVE JUROR 400:  My brother was convicted of cyber

 8    crimes.  He served three years in prison.

 9         THE COURT:  All right.  Now, is there anything about that

10    conviction that you have hard feelings about?

11         PROSPECTIVE JUROR 400:  A little bit.

12         THE COURT:  Little bit?  Do you know if that was

13    prosecuted in state court or federal court?

14         PROSPECTIVE JUROR 400:  Federal.

15         THE COURT:  Federal court?  Was it here in Lexington or

16    some other location?

17         PROSPECTIVE JUROR 400:  Lexington.

18         THE COURT:  It was in Lexington.  Do you recall who it was

19    that handled the case?

20         PROSPECTIVE JUROR 400:  No.

21         THE COURT:  Do you recall the attorneys or perhaps the

22    judge in the case?

23         PROSPECTIVE JUROR 400:  I can't remember their names.

24         THE COURT:  Don't remember?  All right.

25         PROSPECTIVE JUROR 400:  It's been like six years ago.

1      THE COURT:  All right.  Is there anything about that case

2  that would prevent you from being a fair and impartial juror in

3  this matter?

4      PROSPECTIVE JUROR 400:  I hope not.

5      THE COURT:  You hope not?

6      PROSPECTIVE JUROR 400:  No, sir.

7      THE COURT:  Is it hard for you to say right now?

8      PROSPECTIVE JUROR 400:  Yes.

9      THE COURT:  As we go through the questions, if you have a

10  firmer opinion in your mind as to whether it would be a problem

11  for you, would you tell me that?

12      PROSPECTIVE JUROR 400:  Yes, sir.

13      THE COURT:  I may follow up with you later and make sure

14  that there are no issues.

15      At this time, you just don't know if it would affect you;

16  is that fair?

17      PROSPECTIVE JUROR 400:  Yes.

18      THE COURT:  All right.  Thank you, ma'am.

19      Anyone else that I missed?

20      Is there anyone who believes that due to the nature of the

21  charges that I've described for you or potential evidence that

22  would be introduced, that it would make it difficult for you to

23  listen to the evidence and return a verdict of guilty if it

24  were supported by the evidence?

25      Yes, ma'am.

1      PROSPECTIVE JUROR 341:  341.

2      THE COURT:  What was your number again?

3      PROSPECTIVE JUROR 341:  341.

4      THE COURT:  Yes, ma'am.

5      PROSPECTIVE JUROR 341:  I am an elementary school teacher

6  and the nature of this is very disturbing to me.

7      THE COURT:  All right.

8      PROSPECTIVE JUROR 341:  And I do not feel that I could be

9  impartial.

10      THE COURT:  All right.  Thank you, ma'am.

11      Yes, ma'am.

12      PROSPECTIVE JUROR 325:  325.  I was molested as a child,

13  and I'm disgusted by crimes against children.  I'm also a

14  second grade teacher and it disturbs me.

15      THE COURT:  So you feel like that you would have a hard

16  time being a fair juror in the case?

17      PROSPECTIVE JUROR 325:  Yes.

18      THE COURT:  Thank you.

19      Yes, ma'am.  In the second row, I think.  Yes, ma'am.

20      PROSPECTIVE JUROR 390:  390.  I'm also an elementary

21  school teacher.

22      THE COURT:  All right.

23      PROSPECTIVE JUROR 390:  Children are my passion.

24      THE COURT:  So you feel like it would be difficult for you

25  to be a fair juror in the case?

1          PROSPECTIVE JUROR 390:  I think so.

2          THE COURT:  Anyone else?  Let me repeat the question, make

3     sure everyone understands it.

4          My question is, if you are seated as a juror, based upon

5     the nature of the charges and the evidence that may be

6     presented, do you believe that it would be difficult for you to

7     listen to the evidence and return a verdict of guilty if it

8     were supported by the evidence?

9          Let me ask the reverse question.  It may be that the last

10    jurors responded to what I was about to ask, and that is, based

11    on the nature of the charges or the evidence that will be

12    presented, do you believe that you would be unable to listen to

13    the evidence and return a verdict of not guilty if the evidence

14    did not support it?

15         Now, ladies and gentlemen, I expect that I will instruct

16    you in the course of this trial that consent is not a defense

17    to a charge of child sexual exploitation.

18         Is there anyone who believes that consent should be a

19    defense, and as a result you could not follow the instruction

20    if it were given to you?

21         Is there anyone who believes, as a society, we should not

22    have laws that prohibit the production of child pornography?

23         Is there anyone who believes that engaging in sexual

24    activity with children under the age of 18 should not be

25    illegal?

1          Now, again, I expect that if you're selected as a juror,

2     you will be required to view photos or videos of conduct that I

3     described which is graphic in nature.

4          So is there anyone else, other than the jurors who have

5     just responded, who believes that you would be unable to view

6     the evidence and consider it with all the other evidence and

7     testimony submitted in the case?

8          I also understand that at this time -- excuse me -- at the

9     time charged in the indictment, the defendant was a constable

10    and volunteer firefighter.

11         Does anyone feel that as a result of this type of public

12    service, that you could not fairly consider the evidence and

13    reach a fair and impartial verdict based on all the evidence

14    presented?

15         I also expect that evidence will be presented regarding

16    the transmission of materials using cell phones and perhaps

17    Snapchat.

18         Does anyone have any special training in the use of

19    computers, internet technology or computer programming or

20    forensic examination of computers?

21         Yes, sir, in the first row.

22         PROSPECTIVE JUROR 379:  Juror 379.  I work for the

23    Department of Corrections.  I'm an IT person and I handle the

24    websites.

25         THE COURT:  Now, based upon your training and experience,

1   you know quite a bit about computers?

2       PROSPECTIVE JUROR 379:  Yes, sir.

3       THE COURT:  In the course of this case, I expect that

4   there will be witnesses that will be testifying about cell

5   phones and Snapchat.

6       If you are selected as a juror, you'll have to listen to

7   the evidence and base your decision only on the evidence

8   presented here and not based upon any special training or

9   expertise that you may have.

10      In other words, you can't question, well, I know that you

11  have to do this a certain way.  Why didn't they ask this

12  question.

13      PROSPECTIVE JUROR 379:  Sure.

14      THE COURT:  You have to base your decisions on the

15  evidence presented.

16      Do you feel like you can do that?

17      PROSPECTIVE JUROR 379:  I do.

18      THE COURT:  You can set aside -- I'm not asking you to set

19  aside your common sense, but you have to listen to the

20  testimony and also in the context of the law that I'll be

21  giving you.

22      PROSPECTIVE JUROR 379:  Yes.

23      THE COURT:  You can do that?

24      PROSPECTIVE JUROR 379:  Yes.

25      THE COURT:  Thank you, sir.

1          PROSPECTIVE JUROR 379:  Sure.

2      I'm sorry.  Yes, sir, in the back.

3          PROSPECTIVE JUROR 368:  Juror 368.

4      THE COURT:  Yes, sir.

5          PROSPECTIVE JUROR 368:  I've worked in software

6  development for business.

7      THE COURT:  Software development.

8          PROSPECTIVE JUROR 368:  For business.

9      THE COURT:  Again, you have some specialized training and

10 experience more than some of us do in this area.

11     Do you feel like that you can base your decision on the

12 testimony presented here and that you won't call upon your own

13 specialty as you listen to the case?

14         PROSPECTIVE JUROR 368:  Yes.

15     THE COURT:  Can you do that?  All right.  Thank you, sir.

16     Anyone else I missed?

17     Now, ladies and gentlemen, as I indicated, this, of

18 course, is a criminal matter, and criminal cases are different

19 than civil cases.  In a civil case, the party with the burden

20 of proof, and that's generally the plaintiff, must prove his or

21 her case by what's called a preponderance of the evidence, more

22 likely so than not so.

23     But in criminal cases, the government has the burden of

24 proving the elements of the crimes charged beyond a reasonable

25 doubt.  That's a higher burden.

1      Is there anyone who doesn't understand that in a criminal

2  case, the burden that the government must show is much higher?

3      The charges in this case are brought by way of an

4  indictment.  Now, of course, an indictment is not evidence.  At

5  this time you have not heard any evidence.

6      But is there anyone who believes that just because a

7  person has been charged with a crime by the return of an

8  indictment, that he or she must be guilty of something?  Anyone

9  who feels that way?

10     If you're selected to serve on the jury in this case,

11 you'll be asked to determine if the defendant is guilty of the

12 crimes charged.  But you would have no input regarding any

13 punishment if the defendant is found guilty of one or both of

14 the crimes charged.

15     Would that in any way affect your decision?

16     At this time I expect that this case will take

17 approximately three days to complete.  I do think that we'll be

18 going into Wednesday of this week.  I know that's an

19 inconvenience for many of you, but let me ask if being here for

20 three days would be such a unique hardship that you could not

21 serve if you were selected?

22     As you've heard me mention to some of our jurors at this

23 point, if you are selected you would be required to base your

24 verdict solely on the evidence presented in the case and also

25 in the context of the law that I'll be giving to you.

1          Is there anyone who believes that, for whatever reason,

2     you could not base a decision on the evidence presented in the

3     case and also in the context of the law?

4          Is there anyone that has a difficulty seeing or hearing

5     that would make it difficult for you to serve?

6          Now, the question that you've been waiting for me to ask.

7     You're waiting for me to ask a question, and if I ask the

8     question you're going to tell me why you would be a lousy

9     juror, but I haven't asked it yet and so you haven't given me

10    the answer.

11         So this is your opportunity to tell me if there's

12    something that you believe that would prevent you from being a

13    good juror in the case, either for the government, for the

14    defendant.  Both parties are entitled to a fair trial in this

15    case.

16         If there's something that would prevent you from being a

17    fair and impartial juror, they want to know about it and so do

18    I.  So if you would, if there's anything else, now is the time

19    to tell me and tell the attorneys.

20         Ladies and gentlemen, at this time I'm going to turn the

21    questioning over to the attorneys.  I may have some follow-up

22    in just a moment when they finish.

23         But at this time, Ms. Roth, do you have any questions for

24    the jury panel?

25         MS. ROTH:  Thank you, Your Honor.

1          Good morning, ladies and gentlemen.  Thank you for being

2     here.  I know it's in the middle of a global pandemic and we

3     appreciate your service.

4          The victim in this case is a 17-year-old girl.  I wanted

5     to know if there's anyone who would be more or less likely to

6     believe someone about her age, 17 years old?  Is there anyone

7     who feels like they would be more or less likely to believe the

8     testimony?

9          The judge talked to you about consent and he said consent

10    is not a defense to this crime.  Does everybody understand what

11    that means?  Does everyone understand that a 17 year old under

12    federal law is a minor?

13         Even if the jury would feel that she should be able to

14    consent and therefore this shouldn't be a crime, is there

15    anyone who feels like they would have a hard time convicting

16    someone of this crime if the victim of the crime was 17?

17         You would have a hard time following that instruction?

18         PROSPECTIVE JUROR 383:  383.  I got married when I was 19

19    and my wife was 16.  And of course they had to have a signature

20    from the husband -- or the father and mother, for the marriage.

21    But it was a consent, I don't see the difference.

22         MS. ROTH:  Thank you.  Anybody else?

23         The judge also asked you whether anybody had experience

24    themselves with someone close to them being charged.  Is there

25    anybody else that needed to answer that question?

1           Is there anybody else, other than the people who already

2    told us about their experience as a victim of a crime of a

3    sexual nature, that you feel like that would affect your

4    ability to serve here today?

5           That's all the questions I have.   Thank you very much.

6           THE COURT:   All right.   Thank you.

7           Mr. Spedding.

8           MR. SPEDDING:   Thank you, Judge.

9           Ladies and gentlemen, as the judge told you a few minutes

10   ago, my name is Christopher Spedding, and Ms. Roth actually

11   asked most everything I was going to ask, so let me go back

12   through.

13          One of the things that I always ask people in trial, in

14   the jury selection, what you thought when you walked in the

15   door to the courtroom.   And what I mean by that is, when you

16   walked in, did you look over here and see Mr. Fields and think

17   to yourself, I wonder what he did?   Nothing wrong with it.

18   It's a pretty natural reaction, but did any of you all think

19   that?

20          And the reason I'm bringing it up is because, again, the

21   judge talked about this but I want to touch on it if I can for

22   just a little bit more.   Mr. Fields enjoys what's called the

23   presumption of innocence.   What that means is when you walk

24   through the door and you look at him, you look at him and he is

25   an innocent man.

1          And what I'm asking is whether all of you can agree that

2     that's where we start in this case.

3          I'm also going to ask you if you can agree with me and

4     promise me that you're going to hold the government to the

5     burden like the judge talked about, and make them prove the

6     charges against Mr. Fields beyond a reasonable doubt.  It's not

7     on us, it's on the government.  Does everybody understand that?

8          Does everybody understand we don't have to prove anything?

9     We can sit here and not say a word.

10         Does everybody know what elements are, the elements of a

11    crime?  You all know what that is.  Most crimes are made up of

12    certain little subsections.  And the judge instructed you or

13    told you, and again, I'm going to ask you, when the government

14    puts on their proof, they have to prove each one of those

15    elements beyond a reasonable doubt.

16         Does everybody understand you can't convict if you look at

17    it and say, well, they did B but didn't do D, but because they

18    did B, we're going to go ahead and convict.  That's not how it

19    works.  Does everybody understand that?  It's important.  So if

20    you have any questions about it, bring them up now because this

21    is pretty much the last time we're going to be able to just

22    talk to you like this.

23         The judge already asked you, I think Ms. Roth actually, if

24    anybody here, I know it's embarrassing and if you want to

25    approach, that's fine, but is anybody themselves or close

 1    family members or close friend been a victim of any type of

 2    sexual abuse?

 3         Do you want to approach, ma'am?

 4         PROSPECTIVE JUROR 400:  Yes.  What I told him earlier,

 5    that my brother was convicted.

 6         MR. SPEDDING:  Okay.  That's what you're referring to?

 7         PROSPECTIVE JUROR 400:  Yes.

 8         MR. SPEDDING:  Okay.  Is there anybody else that's been an

 9    actual victim of it?

10         Can you all -- this is the last question.  Can you all

11    look me in the eye, and each and every one of you promise me

12    that you're going to hold the government to their burden?

13         You all are going to be able do that?  Okay.

14         Well, like Ms. Roth, I appreciate your time.  I know it's

15    a burden being in here.  We do appreciate it.  Thank you.

16         Thanks, Judge.

17         THE COURT:  Thank you, Mr. Spedding.

18         I have one follow-up question for Juror Number 400.

19         Ma'am, I told you I may ask you to follow up if there's

20    anything, based on the questions that have been asked and the

21    responses that have been given, that would change your earlier

22    answer that you're just not sure if you could be fair and

23    impartial in the case.

24         PROSPECTIVE JUROR 400:  No.

25         THE COURT:  Are you still unsure?

1        PROSPECTIVE JUROR 400:  Yeah, I'm still unsure.

2        THE COURT:  I'm sorry?

3        PROSPECTIVE JUROR 400:  Yes, I'm still unsure.

4        THE COURT:  All right.  All right.  Thank you, ma'am.

5  Thank you.

6        Counsel, if you would like to approach.

7        (Bench conference on the record.)

8        THE COURT:  Let me begin, I'll mention that we may be in

9  agreement to excuse Number 400.

10       We have three teachers, and then we have Juror Number 400,

11 who just responded.  The three teachers were 341, 325, and 390.

12       MR. SPEDDING:  Yes, sir.

13       THE COURT:  Everyone in agreement for those being excused?

14       MR. SPEDDING:  Yes.

15       THE COURT:  Can you think of anybody else?

16       MS. ROTH:  Yes, Your Honor.  Juror 383, he is the

17 gentleman who said he married his bride when she was 16, and he

18 didn't think that -- he didn't see any difference between

19 following the law, but I think consent --

20       THE COURT:  We have not explained to him the difference

21 between marriage under state law with a person that's 16 with

22 permission and the type of federal offenses that are charged

23 here.

24       If you've been married at 16 and had taken videos, sent

25 those videos over the internet, they can be prosecuted for

1   that, even if that were to be his wife.

2       At this time I don't think there's a basis to excuse him

3   for cause, based on the fact that he didn't see anything wrong

4   with it.  He married a 16 year old, without further

5   explanation, so I won't excuse him for cause at this time.

6       Anybody else?

7       MR. SPEDDING:  Did you say 400?

8       THE COURT:  Uh-huh.

9       MR. SPEDDING:  So we have four we're going to strike for

10  cause?

11      THE COURT:  Yes.

12      MR. SPEDDING:  I'm going to put this on the record.  352,

13  he's a gentleman that said that he knew Detectives Linville and

14  Judy.  I understand the rehabilitation, but for the record, I

15  move to strike for cause.

16      THE COURT:  I'll overrule that motion.  He didn't indicate

17  it would be a problem for him to see those gentlemen in the

18  community, but he's not aware of who they are.  They are not

19  friends, he knows who they are.

20      So we're clear here, I'll excuse these four, which would

21  be 400, 390, 325, and 341.

22      At this point I'll excuse this group and we'll stay up

23  here and have the clerk call 31 numbers from these panels and

24  take a 20-minutes recess at that point.  Thank you.

25      MR. SPEDDING:  Thank you, Judge.

1        (Bench conference concluded.)

2        THE COURT:  Again, ladies and gentlemen, thank you for

3  your patience.  At this time I'll excuse the following four

4  jurors: Juror Numbers 400, 341, 325, and 390.  Those four

5  jurors will be excused at this time.

6        Be careful as you walk past those cords.

7        Now, ladies and gentlemen, for those of you that remain,

8  we're going to take approximately a 20-minute recess at this

9  time, send you back downstairs into the room that you were in

10  originally.

11        The attorneys will be able to exercise what's called

12  peremptory challenges and then we're going to bring up the jury

13  that will be participating in the trial.

14        When the clerk goes back down to notify the jurors to come

15  up, she'll be able to excuse the balance that will not be

16  seated in the case.  So at this time the jury will be excused

17  to go back downstairs.

18        (Jury left courtroom at 10:40 a.m.)

19        THE COURT:  You can be seated, please.

20        THE CLERK:  Ready.

21        THE COURT:  When the clerk is ready, we'll identify the 31

22  jurors.

23        THE CLERK:  Number 340.  263.  388.  380.  338.  387.

24  379.  397.  252.  277.  306.  368.  315.  260.  385.  373.

25  389.  295.  237.  350.  284.  326.  394.  241.  324.  386.

1   393.  275.  267.  264.  348.

2        THE COURT:  31?

3        THE CLERK:  31 jurors have been drawn, Your Honor.

4        THE COURT:  Thank you.  Any questions before we take a

5   recess, before we allow counsel to exercise their preemptory

6   challenges?

7        MS. ROTH:  No, Your Honor.

8        THE COURT:  Mr. Spedding?

9        MR. SPEDDING:  No, Your Honor.

10        THE COURT:  All right.  Thank you.

11        We'll take a 20-minute recess.  At that time the parties

12   will have turned in their strikes to the clerk and we'll

13   identify the 12 jurors plus the alternate to be brought up and

14   I'll excuse the balance.  We'll be in recess.

15        (A recess was taken from 10:47 a.m to 11:15 a.m.)

16        THE COURT:  Thank you.

17        Madam Clerk, have the attorneys turned in their peremptory

18   strikes?

19        THE CLERK:  Yes, Your Honor.

20        THE COURT:  If you would please identify the first 12

21   jurors from the main panel called but not stricken, and the

22   first alternate from the alternate panel called but not

23   stricken.

24        THE CLERK:  Juror Number 1 will be 340.  388.  380.  338,

25   338.  397.  306.  368.  389.  237.  350.  284.  324.  348.

1    THE COURT:  What was the last?

2    THE CLERK:  348.

3    THE COURT:  28 or 48?

4    THE CLERK:  348.

5    THE COURT:  Let me see if we have any issues to take up

6  before the balance of the jury panel is excused?

7    MS. ROTH:  Your Honor, neither of us could hear the second

8  juror number that was called.

9    THE CLERK:  The second?

10    MS. ROTH:  The second number.

11    THE COURT:  That would be 388.

12    MS. ROTH:  Thank you.

13    THE COURT:  Mr. Spedding?

14    MR. SPEDDING:  No, Your Honor.

15    THE COURT:  All right.  Thank you.  I'll ask the clerk to

16  advise the 13 jurors whose numbers have been called that they

17  have been selected for trial.  They will be brought up by the

18  security officers and the clerk will excuse the balance of

19  those jurors.

20    We'll be in a brief recess until the jurors are brought up

21  and they can be placed in the box with the alternate seated to

22  the right.  We'll start with the back row, this end to that, so

23  four, four, four, alternate.  Okay?  We'll be in a brief

24  recess.  Thank you.

25    (A recess taken from 11:18 a.m. to 11:28 a.m.)

1        THE CLERK:  Ladies and gentlemen, one more time, make sure

2  we didn't lose you all.  Just say "here" when I say your

3  number.  340.

4        JUROR NUMBER 340:  Here.

5        THE CLERK:  388.

6        JUROR NUMBER 388:  Here.

7        THE CLERK:  380.

8        JUROR NUMBER 380:  Here.

9        THE CLERK:  338.

10       JUROR NUMBER 338:  Here.

11       THE CLERK:  397.

12       JUROR NUMBER 397:  Here.

13       THE CLERK:  306.

14       JUROR NUMBER 306:  Here.

15       THE CLERK:  368.

16       JUROR NUMBER 368:  Here.

17       THE CLERK:  389.

18       JUROR NUMBER 389:  Here.

19       THE CLERK:  237.

20       JUROR NUMBER 237:  Here.

21       THE CLERK:  350.

22       JUROR NUMBER 350:  Here.

23       THE CLERK:  284.

24       JUROR NUMBER 284:  Here.

25       THE CLERK:  324.

```
 1          JUROR NUMBER 324:  Here.

 2          THE CLERK:  348.

 3          PROSPECTIVE JUROR 348:  Here.

 4          THE CLERK:  Thank you.

 5          THE COURT:  Thank you.

 6      Madam Clerk, at this time if you would identify by number

 7  the jurors that have been selected for the case, and as your

 8  number is called, the security officer will advise you as to

 9  where you should be seated.

10          THE CLERK:  340.  388.  380.  338.  397.  306.  368.  389.

11  237.  350.  284.  324.  And 348.

12          THE COURT:  All right.  Thank you.

13      And, Madam Clerk, at this time if you would please

14  administer oath to the jury selected to try the case.

15      (Jury panel sworn.)

16          THE COURT:  Thank you.  Please be seated.

17      Now, ladies and gentlemen, let me give you just a brief

18  summary of how we'll be proceeding the remainder of the

19  morning.  I'm going to provide you with some preliminary jury

20  instructions here in just a moment, relatively brief.

21      And after I go through the preliminary instructions, the

22  attorneys will present their openings statements for you.  We

23  will go a little bit past noon.  But after we finish with the

24  opening statements, you'll be excused for a lunch break.

25      We'll take about a 40-minute lunch break.  We'll put you
```

1    in two different groups.  We have one deliberation room back

2    over to my left and we'll put about eight of you back there.

3    And the balance of seven or eight, the balance we'll put you

4    upstairs in an old jury deliberation room up on the third

5    floor.

6        If you have any problems climbing stairs, use this room

7    back here.  But if you're okay with stairs, then we'll take you

8    up to that room.  We'll keep you in those two rooms so you can

9    be a little bit distant until you finally deliberate on the

10   case.  At that time we'll put you in one of the big rooms

11   downstairs for those deliberations.

12       Now, members of the jury, now that you have been sworn, I

13   will give you some preliminary instructions to guide you in

14   your participation in the trial.

15       First, it will be your duty to find from the evidence what

16   the facts are.  You and you alone will be the judges of the

17   facts.  You will then have to apply those facts to the law as

18   you Court will instruct you.  You must follow the law whether

19   you agree with it or not.

20       The evidence from which you will find the facts will

21   consist of the testimony of witnesses, documents, and other

22   things received as exhibits, any facts that the lawyers agree

23   to or stipulate to or that the Court may instruct you to find.

24       Certain things are not evidence and must not considered by

25   you, I'll list them for you now.  Objections to questions are

1  not evidence.  Lawyers have an obligation to their clients to

2  make objections when they believe the evidence being offered is

3  improper under the rules of evidence.  You should not be

4  influenced by the objection or by the Court's ruling on it.  If

5  an objection is sustained, ignore the question.  If it's

6  overruled, treat the answer like any other.

7       If you are instructed that some items of evidence are

8  received for a limited purpose only, then you must follow that

9  instruction.

10      Testimony that the Court has excluded or told you to

11  disregard is not evidence and must not be considered.  Anything

12  that you may have seen or heard outside of the courtroom is not

13  evidence and must be disregarded.  You are to decide the case

14  based solely on the admissible evidence presented here in the

15  courtroom.

16      There are two kinds of evidence, direct and

17  circumstantial.  Direct evidence is direct proof of a fact,

18  such as the testimony of an eyewitness.

19      Circumstantial evidence is proof of facts in which you may

20  infer or conclude that other facts exist.  I'll give you

21  further instructions on these as well as other matters at the

22  end of the case, but keep in mind that you may consider both

23  kinds of evidence.

24      It will be up to you to decide which witnesses to believe,

25  which witnesses not to believe, and how much of any witness's

1  testimony to accept or reject.  I will give you some guidelines

2  for determining the credibility of witnesses at the end of the

3  case.

4      As you know, this is a criminal case and there are three

5  basic rules about criminal cases that you must keep in mind.

6      First, a defendant is presumed innocent unless and until

7  proven guilty.

8      An indictment against the defendant brought by the United

9  States is only an accusation, nothing more.  It's not proof of

10  guilt or anything else.  Therefore, a defendant starts out with

11  a clean slate.

12      Second, the burden of proof is on the United States until

13  the very end of the case.  A defendant has no burden to prove

14  his innocence or present any evidence.  Likewise, a defendant

15  has no burden to testify.

16      Third, the United States must prove the defendant's guilt

17  beyond a reasonable doubt.  I'll give you further instructions

18  on this point later.  But bear in mind, in this respect a

19  criminal case is different from a civil case.

20      As I advised you earlier, the indictment contains two

21  counts for your consideration.  The defendant is charged in two

22  counts with using a minor to engage in sexually explicit

23  conduct for the purpose of producing visual depictions of that

24  conduct.

25      The first count alleges conduct occurring in Bourbon

1  County, in the Eastern District of Kentucky, on or about

2  March 17th, 2019, while the second count alleges conduct

3  occurring in Bourbon County, in the Eastern District of

4  Kentucky, on or about March 23rd, 2019.

5       To find the defendant guilty, you must find the government

6  has proved the following elements beyond a reasonable doubt

7  regarding the respective charge.

8       First, that the defendant employed, used, persuaded,

9  induced, or coerced a minor to engage in sexually explicit

10  conduct for the purpose of producing the visual depiction of

11  that conduct.

12       Second, that the visual depiction was produced or

13  transmitted using materials that were mailed, shipped, or

14  transported in or affecting interstate commerce by any means

15  including a computer.

16       Now let me mention a few things about your conduct as

17  jurors.

18       First, during the trial, you're not to discuss the case

19  with anyone or permit anyone to discuss it with you.  Until you

20  retire to the jury room at the end of the case to deliberate on

21  your verdict, you're simply not to talk about the case.

22       Second, do not read or listen to anything touching on the

23  case in any way.  If anyone should try to talk to you about it,

24  bring it to the Court's attention promptly.

25       Third, do not do any research or make any investigation

1    about the case on your own.

2         Fourth, do not form any opinion until all the evidence is

3    in.  Keep an open mind until you start your deliberations at

4    the end of the case.

5         Now, finally, you will be allowed to take notes during the

6    course of the trial.  Your notes should be used only as an aid

7    to your memory.  You should not give your notes precedence over

8    your independent recollection of the evidence.  Also, you

9    should not be unduly influenced by the notes of other jurors.

10        Now the trial will now begin.  First, the United States

11   Attorney will make an opening statement, which is simply an

12   outline to help you understand the evidence as it comes in.

13        Next, the defendant's attorney may make an opening

14   statement.

15        Opening statements are neither evidence nor arguments.

16        The United States will then present its witnesses and the

17   defendant's attorneys may cross-examine them.

18        Following the United States case, the defendant may, if he

19   wishes, present witnesses whom the United States may

20   cross-examine.

21        There may also be some rebuttal testimony or evidence.

22        After all the evidence is in, the Court will instruct you

23   on the law, and the attorneys will present their closing

24   arguments to summarize and interpret the evidence for you.

25        You will then retire to deliberate on your verdict.

1      Before I ask the attorneys to present their opening

2  statements, ladies and gentlemen, you have a notebook in front

3  of you, if you want to use that notebook, you should have a pen

4  as well.   It's a good idea to go ahead and write your juror

5  number on that notebook and you'll be able to either leave that

6  in your seat or take that up to your room when we take a break.

7      (Opening statements were given, transcript filed in the

8  record.)

9                    C E R T I F I C A T E

10       I, Linda S. Mullen, RDR, CRR, do hereby certify that

11  the foregoing is a correct transcript from the record of

12  proceedings in this above-entitled matter.

13

14

15

16  /s/Linda S. Mullen              July 21, 2021
    Linda S. Mullen, RDR, CRR       Date of Certification
17  Official Court Reporter

18

19

20

21

22

23

24

25